STACEY IAN HUMPHREYS,

APPELLANT

VS

STATE OF GEORGIA,

APPELLEE

\*

\*

\*

\*

\*

\*

\*

COBB SUPERIOR COURT

INDICTMENT NO. 04-9-0673-05

It is further certified that the delay in the transmittal of this record is due to the stress of business in this office and not the fault of the Appellant or the Appellant's attorney.

_Toni Williamson_
Deputy Clerk

STACEY IAN HUMPHREYS,         *         COBB SUPERIOR COURT

APPELLANT         *

       *         INDICTMENT NO. 04-9-0673-05

VS         *

       *

STATE OF GEORGIA,         *

APPELLEE         *

## I N D E X

### VOLUME I

| | | PAGE |
|---|---|---|
| 1. | AMENDED NOTICE OF APPEAL, Filed March 23, 2009 | 1 - 3 |
| 2. | NOTICE OF APPEAL, Filed March 20, 2009 | 4 - 5 |
| 3. | REPORT OF TRIAL JUDGE, Filed March 19, 2009 | 6 - 18 |
| 4. | GENERAL BILL OF INDICTMENT, Filed February 12, 2004 | 19 - 24 |
| 5. | CRIMINAL WARRANT, Warrant No. 03-W-12137, Filed February 12, 2004 | 25 - 26 |
| 6. | NOTICE OF STATE'S INTENT TO SEEK THE DEATH PENALTY, Filed February 12, 2004 | 27 - 28 |
| 7. | DISCLOSURE STATEMENT, Filed February 12, 2004 | 29 |

**P A G E**

8.   MEMORANDUM, Filed February 12, 2004.................................................................... - 30

9.   DEFENDANT STATUS, Filed February 12, 2004 ....................................................... - 31

10.  WAIVER OF APPEARANCE, Filed February 12, 2004............................................... - 32

11.  ENTRY OF APPEARANCE AS COUNSEL, Filed February 12, 2004...................... 33 - 34

12.  ORDER, Transfer to Superior Court, Filed February 12, 2004 ................................... - 35

13.  REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING
     EQUIPMENT PURSUANT TO RULES AND GUIDELINES FOR
     ELECTRONIC AND PHOTOGRAPHIC NEWS COVERAGE OF
     JUDICIAL PROCEEDINGS, Filed March 25, 2004 ...................................................... - 36

14.  ORDER SETTING HEARING, Filed March 26, 2004.............................................. 37 - 38

15.  ORDER SETTING HEARING, April 22, 2004 ........................................................ 39 - 42

16.  ENTRY OF APPEARANCE, Filed April 23, 2004.................................................. 43 - 44

17.  REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING
     EQUIPMENT PURSUANT TO RULES AND GUIDELINES FOR
     ELECTRONIC AND PHOTOGRAPHIC NEWS COVERAGE OF
     JUDICIAL PROCEEDINGS, Filed June 1, 2004 ........................................................ - 45

18.  REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING
     EQUIPMENT PURSUANT TO RULES AND GUIDELINES FOR
     ELECTRONIC AND PHOTOGRAPHIC NEWS COVERAGE OF
     JUDICIAL PROCEEDINGS, Filed June 1, 2004 ...................................................... 46 - 47

**P A G E**

19. REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING
EQUIPMENT, Filed June 1, 2004 ................................................................ - 48

20. REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING
EQUIPMENT, Filed June 1, 2004 ................................................................ - 49

21. REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING
EQUIPMENT PURSUANT TO RULES AND GUIDELINES FOR
ELECTRONIC AND PHOTOGRAPHIC NEWS COVERAGE OF
JUDICIAL PROCEEDINGS, Filed June 1, 2004 ....................................... 50 - 51

22. MOTION TO RECUSE JUDGE, Filed June 1, 2004 ............................... 52 - 5?

23. AFFIDAVIT IN SUPPORT OF MOTION TO RECUSE,
Filed June 1, 2004 ........................................................................................ 54 - 67

24. ORDER, The State of Georgia's Motion to Recuse Judge Denied,
Filed June 3, 2004 ........................................................................................ 68 - 72

25. APPLICATION FOR INTERIM APPEAL FROM ORDER DENYING
THE STATE'S MOTION TO RECUSE THE TRIAL JUDGE,
Filed June 22, 2004 ...................................................................................... 73 - 102

26. REMITTITUR, From the Supreme Court, Filed August 10, 2004 ............. - 103

27. EX PARTE PLEADING NUMBER 1, Filed September 28, 2004............... 104 - 109

28. EX PARTE PLEADING NUMBER 2, Filed September 28, 2004............... 110 - 121

29. EX PARTE PLEADING NUMBER 3, Filed September 28, 2004............... 122 - 126

30. EX PARTE PLEADING NUMBER 4, Filed September 28, 2004............... 127 - 134

**PAGE**

31. DEFENDANT'S SPECIAL DEMURRER TO ALL COUNTS OF THE
    INDICTMENT, Filed September 28, 2004 ............................................ 135 – 142

32. MOTION FOR COMPLETE RECORDATION AND TRANSCRIPT
    OF ALL PROCEEDINGS, Filed September 28, 2004............................ 143 – 145

33. NOTICE OF ASSERTION OF RIGHT TO BE PRESENT,
    Filed September 28, 2004 ................................................................... 146 – 152

34. MOTION FOR AN ORDER REQUIRING THE DISTRICT ATTORNEY
    TO RESPOND IN WRITING TO EACH MOTION WHICH IS CONTESTED
    BY THE STATE, Filed September 28, 2004........................................ 153 – 158

35. MOTION FOR THE COURT REPORTER'S TAPES AND NOTES TO
    BE MADE A PART OF THE RECORD OF THESE PROCEEDINGS,
    Filed September 28, 2004 ................................................................... 159 – 161

36. MOTION FOR DISCLOSURE OF ANY POSSIBLE BASIS FOR
    RECUSAL OF JUDGE, Filed September 28, 2004................................ 162 – 166

37. MOTION FOR DISCLOSURE OF ANY IMPROPER BIAS OR
    PREJUDICE, GROUNDS FOR ANY LEGAL CLAIM OF POSSIBLE
    BASIS FOR DISQUALIFICATION OF DISTRICT ATTORNEY,
    COURT PERSONNEL, OR OTHER STATE ACTORS INVOLVED
    IN ANY WAY IN THIS CASE, Filed September 28, 2004....................... 167 – 179

38. MOTION FOR HUMANE CONDITIONS OF DEFENDANT'S
    PRE-TRIAL INCARCERATION, Filed September 28, 2004.................... 180 – 183

39. MOTION FOR AN ORDER INSURING ADEQUATE ATTORNEY-
    CLIENT VISITATION OPPORTINITIES, Filed September 28, 2004 ....... 184 – 188

**PAGE**

40. MOTION FOR AN ORDER SPECIALLY SETTING HEARINGS
ON ALL PRE-TRIAL MOTIONS, Filed September 28, 2004...................................... 189 - 191

41. MOTION TO CONDUCT CLOSED EVIDENTIARY HEARING
ON DEFENDANT'S MOTION FOR CLOSURE OF PRETRIAL
PROCEEDINGS, Filed September 28, 2004.............................................................. 192 - 196

42. MOTION TO PREVENT EX PARTE COMMUNICATION BETWEEN
THE STATE AND THE COURT, Filed September 28, 2004 ..................................... - 197

43. MOTION RESERVING THE RIGHT TO FILE ADDITIONAL
MOTIONS, Filed September 28, 2008........................................................................ 198 - 200

44. MOTION FOR AN ORDER PROHIBITING DEFENDANT FROM
BEING EXHIBITED IN JAIL CLOTHING, Filed September 28, 2004..................... 201 - 204

45. DEMAND FOR TRIAL BY JURY, Filed September 28, 2004 ................................... - 205

46. MOTION TO ADJOURN AT A REASONABLE TIME,
Filed September 28, 2004 .......................................................................................... 206 - 208

47. MOTION TO STRIKE AND QUASH THOSE PORTIONS OF THE
UNIFIED APPEAL THAT REQUIRE WAIVER OF CONSTITUTIONALLY
PROTECTED RIGHTS, Filed September 28, 2004 .................................................... 209 - 211

48. MOTION TO EXCLUDE MEMBERS OF THE POLICE DEPARTMENT
AND MEMBERS OF THE OTHER LAW ENFORCEMENT AGENCIES
FROM SITTING IN THE COURTROOM IN UNIFORM,
Filed September 28, 2004 .......................................................................................... 212 - 215

**PAGE**

49. MOTION FOR ADEQUATE ATTORNEY-CLIENT VISITATION
FACILITIES AND MOTION FOR AN EVIDENTIARY HEARING
UPON DEFENDANT'S CLAIMS PURSUANT TO THE PROVISIONS
OF 42 U.S.C.A. 1983, Filed September 28, 2004 .................................................... 216 - 223

50. MOTION FOR A CHANGE OF VENUE, Filed September 28, 2004 ........................... 224 - 236

51. MOTION FOR SEPARATE EVIDENTIARY HEARING
ON CHANGE OF VENUE MOTIONS, Filed September 28, 2004 ........................... 237 - 239

52. DEMAND FOR LIST OF WITNESSES, Filed September 28, 2004 ........................... 240 - 243

53. MOTION TO CAUSE WITNESSES TO CONFER WITH DEFENSE
COUNSEL, Filed September 28, 2004 ........................................................................ 244 - 245

54. MOTION FOR AN ORDER GRANTING DEFENDANT A LIST OF
WITNESSES AND COPY OF THE INDICTMENT, Filed
September 28, 2004 ..................................................................................................... - 246

55. MOTION FOR ORDER PERMITTING DISCOVERY OF TRANSCRIPT,
EXHIBITS, OTHER MEMORIALIZATION OF THE GRAND JURY
PROCEEDINGS, AND LIST OF GRAND JURY MEMBERS,
Filed September 28, 2004 ........................................................................................... 247 - 251

56. MOTION FOR DISCOVERY OF POLICE REPORTS AND OTHER
LAW ENFORCEMENT DOCUMENTS, Filed September 28, 2004 ........................... 252 - 254

57. MOTION FOR DISCLOSURE OF ALL CRIMINAL RECORDS
OF STATE WITNESSES, Filed September 28, 2004 ................................................. 255 - 257

58. MOTION FOR DISCLOSURE OF PSYCHIATRIC HISTORY OF
STATE'S WITNESSES, Filed September 28, 2004 ................................................... 258 - 260

**P A G E**

59. MOTION FOR AN ORDER DIRECTIONG THE STATE TO PROVIDE
DATES OF BIRTH AND SOCIAL SECURITY NUMBERS OF ALL
STATE'S WITNESSES, Filed September 28, 2004 ................................................ 261 – 265

60. MOTION FOR AN IN CAMERA INSPECTION OF FILES OF ALL
POLICE WITNESSES, Filed September 28, 2004 ............................................... 266 – 268

61. MOTION FOR DISCOVERY OF EXCULPATORY INFORMATION
AND INFORMATION TO IMPEACH OR DISCREDIT STATE
WITNESSES, Filed September 28, 2004 .................................................................. 269 – 272

62. DISCOVERY MOTION AND MOTION TO REQUIRE THE
PROSECUTION TO DISCLOSURE EVIDENCE FAVORABLE
TO DEFENDANT UNDER BRADY V. MARYLAND AND
GIGLIO V UNITED STATES, Filed September 28, 2004 ........................................ 273 – 284

63. MOTION FOR DISCLOSURE OF DEALS WITH WITNESSES,
Filed September 28, 2004 ............................................................................................ 285 – 287

64. MOTION TO PRODUCE STATEMENTS OF WITNESSES,
Filed September 28, 2004 ............................................................................................ 288 – 291

65. MOTION FOR PRODUCTION OF SCIENTIFIC REPORTS,
Filed September 28, 2004 ............................................................................................ 292 – 296

66. MOTION FOR DISCOVERY OF INFORMATION REGARDING
STATE EXPERTS, Filed September 28, 2004 ......................................................... 297 – 303

67. MOTION FOR DISCOVERY OF INFORMATION NECESSARY
FOR FAIR ADJUDICATION OF SENTENCE, Filed September 28, 2004 ............... 304 – 310

**P A G E**

68. MOTION TO INSPECT, EXAMINE AND TEST PHYSICAL
    EVIDENCE, Filed September 28, 2004 ................................................................. 311 - 314

69. MOTION FOR AN ORDER REQUIRING THE PRODUCTION OF
    ANY MITIGATING EVIDENCE KNOWN TO THE STATE,
    Filed September 28, 2004 ................................................................. 315 - 319

70. MOTION FOR NOTICE OF AGGRAVATING CIRCUMCTANCES
    AND EVIDENCE, Filed September 28, 2004 ................................................. 320 - 324

71. MOTION TO REVEAL ANY NON-STATUTORY AGGRAVATION,
    Filed September 28, 2004 ................................................................. 325 - 329

72. MOTION FOR DISCLOSURE OF SIMILAR OR EXTRINSIC ACT
    EVIDENCE AND FOR PRETRIAL HEARING TO DETERMINE
    THE ADMISSIBILITY OF ANY ACTS ALLEGED BY THE STATE
    TO BE SIMILAR TRANSACTIONS, Filed September 28, 2004 .............................. 330 - 333

73. MOTION TO DISCLOSURE THE PAST AND PRESENT
    RELATIONSHIPS, ASSOCIATIONS AND TIES BETWEEN
    THE DISTRICT ATTORNEY AND PROSPECTIVE JURORS
    AND TO DISCLOSURE RECORDS ABOUT PROSPECTIVE
    JURORS IN THE PROSECUTOR'S POSSESSION,
    Filed September 28, 2004 ................................................................. 334 - 340

74. MOTION FOR AN ORDER REQUIRING THE PRODUCTION OF
    ALL MATTERS INVOLVING VICTIM IMPACT EVIDENCE
    PURSUANT TO THE PROVISIONS OF O.C.G.A. 17-10-1.1
    AND 17-10-1.2, Filed September 28, 2004 ............................................. 341 - 346

75. MOTION FOR DISCOVERY OF STATEMENTS OF
    DEFENDANT, Filed September 28, 2004 ................................................. 347 - 350

**PAGE**

76. MOTION FOR A BILL OF PARTICULARS FOR EACH
COUNT OF THE INDICTMENT, Filed September 28, 2004 ..................................... 351 - 353

77. MOTION TO PRODUCE NEGATIVES, Filed September 28, 2004.......................... 354 - 358

78. MOTION FOR AN ORDER PROTECTING ATTORNEY
WORK-PRODUCT AND OTHER PRIVILEGED MATERIALS
FROM DISCLOSURE IN VIOLATION OF THE FIFTH
AMENDMENT AND OTHER LAW, Filed September 28, 2004............................... 359 - 376

79. MOTION FOR AN ORDER TO PRESERVE ALL EVIDENCE,
Filed September 28, 2004......................................................................................... 377 - 3

80. MOTION FOR AN ORDER REQUIRING THE DISCLOSURE OF
ALL INFORMATION REGARDING EXPERT TESTING AND
EXAMINATIONS, Filed September 28, 2004........................................................... 382 - 387

81. MOTION REQUIRING THE DISCLOSURE OF ALL KNOWN
POTENTIAL MITIGATING EVIDENCE, Filed September 28, 2004 ...................... 388 - 391

82. MOTION FOR AN ORDER OF THIS COURT PROTECTING AND
ENFORCING DEFENDANT'S FIFTH AMENDMENT RIGHTS
AND HIS RIGHTS GUARANTEED BY ARTICLE I, I, XVI OF
THE CONSTITUTIONAL OF THE STATE OF GEORGIA,
Filed September 28, 2004......................................................................................... 392 - 409

83. MOTION TO PRODUCE PHOTOGRAPHS AND VIDEOTAPES,
Filed September 28, 2004......................................................................................... 410 - 413

84. MOTION QUASH THE INDICTMENT AND CHALLENGE TO
THE COMPOSITION OF THE GRAND AND PETIT JURIES,
Filed September 28, 2004......................................................................................... 414 - 417

**P A G E**

85. MOTION TO DISMISS THE INDICTMENT, Filed September 28, 2004................... 418 – 423

86. MOTION TO DISMISS THE INDICTMENT DUE TO THE ABUSE
OF THE GRAND JURY PROCESS, Filed September 28, 2004 ............................... 424 – 439

87. GENERAL DEMURRER TO INDICTMENT, Filed September 28, 2004 ................ 440 – 442

88. MOTION TO DISMISS THE INDICTMENT ON ACCOUNT OF
DISCRIMINATION IN THE SELECTION OF THE GRAND JURY
FOREPERSON, Filed September 28, 2004.................................................. 443 – 447

89. MOTION TO REQUIRE AN INSTRUCTION AT THE START OF
THE GRAND JURY INDICTMENT PROCEDURES, Filed
September 28, 2004 ................................................................. 448 – 451

90. MOTION TO DISMISS INDICTMENT OR, IN THE ALTERNATIVE,
MOTION TO QUASH THE INDICTMENT, Filed September 28, 2004.................... 452 – 456

91. MOTION TO STRIKE AS UNCONSTITUTIONAL THE GEORGIA
STATUTES PROVIDING FOR THE IMPOSITION OF THE DEATH
PENALTY AND THEIR APPLICATION TO THIS CASE,
Filed September 28, 2004 ........................................................... 457 – 461

92. MOTION TO BAR THE STATE'S NOTICE OF ITS INTENTION
TO SEEK THE DEATH PENALTY AND A PLEA TO CHALLENGE
THE GEORGIA JUDICIAL AND PROSECUTORIAL SELECTION
PROCESS AS VIOLATIVE OF THE DUE PROCESS AND EQUAL
PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES,
Filed September 28, 2004 ........................................................... 462 – 467

**PAGE**

93. MOTION FOR AN ORDER ALLOWING EVIDENCE AT
    SENTENCING REGARDING EXECITION BY LETHAL INJECTION,
    Filed September 28, 2004 ..................................................................... 468 – 471

94. PLEA IN BAR PREVENT THE STATE FROM SEEKING THE
    DEATH PENALTY ON THE GROUNDS OF DISPROPORTIONALITY,
    Filed September 28, 2004 ..................................................................... 472 – 474

95. MOTION TO BAR THE DEATH PENALTY BECAUSE THE
    STATE IS ARBITRARILY AND DISCRIMATORYILY SEEKING
    THE DEATH PENALTY ON IMPERMISSIBLE RACIAL GROUNDS,
    Filed September 28, 2004 ..................................................................... 475 – 49

96. MOTION TO EXCLUDE THE DEATH PENALTY ON
    ACCOUNT OF ARBITRARY USE OF PROSECUTORIAL
    DISCRETION IN THE PLEA BARGAINING PROCESS,
    Filed September 28, 2004 ..................................................................... 492 – 494

97. MOTION TO STRIKE AND DECLARE UNCONSTITUTIONAL
    O.C.G.A. 16-5-1, Filed September 28, 2004 ..................................................................... 495 – 498

2009-004213B-CR

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY
### STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | INDICTMENT # 04-9-0673-05 |
| | ) | |
| v. | ) | |
| | ) | |
| STACEY IAN HUMPHRIES, | ) | |
| Defendant. | ) | |

### AMENDED NOTICE OF APPEAL

Comes now, Stacey Ian Humphries, by and through undersigned counsel and files this Amended Notice of Appeal to include the attorneys of record. In so filing, Defendant gives notice that he appeals to the Georgia Supreme Court from the verdict and sentence entered herein and rendered on or about October 1, 2007.

Defendant was found guilty after a jury trial for two counts of murder and given a death sentence. Additionally, he was convicted of aggravated assault, kidnapping with bodily injury (2 counts), armed robbery (2 counts) and convicted felon in possession of a firearm. Defense counsel filed a timely Motion for New Trial. An Amended Motion for New Trial was later filed and a hearing held before the trial court. An order denying Defendant's Motion for New Trial and Amended Motion for New Trial was filed on February 19th, 2009.

The Clerk shall omit nothing from the record. Further, the record shall include the following transcripts:

(a) All motion transcripts;
(b) Motion for New Trial hearing;
(c) Amended Motion for New Trial transcripts;
(d) All trial transcripts.

The Georgia Supreme Court has jurisdiction on this case for reason that jurisdiction is reserved with the Supreme Court since the appeal is based upon a criminal conviction that carries capital punishment. Ga. Const. Art. VI, Section V, Par. III.

Respectfully submitted,

This _____23ʳᵈ_____ day of _____March_____, 2009.

**MITCH DURHAM**
Georgia State Bar # 235532
301 Washington Avenue
Marietta, GA 30060
(770) 427-0743

**JIMMY D. BERRY**
Georgia State Bar # 055500
236 Washington Ave.
Marietta, GA 30060
(770) 422-5434

**CARL GREENBERG**
Georgia State Bar # 307725
Georgia Capital Defender
225 Peachtree St. NE
South Tower   Suite 900
Atlanta, GA 30303
(404) 739-5151

ID# 2009-0042138-CR

## CERTIFICATE OF SERVICE

This is to certify that as of this date, I have served the proper prosecuting officer in the foregoing matter with a copy of the foregoing Motion by one of the following ways:

Depositing in the United States Mail, with adequate postage affixed thereon to:

> Cobb County District Attorney's Office
> Appeals Section
> Superior Court of Cobb County
> 10 East Park Square
> Marietta, GA 30090-9619

This the ___23rd___ day of ___MARCH___, 2009.

Respectfully submitted,

**MITCH DURHAM**
Georgia State Bar # 235532
301 Washington Avenue
Marietta, GA 30060
(770) 427-0743

**JIMMY D. BERRY**
Georgia State Bar # 055500
236 Washington Ave.
Marietta, GA 30060
(770) 422-5434

**CARL GREENBERG**
Georgia State Bar # 307725
Georgia Capital Defender
225 Peachtree St. NE
South Tower  Suite 900
Atlanta, GA 30303
(404) 739-5151

# IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

STATE OF GEORGIA )   INDICTMENT # 04-9-0673-05

      **v.**

STACEY IAN HUMPHRIES, )
Defendant. )

## NOTICE OF APPEAL

    Notice is hereby given that STACEY IAN HUMPHRIES, Defendant in the above-styled action, hereby appeals to the Georgia Supreme Court from the verdict and sentence entered herein and rendered. on or about October 1, 2007.

    Defendant filed a timely Motion for New Trial and Amended Motion for New Trial that was denied by the Trial Court. The order denying Defendant's Motion for New Trial and Amended Motion for New Trial was filed on February 19th, 2009.

    The Clerk shall omit nothing from the record. Further, the record shall include the following transcripts:

    (a) All motion transcripts;

    (b) Motion for New Trial hearing;

    (c) Amended Motion for New Trial transcripts;

    (d) All trial transcripts.

    This Court has jurisdiction on this case for reason that the appeal is based upon a criminal conviction that does carry capital punishment. Ga. Const. Art. VI, Section V, Par. III.

    This _____19th_____ day of _____March_____, 2009.

Respectfully submitted,

MITCH DURHAM
Attorney for Defendant
Georgia State Bar # 235532

301 Washington Avenue
Marietta, GA 30060
(770) 427-0743

Filed In Office Mar-20-2009 15:5...
ID# 2009-0041842-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that as of this date, I have served the proper prosecuting officer in the foregoing matter with a copy of the foregoing Motion by one of the following ways:

_____/_____ (a) Depositing in the United States Mail, with adequate postage affixed thereon; or

_____ (b) Personally placing a copy of same in his hands, or his authorized agent for this purpose.

Cobb County District Attorney's Office
Appeals Section
Superior Court of Cobb County
10 East Park Square
Marietta, GA 30090-9619

This the _____19th_____ day of _____March_____, 2009.

Respectfully submitted,

MITCH DURHAM
Attorney for Defendant
Georgia State Bar # 235532

301 Washington Avenue
Marietta, GA 30060
(770) 427-0743

ID# 2009-0041882
Page 2

ntm005

Filed Office Mar-19-2009 11:88:33
IDH 2009-0040388-CR
Page 1

04 - 9 - 00673 -05

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

# REPORT OF THE TRIAL JUDGE
## OF THE
## SUPERIOR COURT OF COBB COUNTY, GEORGIA

### THE STATE v. STACEY IAN HUMPHREYS
(A case in which the death penalty was imposed)

**A.**    **DATA CONCERNING THE DEFENDANT:**

1.   Name: <u>Humphreys     Stacey       Ian</u>
           Last          First       Middle

2.   Date of Birth <u>06/08/1973</u>
                    MM/DD/YY

3.   Sex:  M [X]  F [ ]

4.   Race:  African American [ ]  White [X]  Other _____

5.   Marital Status:      Never married [X]   Married  [ ]
                          Separated     [ ]   Divorced [ ]
                          Spouse deceased [ ]

6.   Number of children: <u>0</u>

7.   Father living: Yes [X]     No [ ], died _____ (year).
     Mother living: Yes [ ]     No [X], died <u>2000</u> (year).

8.   Number of brothers and sisters: <u>3</u>.

9.   Education completed: <u>High School graduate with some college</u>

10.  Intelligence level:    Low [ ]     (IQ below 70)
                            Medium [ ]  (IQ 70 to 100)
                            High  [X]   (IQ above 100)

11.  Psychiatric evaluation performed? Yes [X] No [ ]
     If performed, is defendant:                      Yes No
     a.    Able to distinguish right from wrong?       [X]  [ ]
     b.    Able to adhere to the right?                [X]  [ ]
     c.    Able to cooperate intelligently in his own defense? [X]  [ ]

| Offense | Date of Offense | Sentence Imposed |
|---|---|---|
| a. Burglary | 6/15/90 | 14 years |
| b. Burglary/Theft by Taking | 6/93 | 10 years/serve 3 |
| c. Burglary/Entering Auto | 7/93 | 10 years/serve 3 |
| d. Entering Auto/Burglary/ Forgery | 1/97; 3/97 | 10 years/serve 6 |
| e. Terroristic Threats/ Simple Battery | 3/97 | 1 year to serve |
| f. Theft by Receiving/ Possesion of Firearm By Convicted Felon | 4/97 | 3 years to serve |

7. Was there evidence the defendant was under the influence of narcotics or dangerous drugs at the time of the offense? Yes [ ]  No [X]

8. Which of the following statutory aggravating circumstances were instructed and which were found for Victim One?

|  | Instructed | Found |
|---|---|---|
| a. The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony. | [ ] | [ ] |
| b. (1) The offense of murder, rape, armed robbery or kidnapping was committed while the offender was engaged in the commission of another capital felony or aggravated battery; or | [X] | [X] |
| (2) The offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree. | [ ] | [ ] |
| c. The offender by his act of murder, armed robbery or kidnapping knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person. | [ ] | [ ] |
| d. The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value. | [X] | [X] |
| e. The murder of a judicial officer, former judicial officer, district attorney or solicitor-general | [ ] | [ ] |

12.    If examined, were any behavioral disorders found?  Yes [X]     No [ ]

13.    What other pertinent psychiatric (and psychological) information was revealed?  <u>Post traumatic stress disorder; Asperger's disorder; Disassociative disorder</u>

14.    Prior work record of defendant:

| <u>Type job</u> | <u>Salary</u> | <u>Dates held</u> | <u>Reason for Termination</u> |
|---|---|---|---|
| a. Cleveland Electrical | $15/hr | 2003 | Arrest |
| b Merit Construction | $12/hr | 10/02-1/03 | Laid off |
| c. Comfort Air Design | $10/hr | 1996 | Arrest |
| d. Brookstone Country Club | $___ | 1993 | Arrest |
| e. McDonald's | Min. wage | 1990 | _____ |

**B.    DATA CONCERNING THE TRIAL:**

1.    How did the defendant plead? <u>Not Guilty</u>
2.    Was the guilt phase of the case tried before a jury? <u>Yes</u>
3.    Was the sentencing phase tried before a jury? <u>Yes</u>

**C.    OFFENSE-RELATED DATA:**

1.    Offense(s) for which the defendant received a death sentence:
<u>a. Malice Murder – Victim One</u>     <u>b. Malice Murder – Victim Two</u>

2.    If other offenses were tried in the same trial, list those offenses:
<u>a. Aggravated Assault – Two Counts</u>    <u>b. Kidnapping – Two Counts</u>
<u>c. Armed Robbery – Two Counts</u>    <u>d. Felony Murder – Two Counts</u>

3.    If tried with a jury, was the jury instructed to consider mitigating circumstances?    Yes   [X]   No   [ ]

4.    Does the defendant's physical or mental condition call for any special consideration?    Yes   [ ]   No   [X]

5.    Does the defendant have a record of prior convictions?  Yes [X] No [ ]

6.    If answer is yes, list the offenses, the dates of the offenses, and the sentences imposed:

or former district attorney or
solicitor-general during or because of the
exercise of his official duty.

f. The offender caused or directed another to commit    [ ]        [ ]
   murder or committed murder as an agent or
   employee of another person.

g. The offense of murder, rape, armed robbery, or       [X]        [X]
   kidnapping was outrageously or wantonly vile,
   horrible or inhuman in that it involved
   torture, depravity of mind, or an aggravated
   battery to the victim.

h. The offense of murder was committed against any      [ ]        [ ]
   peace officer, corrections employee or fireman
   while engaged in the performance of his
   official duties.

i. The offense of murder was committed by a person      [ ]        [ ]
   in, or who has escaped from, the lawful custody
   of a peace officer or place of lawful
   confinement.

j. The murder was committed for the purpose of          [X]        [X]
   avoiding, interfering with, or preventing, a
   lawful arrest or custody in a place of lawful
   confinement, of himself or another.

9. List significant nonstatutory aggravating circumstances indicated by the
   evidence:
   a. See record
   b.
   c.
   d.

10. Which, if any, of the following mitigating circumstances was in evidence?

   a.    The defendant had no prior history of criminal activity.    [ ]

   b.    The murder was committed while the defendant was under the influence of
         extreme mental or emotional disturbance.    [ ]

   c.    The victim was a participant in the defendant's homicidal conduct
         or consented to the homicidal act.    [ ]

d.   The murder was committed under circumstances which the defendant believed to provide a moral justification or extenuation for his conduct.          [ ]

e.   The defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor.      [ ]

f.   The defendant acted under duress or under the domination of another person.          [ ]

g.   At the time of the murder, the capacity of the defendant to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication.   [ ]

h.   The youth of the defendant at the time of the crime.          [ ]

i.   The evidence, although sufficient to sustain the conviction, does not foreclose all doubt respecting the defendant's guilt.          [ ]

j.   Other   [X]
     Please explain if (j) is checked: The Defendant was physically abused as a child and possibly sustained a head injury

11.   Was Victim One related by blood or marriage to the defendant?
      Yes   [ ]   No   [X]

12.   Was Victim One an employer or employee of defendant?
      Yes [ ]: Employer [ ] Employee [ ]      No [X]

13.   Was Victim One acquainted with the defendant?   No Evidence
      Casual acquaintance [ ]      Friend [ ]

14.   Was Victim One a local resident or a transient in the community?
      Resident   [X]   Transient   [ ]

15.   Was Victim One the same race as defendant?   Yes   [X]   No   [ ]

16.   Was Victim One the same sex as the defendant?   Yes   [ ]   No   [X]

17.   Was Victim One held hostage during the crime?
      Yes; less than one hour [ ]   Yes; more than one hour [ ]   No [X]

18.   Victim One's reputation in the community was:
      Good [ ]   Bad [ ]   Unknown [X]

19. Was Victim One tortured?   Yes [X]    No [ ]
If yes, state extent of torture:  The evidence showed that Victim One sustained
ligature marks on her neck and was asphyxiated prior to her death

20. What was the age of Victim One?  33

21. If a weapon was used against Victim One in commission of the crime, was it:
No weapon used [ ]    Blunt instrument [ ]    Poison [ ]
Motor vehicle [ ]    Sharp instrument [ ]    Firearm [X]

22. Which of the following statutory aggravating circumstances were instructed
and which were found for Victim Two?

|   |   | Instructed | Found |
|---|---|---|---|
| a. | The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony. | [ ] | [ ] |
| b. | (1) The offense of murder, rape, armed robbery or kidnapping was committed while the offender was engaged in the commission of another capital felony or aggravated battery; or | [X] | [X] |
|   | (2) The offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree. | [ ] | [ ] |
| c. | The offender by his act of murder, armed robbery or kidnapping knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person. | [ ] | [ ] |
| d. | The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value. | [X] | [X] |
| e. | The murder of a judicial officer, former judicial officer, district attorney or solicitor-general or former district attorney or solicitor-general during or because of the exercise of his official duty. | [ ] | [ ] |

f.  The offender caused or directed another to commit    [ ]         [ ]
    murder or committed murder as an agent or
    employee of another person.

g.  The offense of murder, rape, armed robbery, or      [X]         [X]
    kidnapping was outrageously or wantonly vile,
    horrible or inhuman in that it involved
    torture, depravity of mind, or an aggravated
    battery to the victim.

h.  The offense of murder was committed against any     [ ]         [ ]
    peace officer, corrections employee or fireman
    while engaged in the performance of his
    official duties.

i.  The offense of murder was committed by a person     [ ]         [ ]
    in, or who has escaped from, the lawful custody
    of a peace officer or place of lawful
    confinement.

j.  The murder was committed for the purpose of         [X]         [X]
    avoiding, interfering with, or preventing, a
    lawful arrest or custody in a place of lawful
    confinement, of himself or another.

23. List significant nonstatutory aggravating circumstances indicated by the
    evidence:
    a.  See record _____
    b.  _____
    c.  _____
    d.  _____

24. Which, if any, of the following mitigating circumstances was in evidence?

    a.    The defendant had no prior history of criminal activity.    [ ]

    b.    The murder was committed while the defendant was under the influence of
          extreme mental or emotional disturbance.      [ ]

    c.    The victim was a participant in the defendant's homicidal conduct
          or consented to the homicidal act.    [ ]

    d.    The murder was committed under circumstances which the defendant
          believed to provide a moral justification or extenuation for his
          conduct.      [ ]

e.  The defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor.  [ ]

f.  The defendant acted under duress or under the domination of another person.  [ ]

g.  At the time of the murder, the capacity of the defendant to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication.  [ ]

h.  The youth of the defendant at the time of the crime.  [ ]

i.  The evidence, although sufficient to sustain the conviction, does not foreclose all doubt respecting the defendant's guilt.  [ ]

j.  Other  [X]
    Please explain if (j) is checked:  <u>Defendant was physically abused as a child and possibly sustained a head injury</u>

25. Was Victim Two related by blood or marriage to the defendant?
    Yes  [ ]  No  [X]

26. Was Victim Two an employer or employee of defendant?
    Yes [ ]: Employer [ ] Employee [ ]    No [X]

27. Was Victim Two acquainted with the defendant?   <u>No Evidence</u>
    Casual acquaintance [ ]    Friend [ ]

28. Was Victim Two a local resident or a transient in the community?
    Resident  [X]  Transient  [ ]

29. Was Victim Two the same race as defendant?    Yes  [X]  No  [ ]

30. Was Victim Two the same sex as the defendant?  Yes  [ ]  No  [X]

31. Was Victim Two held hostage during the crime?
    Yes; less than one hour [ ]   Yes; more than one hour [ ]   No  [X]

32. Victim Two's reputation in the community was:
    Good [ ]    Bad [ ]    Unknown [X]

33. Was Victim Two tortured?    Yes [ ]    No [X]
    If yes, state extent of torture: _____

34. What was the age of Victim Two? <u>21</u>

35. If a weapon was used against Victim Two in commission of the crime, was it:
No weapon used [ ]    Blunt instrument [ ]    Poison  [ ]
Motor vehicle  [ ]    Sharp instrument [ ]    Firearm  [X]

**D.    REPRESENTATION OF DEFENDANT:**
(If more than one counsel served, answer these questions as to each counsel and attach to this report.)

1. Name of Counsel 1 and date secured: <u>Jimmy Berry; Nov. 2003</u>

2. How was counsel secured:  <u>Initially retained; later appointed by court</u>

3. If counsel was appointed by court was it because

   a.    Defendant was unable to afford counsel?  [X]
   b.    Defendant refused to secure counsel?    [ ]
   c.    Other (explain)_____

4. How many years has counsel practiced law?
   a. 0 to 5 [ ]        b. 5 to 10 [ ]    c. over 10 [X]

5. What is the nature of counsel's practice?
   a. mostly civil [ ]    b. general [ ]    c. mostly criminal [X]

6. Did the same counsel serve throughout the trial?    Yes [X]  No [ ]

7. If not, explain in detail. _____

8. Secondary counsel: Provided through Georgia Capital Defender's Office

**E.    GENERAL CONSIDERATIONS**

1. Did race appear as an issue in the trial?    Yes [ ]    No [X]

2. Was there extensive publicity in the community concerning the case?
   Yes [X]*        No [ ]
   * Trial was relocated from Cobb County to Glynn County due to extensive pre-trial publicity

3. Was the jury impermissibly influenced by passion, prejudice, or any other arbitrary factor when imposing sentence?    Yes [ ]    No [X]

4. If answer is yes, explain: _____

5. In your opinion, was the death sentence imposed in this case appropriate?
   Yes [X]    No [ ]
   General comments concerning your answer: _____

_____


**F.    FORMS FOR REQUIRED JURY CERTIFICATES:**
(These certificates are required by Rule II (A)(6) of the Unified Appeal
Procedure.)

**Grand Jury Certificate**

This court has reviewed the Grand Jury List for Cobb County, from which the
Grand Jury was selected that rendered the indictment in this case. This
Grand Jury List was last revised in the year 2002.

The following categories are "cognizable groups" in this county within the
meaning of the Unified Appeal and current state and federal law:
A. Males      B. Females      C. African Americans      D. Whites

The total county population according to the most recent decennial census
is 607,751.
The total county population over 18 years old, according to the most recent
census is 449,345.
The total number of persons on the grand jury list is 3,000.

For each "cognizable group" listed above, calculate the percentage of the
over-18 population of the county represented by the cognizable group, as
follows:

A. Males
1. The total population over 18 years old in the county is 449,345.
2. The total population of cognizable group A (males) is 219,929.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 48.9 %
4. The number of people on the grand jury list is 3,000.
5. The number of males on the grand jury list is 1,470.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: 49 %
7. Subtract the larger from the smaller: .01 % (must be less than 5%)

B. Females
1. The total population over 18 years old in the county is 449,345.
2. The total population of cognizable group B (females) is 229,416.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 51.1 %

4. The number of people on the grand jury list is <u>3,000</u>.
5. The number of females on the grand jury list is <u>1,530</u>.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: <u>51</u> %
7. Subtract the larger from the smaller: <u>.01</u> % (must be less than 5%)

C. African Americans
1. The total population over 18 years old in the county is <u>449,345</u>.
2. The total population of cognizable group C (African Americans) is <u>77,784</u>.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: <u>17.3</u> %
4. The number of people on the grand jury list is <u>3,000</u>.
5. The number of African Americans on the grand jury list is <u>519</u>.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: <u>17.3</u> %
7. Subtract the larger from the smaller: <u>0</u> % (must be less than 5%)

D. Whites
1. The total population over 18 years old in the county is <u>449,345</u>.
2. The total population of cognizable group D (whites) is <u>319,272</u>.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: <u>71.1</u> %
4. The number of people on the grand jury list is <u>3,000</u>.
5. The number of whites on the grand jury list is <u>2,133</u>.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: <u>71.1</u> %
7. Subtract the larger from the smaller: <u>0</u> % (must be less than 5%)

This court is satisfied that the identified cognizable groups are adequately represented on the grand jury list.

**Traverse Jury Certificate**

This court has reviewed the Traverse Jury List for Glynn County from which the defendant's traverse jury panel was selected. This Traverse Jury List was last revised in the year <u>2007</u>.

The following categories are "cognizable groups" in this county within the meaning of the Unified Appeal and current state and federal law:
A. Males    B. Females    C. African Americans    D. Whites
E. Other

The total county population according to the most recent decennial census is <u>67,568</u>.
The total county population over 18 years old, according to the most recent census is <u>50,460</u>.
The total number of persons on the Traverse Jury List is <u>26,411</u>.

For each "cognizable group" listed above, calculate the percentage of the

over-18 population of the county represented by the cognizable group, as
follows:

A. Males
1. The total population over 18 years old in the county is 50,460.
2. The total population of cognizable group A (males) is 23,555.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 46.68 %
4. The number of people on the Traverse Jury List is 26,411.
5. The number of males on the Traverse Jury List is 12,112.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: 45.86 %
7. Subtract the larger from the smaller: .821 % (must be less than 5%)

B. Females
1. The total population over 18 years old in the county is 50,460.
2. The total population of cognizable group B (females) is 26,905.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 53.32 %
4. The number of people on the Traverse Jury List is 26,411.
5. The number of females on the Traverse Jury List is 14,299.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: 54.14 %
7. Subtract the larger from the smaller: .821 % (must be less than 5%)

C. African Americans
1. The total population over 18 years old in the county is 50,460.
2. The total population of cognizable group C (African Americans) is 11,821.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 23.43 %
4. The number of people on the Traverse Jury List is 26,411.
5. The number of African Americans on the Traverse Jury List is 6,056.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: 22.93 %
7. Subtract the larger from the smaller: .497 % (must be less than 5%)

D. Whites
1. The total population over 18 years old in the county is 50,460.
2. The total population of cognizable group D (whites) is 37,381.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 74.08 %
4. The number of people on the Traverse Jury List is 26,411.
5. The number of whites on the Traverse Jury List is 19,963.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: 75.59 %
7. Subtract the larger from the smaller: 1.505 % (must be less than 5%)

E. Other
1. The total population over 18 years old in the county is 50,460.
2. The total population of cognizable group E is 1,258.
3. Divide answer 2 by answer 1, move the decimal 2 places to the right: 2.49 %
4. The number of people on the Traverse Jury List is 26,411.
5. The number of cognizable group E on the Traverse Jury List is 311.
6. Divide answer 5 by answer 4, move the decimal 2 places to the right: 1.18 %

7. Subtract the larger from the smaller: <u>1.316</u> % (must be less than 5%)

This court is satisfied that the identified cognizable groups are adequately represented on the Traverse Jury List.

## G. CHRONOLOGY OF CASE:

| | | | Elapsed Days |
|---|---|---|---|
| 1. | Date of offense: | 11/03/03 | |
| 2. | Date of arrest: | 11/08/03 | <u>5</u> |
| 3. | Date trial began: | 09/04/07 | <u>1394</u> |
| 4. | Date sentence imposed: | 09/30/07 | <u>26</u> |
| 5. | Date motion for new trial ruled on: | 02/19/2009 | <u>507</u> |
| 6. | Date trial judge's report completed: | 03/18/2009 | 27 |
| 7. | Date received by Supreme Court: [1] | | |
| 8. | Date sentence review completed: | | |
| 9. | Total elapsed days: [1] | | |

( [1] To be completed by Supreme Court.)

This report was submitted to the defendant's counsel for such comments as counsel desired to make concerning the factual accuracy of the report, and:

| | | |
|---|---|---|
| 1. | Defense counsel's comments are attached | [ ] |
| 2. | Defense counsel offered no comments | [ ] |
| 3. | Defense counsel has not responded at this time | [X] |

Mar. 18 2009
(Date)

Dorothy A. Robinson
Judge, Superior Court of Cobb County Judicial Circuit

# JUDGE ROBINSON

RE: Warrant(s)
03-W-12137

## GENERAL BILL OF INDICTMENT

WITNESSES

Det. Herman
CCPD

NO. **040673**
COBB SUPERIOR COURT

**JANUARY/FEBURARY TERM 2004**

THE STATE OF GEORGIA
V.
**STACEY IAN HUMPHREYS**

_True_ BILL
Feb 12 , 20 04

_(signature)_
Grand Jury Foreperson
Delivered in open Court by:

_(signature)_
Grand Jury Bailiff

JAY C. STEPHENSON, Clerk, S. C.

**PATRICK H. HEAD, District Attorney**

The Defendant herein waives copy of
indictment, list of witnesses, formal
arraignment and pleads _____ Guilty
_as to count eleven (11)_

Defendant _(signature)_

Attorney for Defendant _(signature)_

_Eleanor a Dixon_
Assistant District Attorney

The Defendant herein waives copy of
indictment, list of witnesses, formal
arraignment and pleads _Not_ Guilty

Defendant _(signature)_

Attorney for Defendant _(signature)_

Assistant District Attorney

Filed In Office Oct-10-2007 14:51:51
ID# 2007-0146935-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

Filed In Office Feb-12-2004 17:24:14
ID# 2004-0017924-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

040019

STATE OF GEORGIA, COUNTY OF COBB

IN THE SUPERIOR COURT OF SAID COUNTY

THE GRAND JURORS selected, chosen and sworn for the County of Cobb, to wit:

Richard L. Perry- Foreperson

Neeka Moultrie-Asst. Foreperson

Kristen Louise Grace-Secretary

Randall R. Thomas, Sr.

Christopher John Wix

Elie Thaddeus Ducros

Joyce Davis Stringer

Claudell Taylor

Lewen Grant Brown

Alfred Hinton, Jr.

Dorothy Price Cash

Eileen Joan Lawrence

Cynthia J. Matthews-Alt #2

~~James L. Stewart~~

Miguel Solorzano

~~Daniel George Hess~~

Benjamin Franklin Cox, Jr.

Bette N. Selfridge

~~James Patrick Spaulding~~

Jarius Lamar Hayes

Kathy J. Sexton

~~Joel John Barch~~

Nhut Dao Huynh

Fredric I. Weitz

JoAnne V. Cash-Alt #1

in the name and behalf of the citizens of Georgia, charge and accuse **STACEY IAN HUMPHREYS** with the offense of **MURDER,** for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, **2003, did unlawfully and with malice aforethought cause the death of Cynthia Williams a human being, by shooting her with a pistol;** contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-0017924-CR
Page 2

# COUNT TWO

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **MURDER**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did unlawfully and with malice aforethought cause the death of Lori Brown a human being, by shooting her with a pistol**; contrary to the laws of said state, the good order, peace and dignity thereof.

# COUNT THREE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **FELONY MURDER**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Cynthia Williams a human being, by shooting her with a pistol**; contrary to the laws of said state, the good order, peace and dignity thereof.

# COUNT FOUR

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **FELONY MURDER**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Lori Brown a human being, by shooting her with a pistol**; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT FIVE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **AGGRAVATED ASSAULT,** for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did unlawfully make an assault upon the person of Cynthia Williams, with a pistol, a deadly weapon by shooting her;** contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT SIX

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **AGGRAVATED ASSAULT,** for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did unlawfully make an assault upon the person of Lori Brown, with a pistol, a deadly weapon by shooting her;** contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT SEVEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **KIDNAPPING WITH BODILY INJURY,** for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did unlawfully abduct and steal away Cynthia Williams, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit: a gunshot wound;** contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT EIGHT

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **KIDNAPPING WITH BODILY INJURY**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **did unlawfully abduct and steal away Lori Brown, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit: a gunshot wound**; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT NINE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **ARMED ROBBERY**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **with intent to commit theft, did take property of another, to wit: a Bank of America Bank Card from the person and immediate presence of Cynthia Williams, by use of an offensive weapon, to wit: a pistol**; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT TEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **ARMED ROBBERY**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **with intent to commit theft, did take property of another, to wit: a Wachovia Bank Card from the person and immediate presence of Lori Brown, by use of an offensive weapon, to wit: a pistol**; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-00173924-CR
Page 5

## COUNT ELEVEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse **STACEY IAN HUMPHREYS** with the offense of **POSSESSION OF A FIREARM BY A CONVICTED FELON,** for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, **having been convicted on the 11th day of October, 1993, by a court of competent jurisdiction to wit: Superior Court of Cobb County Case# 93-3083, of the offense of Burglary, a felony, under the laws of this State, did possess and transport a firearm to wit: a Rugar 9mm handgun;** contrary to the laws of said state, the good order, peace and dignity thereof.

PATRICK H. HEAD, District Attorney

Warrant No. 03-W-12137   Case No: 03149929

219667

# CRIMINAL WARRANT

**MAGISTRATE COURT OF COBB COUNTY**
**GEORGIA, COBB COUNTY**

**Warrant No. 03-W-12137**
**Police Case No. 03149929**   04-9- 0673

Personally came E M Herman who makes oath before a Magistrate of this Court that Stacey Ian Humphreys (hereinafter called the accused) AKA: Unknown did, at 12:45:PM,on the 3rd day of November, 2003 at 6156 Windflower Drive,Powder Springs in the County of Cobb,Georgia, commit the offense of MurderFelony (2 Counts)(F) violating O.C.G.A, Section 16-5-1,for that said accused did while in the commission of a felony: Armed Robbery, cause the death of Cynthia Williams and Lori Brown, human beings, by shooting them with a pistol.; commit the offense of Armed Robbery Weapon (2 Counts)(F) violating O.C.G.A, Section 16-8-41,for that said accused did with the intent to commit theft, take without legal justification, the personal property of Cynthia Williams and Lori Brown, from the immediate presence of both persons, by use of an offensive weapon: to wit; a pistol. ;

and affiant makes this affidavit that a warrant may issue for the arrest of the accused.

Affiant: E M Herman
Badge No. CC0393

Sworn to and subscribed before me, this 7th day of November, 2003.

Magistrate /Deputy Clerk

**To any Sheriff, Deputy Sheriff, Coroner, Constable, or Marshall or said State –**

**GREETINGS:**
For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony established probable cause for the arrest of the accused, you are therefore commanded to Stacey Ian Humphreys accused named in the foregoing affidavit charged by the prosecutor therein with the offense against the laws of this State named in said affidavit and bring the accused before me, or some other judicial officer of Georgia, to be dealt with as the law directs. HEREIN FAIL NOT.
This 7th day of November, 2003.

MAGISTRATE: Cecil Mclendon

Filed In Office Feb-12-2004 17:29:02
ID# 2004-0017934-CR
Page 1

Jay C. Stephenson
Clerk of Superior Court Cobb County

As the issuing judge/affiant,
I do hereby verify that this document is an original criminal warrant with electronically generated signatures. Judge/Affiant

OM0025

Warrant No. 03-W-12137 Case No. 03149929

| This Criminal Warrant is DISMISSED for the following reason: | This Criminal Warrant is transferred to the State Court of Cobb County for the following reasons: |
|---|---|
| ☐ The affiant has requested a dismissal and all costs have been paid. | ☐ This Court heard evidence in a committal hearing and determined that probable cause existed. |
| ☐ The prosecutor has requested dismissal – see attached paperwork. | ☐ The accused waived a committal/probable cause hearing. |
| ☐ Failure of the prosecuting witness to appear for a scheduled hearing after valid service of subpoena. | ☑ Administratively transferred without waiving any rights the defendant may have in the Magistrate Court. |
| ☐ After this court heard evidence in a committal hearing it is determined that no probable cause exists. | |
| ☐ Other reason: | |

This the ____ day of ____

MAGISTRATE

This the 17 day of *November, 2003*

MAGISTRATE _IC-R6_

---

Warrant No. 03-W-12137
Police Case No. 03149929

**MAGISTRATE COURT OF COBB COUNTY
CRIMINAL WARRANT**

**THE STATE**

*VERSUS*

RECEIVED BY FUGITIVE DIVISION

DATE _110703_

OFFICER _F8-03-1717_

Stacey Ian Humphreys
4815 Cherring Drive
Dunwoody, GA., 30338

BOND: $ [SPO-17-6-1]

**CHARGE**
MurderFelony (2 Counts)(F); Armed Robbery Weapon (2 Counts)(F)

Georgia, Cobb County
I have this date executed this Warrant by placing the Defendant in the Cobb County Jail.
This 12 day of NOVEMBER 2003

Arresting Officer _Sgt. S.M. Col 254_

WARRANT LOG 21 STATE DATE 11-7-03

JAIL SURCHARGE $____

TOTAL BOND $ ____

WARRANT POSTED BY: ____

Hug't ve/Vest 3358.16

---

Initial Appearance Hearing held on
___ day of 13, Nov, 2003

MAGISTRATE _Gel C_

Officer Name: E·M Herman    Address: 140 North Marietta Pkwy., Marietta, GA 30060 Phone: (770) 499-3952

Witnesses for the State
Eddie Herman (detective)    140 North Marietta Parkway, Marietta, GEORGIA 30060    (o)770-499-3952  (h)

Co_Defendant:

Page 2

2003 NOV -7 PM 6:50
COBB COUNTY GA
RECEIVED

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

STATE OF GEORGIA                          *
                                          *
v.                                        *           INDICTMENT#
**STACEY IAN HUMPHREYS**                  *           *04-9-0673*

### NOTICE OF STATE'S INTENT
### TO SEEK THE DEATH PENALTY

Notice is hereby given that the State of Georgia will seek the death penalty in the event of
a conviction for murder in the above-styled case, and expects the following statutory
aggravating circumstances to be authorized by the evidence under Official Code of
Georgia Annotated 17-10-30:

Under O.C.G.A. 17-10-30 (b)(2):
    The offense of the murder of Cynthia Williams was committed while the offender
    was engaged in the commission of another capital felony.

    The offense of the murder of Lori Brown was committed while the offender was
    engaged in the commission of another capital felony.

Under O.C.G.A. 17-10-30(b)(4)
    The offense of the murder of Cynthia Williams was committed for the purpose of
    receiving money or any other thing of monetary value;

    The offense of the murder of Lori Brown was committed for the purpose of
    receiving money or any other thing of monetary value;

Under O.C.G.A 17-10-30 (b)(7)
    The offense of the murder of Cynthia Williams was outrageously or wantonly
    vile, horrible, or inhuman in that it involved torture, depravity of mind, or an
    aggravated battery to the victim.

    The offense of the murder of Lori Brown was outrageously or wantonly vile,
    horrible, or inhuman in that it involved torture, depravity of mind, or an
    aggravated battery to the victim.

Filed In Office Feb-12-2004 17:24:14
ID# 2004-0017925-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

Under O.C.G.A. 17-10-30 (b)(10)

The offense of the murder of Cynthia Williams was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest.

The offense of the murder of Lori Brown was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest.

The State of Georgia requests the court to notify the jury in writing after a conviction for murder of the above statutory aggravating circumstances, as well as any others, which may be supported by the evidence upon the trial of this case. O.C.G.A. 17-10-30 (c).

Respectfully submitted,

PATRICK H. HEAD
District Attorney
Cobb County Judicial Circuit

ELEANOR DIXON
Assistant District Attorney
Cobb County Judicial Circuit

## COBB COUNTY MAGISTRATE COURT DISCLOSURE STATEMENT

THIS FORM **MUST** BE COMPLETED BEFORE THIS CASE CAN BE ASSIGNED TO A JUDGE OR
SCHEDULED FOR **ANY** TYPE OF HEARING.

STATE OF GEORGIA
VS.
*Stacey Ian Humphreys*

ALIAS _____

WARRANT NUMBER *03-W-12137*

CASE NUMBER *049-0673*

ASSIGNED COURT *5/21*

PDID/SOID *219667*

### CATEGORIES:

1. _____ DEATH PENALTY
2. ✓ MURDER
3. _____ RAPE
4. _____ ARMED ROBBERY
5. _____ KIDNAPPING
6. _____ VOLUNTARY MANSLAUGHTER
7. _____ FELONY INVOLUNTARY MANSLAUGHTER
8. _____ FELONY VEHICULAR HOMICIDE
9. _____ MISD. INVOLUNTARY MANSLAUGHTER
10. _____ MISD. VEHICULAR HOMICIDE
11. _____ AGGRAVATED BATTERY
12. _____ AGGRAVATED ASSAULT
13. _____ AGGRAVATED CHILD MOLESTATION
14. _____ CHILD MOLESTATION
15. _____ CRUELTY TO CHILDREN

16. _____ AGGRAVATED SODOMY
17. _____ TRAFFICKING DRUGS
18. _____ SALE-DRUGS
19. _____ POSSESSION W/INTENT TO DISTRIBUTE
20. _____ POSSESSION DRUGS
21. _____ BURGLARY
22. _____ THEFT OFFENSES
23. _____ HABITUAL VIOLATOR
24. _____ FELONY OBSTRUCTION OF AN OFFICER
25. _____ OTHER: _____

27. _____ AGGRAVATED STALKING
28. _____ MCS ALL WARRANTS

CATEGORIES ARE LISTED BY SEVERITY. PLEASE SELECT ONLY ONE (1) CATEGORY.
IF MORE THAN ONE (1) CATEGORY, SELECT THE MOST SEVERE OFFENSE.

### PREVIOUS RELATED CASES

DOES THIS CASE SUBSTANTIALLY INVOLVE THE SAME PARTY AS ANY OTHER CASE FILED IN THIS COURT?

_____ NO

✓ YES    IF YES, PLEASE FILL OUT THE FOLLOWING:

1. RELATED CASE/WARRANT NUMBER *~~0000~~ 93-W-9486*
   NAME ON RELATED WARRANT *Stacey Ian Humphreys*
   ASSIGNED COURT FROM RELATED WARRANT *5*

2. CO-DEFENDANTS NAME/WARRANT NUMBER:

   _____
   _____
   _____

MAGISTRATE CLERK OR SUBMITTING PARTY *KM*

DATE *11-17-03*

000029

Filed In Office Feb-12-2004 17:09:08
ID# 2004-0017928-CR
Page 1
Jay C. Stephenson
Superior Court Cobb County



# OFFICE OF THE DISTRICT ATTORNEY

## PATRICK H. HEAD

DISTRICT ATTORNEY, COBB JUDICIAL CIRCUIT
10 EAST PARK SQUARE, MARIETTA, GA. 30090

W. THOMAS WEATHERS, III
CHIEF ASSISTANT DISTRICT ATTORNEY

Telephone (770) 528-3080
Facsimile (770) 528-3030
e-mail cobbda@cobbcounty.org

TRACI HATFIELD
PARALEGAL

## MEMORANDUM

*04-9-0673*

| | |
|---|---|
| **TO:** | JAY STEPHENSON, |
| | Superior Court Clerk |
| **FROM:** | PATRICK H. HEAD |
| Re: | ATTORNEY ASSIGNMENT |
| Date: | February 10, 2004 |

## State of Georgia vs. **Stacey Ian Humphreys**

## Warrant Number    03-W-12137

Eleanor Dixon, (Senior) Assistant District Attorney, telephone number (770) 528-3034, has been assigned to the above referenced case.

Filed In Office Feb-12-2004 17:29:02
ID# 2004-0017929-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

Ob0030

# OFFICE OF THE DISTRICT ATTORNEY

## COBB JUDICIAL CIRCUIT

## STATE OF GEORGIA

TO: SUPERIOR COURT CLERK          *049-0673*

FROM: DISTRICT ATTORNEY'S OFFICE

DATE: *2-12-04*

### DEFENDANT STATUS

NAME *Stacey Ian Humphrey*

INDICTMENT DATE _____

BOND RELEASE DATE _____

PLACE OF INCARCERATION *Cobb Co. Jail*

REINDICTMENT OF CASE NO. _____
(TRANSFER BOND INFORMATION AND WARRANT, ETC.)

Filed In Office Feb-12-2004 17:29:02
ID# 2004-0017930-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

011031

# IN THE MAGISTRATE COURT OF COBB COUNTY

## STATE OF GEORGIA

STATE OF GEORGIA,              *
                              *
v                             *        Warrant No. 03W12137
                              *
STACEY IAN HUMPHREYS,          *        04-9-0673

### WAIVER OF APPEARANCE

I herby waive my appearance at the Probable Cause Hearing set for November 26, 2003.
I do not wish to attend this hearing, but request that my attorney be able to proceed without me
being present.

This 26th day of November, 2003.

Stacey Ian Humphreys, Defendant

FILED IN COBB COUNTY MAGISTRATE COURT
this ____ DAY OF _Nov 2003_
AT ___ O'CLOCK __ M

Clerk, Magistrate Court of Cobb County

Filed In Office Feb-12-2004 17:29:02
ID# 2004-0017931-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

000032

# IN THE COBB COUNTY MAGISTRATE COURT

## STATE OF GEORGIA

STATE OF GEORGIA,

v.

STACEY HUMPHREYS
    Defendant.

CASE NO. 03W12137

*04-9-0673*

## ENTRY OF APPEARANCE AS COUNSEL

Pursuant to Uniform State and Superior Court Rules 4.2 and 4.6, the undersigned attorney herein makes an Entry of Appearance as counsel of record in the above-styled case for and on behalf of the above-named Defendant.

The undersigned attorney is aware of the duty imposed by Uniform State Court and Superior Court Rules 4.2 and 4.6 that any changes in representation, name, address or telephone number will be communicated to the District Attorney's office.

JIMMY D. BERRY
236 Washington Avenue
Marietta, Georgia 30060
(770) 422-5434

Respectfully submitted on November 24, 2003.

JIMMY D. BERRY
Georgia State Bar No. 055500

Jay C. Stephenson
Clerk of Superior Court Cobb County

ID# 2004-0017932-CR
Page 1

000033

## CERTIFICATE OF SERVICE

This is to certify that, as of this date, I have served the proper prosecuting officer in the foregoing matter with a copy of the foregoing by one of the following ways:

_____ ✓ (a)    Depositing in the United States Mail, with adequate postage affixed thereon; or

_____ (b)    Personally placing a copy of same in his hands, or his authorized agent for this purpose.

District Attorney
Cobb Co Superior Court
12 East Park Square
Marietta, GA 30060

Respectfully submitted on November 24, 2003.

Respectfully submitted,

JIMMY D. BERRY
State Bar No. 055500
Attorney for Defendant

236 Washington Avenue
Marietta, Georgia 30060
(770) 422-5434

ID# 2004-0017932-CR
Page 2

# IN THE MAGISTRATE COURT OF COBB COUNTY

## STATE OF GEORGIA

**WARRANT NUMBER(S):**
03-W-12137

04-9-0673

**THE STATE OF GEORGIA**

**vs.**

**STACEY IAN HUMPHREYS**

**CHARGE(S)**
| | |
|---|---|
| 16-5-1 | MURDER FELONY |
| 16-5-1 | MURDER FELONY |
| 16-8-41 | ARMED ROBBERY |
| 16-8-41 | ARMED ROBBERY |

## ORDER

The above and foregoing case(s) having been called for a probable cause hearing at **09:00 AM** on **NOVEMBER 26, 2003** and the state having been represented by **Pat Head** and the defendant having been represented by **JIMMY DODD BERRY** and after hearing evidence from the following witnesses, to wit:

**EDWARD M HERMAN**

it is the finding of the court that:

(✔) Probable cause does exist in the above and foregoing case(s) and the case(s) is being transferred to the Superior Court of Cobb County for further prosecution.

( ) Probable cause does not exist in the above and foregoing case and the case is hereby dismissed.

( ) The above and foregoing case(s) is dismissed for want of prosecution.

( ) Probable cause does exist in the following charge(s) to wit:

, and the case(s) is being transferred to the Court of Cobb County for further prosecution; however, probable cause does not exist in the following charge(s), to wit:
, and said charge(s) is/are therefore dismissed.

So **ORDERED**, this the 26 day of NOVEMBER, 2003.

**Judge,** Magistrate Court
Cobb Judicial Circuit

Filed In Office Feb-12-2004 17:29:02
ID# 2004-0017933-CR Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

FILED IN COBB COUNTY MAGISTRATE COURT
26th DAY OF November 2003
AT 1:55 O'CLOCK ___ M

Clerk, Magistrate Court of Cobb County

000035

Mar-25-04   10:54am   From-    T-206  P.001/001  F-264

RECEIVED
DOROTHY A. ROBINSON

IN THE SUPERIOR COURT OF COBB
COUNTY, STATE OF GEORGIA

MAR 2 5 2004

State of Georgia                )
                                )
        v.                      )        CASE NO. 04-0673
                                )
Stacey Ian Humphreys            )

## REQUEST TO INSTALL RECORDING AND/OR PHOTOGRAPHING EQUIPMENT PURSUANT TO RULES AND GUIDELINES FOR ELECTRONIC AND PHOTOGRAPHIC NEWS COVERAGE OF JUDICIAL PROCEEDINGS.

Pursuant to Rule 22 of the Electronic and Photographic News Coverage of Judicial Proceedings in the Uniform Superior Court Rules, the undersigned hereby requests permission to install equipment in order to record, photograph or televise all or portions of the proceedings in the above-captioned case.

Consistent with the provisions of the rules and guidelines, the undersigned desires to install a video camera, tripod, and microphone(s). The proceedings that the undersigned desires to record, photograph or televise commence on March 26, 2004.

Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to install this equipment in the courtroom on March 26, 2004. The personnel who will be responsible for the installation and operation of this equipment during its use are employed by WSB Television, Inc.

The undersigned hereby certifies that the equipment to be installed and the locations and operation of such equipment will be in conformity with the rules and guidelines issued by the court.

This 25th day of March, 2004.

Ross Cavitt
WSB-TV
404-630-6434

Approved:

Presiding Judge

Filed In Office Mar-25-2004 17:07:05
C0# #2004-003488?-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

RECEIVED IN THIS OFFICE
DOROTHY A. ROBINSON

MAR 2 5 2004



000036

Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb County

# IN THE SUPERIOR COURT OF COBB COUNTY
### STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | CRIMINAL ACTION FILE |
| | ) | NO. 04-9-0673-05 |
| v. | ) | |
| | ) | |
| STACEY IAN HUMPHREYS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER SETTING HEARING

The Court hereby **ORDERS** that the First Proceeding hearing is continued in the above-referenced case to the 23rd day of April, 2004 at 9:30 a.m. in Courtroom "K."

SO ORDERED, this **26**ᵗʰ day of _____March_____, 2004.

DOROTHY A. ROBINSON
Judge, Superior Court
Cobb Judicial Circuit

000037

S

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the parties in the foregoing matter with a copy of the attached **ORDER** by depositing in the United States mail copy of same in a properly addressed envelope with adequate postage thereon.

This 26th day of _March_____, 2004.

_Melissa Condon Onacki_

Melissa Condon Onacki
Law Clerk to:
Dorothy A. Robinson
Judge, Superior Court
Cobb Judicial Circuit

Patrick H. Head, Esq.
Russell Parker, Esq.
Eleanor Dixon, Esq.
District Attorney's Office
10 East Park Square
Marietta, GA  30090
(770) 528-3080
Attorneys for the State

Jimmy D. Berry, Esq.                          Pam Mutuku
236 Washington Ave.                           30 Waddell Street
Marietta, GA  30060                           Marietta, GA  30090
(770) 422-5434                                Court Reporter
Attorney for Defendant

Stacey Ian Humphreys
c/o Cobb County Adult Detention Center
1825 County Services Parkway
Marietta, GA  30080
Defendant

In Office Apr-22-2004 14:47:55
2004-0046875-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | CRIMINAL ACTION FILE |
| | ) | NO. 04-9-0673-05 |
| v. | ) | |
| | ) | |
| STACEY IAN HUMPHREYS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER RESETTING HEARING

The clerk's office set this case down for an arraignment to take place on March 26, 2004. According to the Unified Appeal Procedure that dictates the procedure the Court must follow in cases such as this one where the State is seeking the Death Penalty, a "First Proceeding" must be held **before** the Defendant may be arraigned.

On March 26, 2004, at the call of the case for the First Proceeding, the Defendant was only represented by one attorney instead of two attorneys as the Unified Appeal Procedure requires. Both the State and Defense counsel consented to continuing the First Proceeding hearing to a later date. The Court apprised counsel that it was considering setting the hearing to a date approximately a month in the future and asked both the State and Defense Counsel at the March 26, 2004 hearing what sort of conflicts the attorneys may have around such time. Both Defendant's counsel and the State reported to the Court that they would both be unavailable from April 26, 2004, to at least 4 weeks after said date because both the District Attorney and Defendant's Counsel were being called out for trial in Houston County. The State and Defendant's counsel, however, both reported that they would be able to have the continuation of the First Proceeding hearing anytime between March 26, 2004 and up to and including April 23, 2004. The March 26,

2004 hearing was concluded with the Court instructing counsel that there would be an order issued setting the hearing to a later date.

The Court set the continuation of the First Proceeding hearing to April 23, 2004, by order of the Court. This order was sent by the Judge's office by certificate of service to all the involved parties on March 26, 2004.

On April 20, 2004, at approximately 3:25 p.m., Jimmy Berry, Defendant's counsel, called the Judge's chambers to report that he had a conflict on April 23, 2004. Attorney Berry apprised the Judge's office that the conflict was a hearing in an older Death Penalty case indicted in 2000 (case # 00-CR-309) in a different Circuit. The Judge's office was also informed that the hearing in the other Death Penalty case was to be the last motions hearing in that case before it went forward to trial. Attorney Berry faxed a conflict letter to the Court's office verifying this information.

Taking into consideration this new information and that the Uniform Superior Court Rules dictated that Attorney Berry should appear at the hearing for the oldest indicted Death Penalty case first, the Court offered to have the hearing held a day earlier on April 22, 2004. Phone calls were placed to both Attorney Berry's office and the District Attorney's office asking the parties if they may consent to have the hearing one day earlier. The Judge's office was unable to speak personally with the attorney's offices, but left messages on their voice mail systems.

On the morning of April 21, 2004, the Judge's office received a phone call from Attorney Berry. Attorney Berry informed the Judge's office that he had spoken with District Attorney Pat Head, and that Attorney Head had conflicts for April 22, 2004, and would be unable to appear before the Court on said date. Attorney Berry also informed

the Court that he had just received notice that a deposition for the Lynn Turner case was

being set for April 22, 2004, and that this would create a conflict for himself and

Attorney Head.

THEREFORE, after taking all of the aforementioned information into

consideration, the Court hereby **ORDERS** that the First Proceeding hearing is continued

in the above-referenced case to the 1st **day of June, 2004 at 9:30 a.m. in Courtroom**

"**K.**"

SO ORDERED, this 22nd day of _____April_____, 2004.


DOROTHY A. ROBINSON
Judge, Superior Court
Cobb Judicial Circuit

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the parties in the foregoing matter with a copy of the attached **ORDER** by depositing in the United States mail copy of same in a properly addressed envelope with adequate postage thereon.

This 22nd day of _____ April _____, 2004.

_Melissa Condon Onacki_
Melissa Condon Onacki
Law Clerk to:
Dorothy A. Robinson
Judge, Superior Court
Cobb Judicial Circuit

Patrick H. Head, Esq.
Russell Parker, Esq.
Eleanor Dixon, Esq.
District Attorney's Office
10 East Park Square
Marietta, GA 30090
(770) 528-3080
Attorneys for the State

Jimmy D. Berry, Esq.
236 Washington Ave.
Marietta, GA 30060
(770) 422-5434
Attorney for Defendant Humphreys

Chris Adams, Esq.
104 Marietta Street, N.W., Suite 200
Atlanta, GA 30303
(404) 651-5709
Attorney for Defendant Humphreys

Stacey Ian Humphreys
c/o Cobb County Adult Detention Center
1825 County Services Parkway
Marietta, GA 30080
Defendant

Pam Mutuku
30 Waddell Street
Marietta, GA 30090
Court Reporter

Filed in Office Apr 23 2004 16:16:14
I 2004-0047785-CR
Page 1

Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

STATE OF GEORGIA

VS.                                              Indictment Number 04-9-00673

STACY HUMPHREYS

### ENTRY OF APPEARANCE

Comes now the Multi-County Public Defender Office and hereby enters an appearance of record, pursuant to Rule 4.2 of The Uniform Rules of Superior Courts on behalf of the defendant named above, Stacy Humphreys.

All notices and pleadings relating in any manner to this case and/or this defendant must be served upon the undersigned counsel of record at:

Chris Adams, Director
The Multi-County Public Defender Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
Telephone No. (404) 232-8900

This the 22nd day of April, 2004.

Chris Adams (per by permission)
Chris Adams, State Bar No. 002725
The Multi-County Public Defender Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
Telephone No. (404) 232-8900

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Entry of Appearance has been served by first class U.S. Mail and facsimile upon the Cobb County District Attorney's Office:

> Pat Head, Esquire
> District Attorney, Cobb Judicial Circuit
> 10 East Park Square
> Marietta, GA 30060
> (770) 528-3097

This the 22nd day of April 2004

_Chris Adams (pbl by express permission)_
Chris Adams

In Office Jun-01-2004 10:58:26.
ID# 2004-0062472-CR
Page 1

State of Georgia

vs

Stacey Ian Humphries

*Jay C. Stephenson* 84
Jay C. Stephenson
Clerk of Superior Court Cobb County

Request to install recording and/or photographing equipment pursuant to rules and guidelines for electronic and photographic news coverage of judicial proceedings.

Pursuant to Rule 22 of the electronic and photographic news coverage of judicial proceedings in the uniform court rules, the undersigned hereby request permission to install equipment in the courtroom in order to record, photograph or televise all or portions of the proceedings in the above captioned case.

Consistent with the provisions of the rules and guidelines, the undersigned desires to install the following described equipment, camera, recorder and tripod, in the courtroom. The proceedings that the undersigned desires to record, photograph or televise commence on June 1st, 2004 subject to direction from the court regarding possible coverage. The undersigned wishes to install this equipment in the courtroom on June 1st, 2004 The personnel who will be responsible for the installation and operation of this equipment during its use is WSB-TV News. The undersigned hereby certifies that the equipment to be installed and the locations and operation of such equipment will be in conformity with the rules and guidelines issued by the court.

This 1st day of June, 2004

*Tamara Delemeester*

Tamara Delemeester
Assignment Manager
WSB TV, Atlanta, Ga.
404-897-6276
404-897-7370 Fax

Approved:

*Dorothy A. Robinson*

Presiding Judge:

RECEIVED
DOROTHY A. ROBINSON

MAY 2 8 2004

# IN THE SUPERIOR COURT FOR THE COUNTY OF COBB

## STATE OF GEORGIA

State of Georgia

CASE NO. 04-673

VS.

Stacey Ian Humphreys

Filed In Office Jun-01-2004 10:58:26
C0 # 2004-0286473-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

### Request To Install Recording And/Or Photographing
### Equipment Pursuant To Rules And Guidelines For Electronic
### And Photographic News Coverage Of Judicial Proceedings

Pursuant to Rule 22 of the Electronic and Photographic News Coverage of Judicial Proceedings in the Uniform Superior Court Rules, the undersigned hereby requests permission to install equipment in Courtroom _____ in order to record, photograph or televise all or portions of the proceedings in the above-captioned case.

Consistent with the provisions of the rules and guidelines, the undersigned desires to install the following described equipment: Camera, Mike, Tripod

In the following locations: Judge Dorothy Robinson Court

The proceedings that the undersigned desires to record, photograph or televise commence on June 1 2004 . Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to install this equipment in the courtroom on June 1, 2004 . The personnel who will be responsible for the installation and operation of this equipment during its use are: WXIA-TV

The undersigned hereby certifies that the equipment to be installed and the locations and operation of such equipment will be in conformity with the rules and guidelines issued by the court.

This _Tues_ day of _June 1_ _,_ _49 2004_

INDIVIDUAL SIGNATURE

WXIATV
REPRESENTING/FIRM

News Assignment Manager
POSITION

1611 W. Peachtree St. NE
ADDRESS

404-843-9114
TELEPHONE NUMBER

APPROVED:

JUDGE, SUPERIOR COURT
COBB JUDICIAL CIRCUIT

REQUEST TO INSTALL RECORDING AND/OR
PHOTOGRAPHING EQUIPMENT

04-673

State vs. _____

Pursuant to Rule 22 of the Electronic and Photographic News Coverage of Judicial Proceedings, the undersigned hereby requests permission to install equipment in Courtroom _____ in order to record, photograph or televise all or portions of the proceedings in the above captioned case.

Consistent with the provisions of the rules and guidelines, the undersigned desires to install television audio-visual equipment in the courtroom listed above. The proceedings that the undersigned desires to record, photograph or televise commence on _____.

Subject to direction for the court regarding pooled coverage, the undersigned wishes to install the equipment in the courtroom on _____.

The undersigned hereby certifies that the equipment to be installed and the locations and operation of such equipment will be in conformity with the rules and guidelines issued by the court.

This ___ day of ___ 2 004

_____
(Individual Signature)
Representing WAGA-TV
1551 Briarcliff Road, NE
Atlanta, Georgia 30306
(404) 898-0100
(404) 898-0169-FAX

APPROVED:

_____
(Judge)

Filed in Office Jun-01-2004 10:58:26
04# 2004-0062474-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

mmh048

RECEIVED IN THIS OFFICE
DOROTHY A. ROBINSON
JUN – 1 2004

REQUEST TO INSTALL RECORDING AND/OR
PHOTOGRAPHING EQUIPMENT

_04-673_

State vs. _Humphries_

Pursuant to Rule 22 of the Electronic and Photographic News Coverage of Judicial Proceedings, the undersigned hereby requests permission to install equipment in Courtroom _TBA_ in order to record, photograph or televise all or portions of the proceedings in the above captioned case.

Consistent with the provisions of the rules and guidelines, the undersigned desires to install television audio-visual equipment in the courtroom listed above. The proceedings that the undersigned desires to record, photograph or televise commence on _6/1/04_

Subject to direction for the court regarding pooled coverage, the undersigned wishes to install the equipment in the courtroom on _6/1/04_.

The undersigned hereby certifies that the equipment to be installed and the locations and operation of such equipment will be in conformity with the rules and guidelines issued by the court.

This _1st_ day of _June_ 2004.

_Chase Allen_
(Individual Signature)
Representing WAGA-TV
1551 Briarcliff Road, NE
Atlanta, Georgia 30306
(404) 898-0100
(404) 898-0169-FAX

APPROVED:

_____
(Judge)

000049

RECEIVED IN THIS OFFICE
DOROTHY A. ROBINSON
JUN - 1 2004

IN THE SUPERIOR COURT FOR THE COUNTY OF COBB COUNTY

STATE OF GEORGIA

*State of Georgia*

CASE NO. _04-673_

Filed In Office Jun-01-2004 10:58:26
COB :2004-0062476-CR
Page 1

*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb County

VS.

*Stacey Humphreys*

## Request to Install Recording and/or Photographing Equipment

## Pursuant to Rules and Guidelines for Electronic and Photographic News

## Coverage of Judicial Proceedings

Pursuant to Rule 22 of the Electronic and Photographic News Coverage of Judicial Proceedings in the Uniform Superior Court Rules, the undersigned hereby requests permission to install equipment in Courtroom _R_ in order to record, photograph or televise all or portions of the proceedings in the above captioned case.

Consistent with the provisions of the rules and guidelines, the undersigned desires to install the following described equipment:

_digital camera_

In the following location: _Courtroom R_

00110050

The proceedings that the undersigned desires to record, photograph or televise commence on _6/1/04_ . Subject to direction from the court regarding possible pooled coverage, the undersigned wishes to install this equipment in the courtroom on _6/1/04_ . The personnel who will be responsible for the installation and operation of this equipment during its use are: _Damien Guarnieri_

The undersigned hereby certifies that the equipment to be installed and the locations and operation of such equipment will be in conformity with the rules and guidelines issued by the court.

This _31st_ day of _May_, 20_04_.

_Michelle M. Graff_
INDIVIDUAL SIGNATURE

_Marietta Daily Journal_
REPRESENTING/FIRM

_news editor_
POSITION

_580 Fairground St._
ADDRESS

_770-428-9411 ext. 201_
TELEPHONE NUMBER

APPROVED:

JUDGE, SUPERIOR COURT
COBB JUDICIAL DISTRICT

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

THE STATE OF GEORGIA,           *

v.                              *           INDICTMENT NO.  04-9-0673-05

STACEY IAN HUMPHREYS,           *

DEFENDANT.                      *

## MOTION TO RECUSE JUDGE

COMES NOW the State of Georgia, by and through its undersigned representative, and pursuant to Rule 25 et seq. of the Uniform Superior Court Rules, and Canon 3E(1) of the Code of Judicial Conduct, moves to recuse this Honorable Court on the grounds set forth in the attached Affidavit of Patrick H. Head, District Attorney.

In the instant case, the State of Georgia has reason to question this Trial Court's impartiality in this matter as evidenced by this Court's comments reported in The Atlanta Journal-Constitution on May 27, 2004.  In the article entitled "New Rules Open Up Judicial Campaigns," this Court was quoted as saying that a statement by District Attorney Pat Head, concerning a previous case over which the trial court presided, was "a blatant lie."

Based upon the Trial Judge's comment that the District Attorney had lied about events which had occurred during another case, the Trial Judge evidenced a bias or prejudice against the District Attorney.

Based on the foregoing and on the Affidavit attached hereto and made a part hereof, the State shows that Trial Court's impartiality is reasonably questioned. Disqualification of the Trial Court from further proceedings in this matter is therefore warranted pursuant to Canon 3E of the Code of Judicial Conduct.

WHEREFORE, the State of Georgia prays that this case be reassigned to another judge in this Court or, in the alternative, that this case be referred to another judge for an evidentiary hearing and a determination of this motion on the merits.

Respectfully submitted this ___1st___ day of ___June___, 2004.

Patrick H. Head
District Attorney
Cobb Judicial Circuit

0000053

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

THE STATE OF GEORGIA,                    *

v.                                       *          INDICTMENT NO. 04-9-0673-05

STACEY IAN HUMPHREYS,                    *

DEFENDANT.                               *

## AFFIDAVIT IN SUPPORT OF MOTION TO RECUSE

Comes now, Patrick H. Head, District Attorney, who appeared before me, and being a person exceeding eighteen years of age, states under oath that the following facts are true and correct and based on personal knowledge:

1. I am the District Attorney of the Cobb Judicial Circuit.

2. The above-styled murder case was indicted on February 12, 2004, and has been assigned to The Honorable Dorothy A. Robinson. See Exhibit A, attached hereto and made a part hereof.

3. Notice of the State's intent to seek the Death Penalty in the Humphreys case was filed February 12, 2004. See Exhibit B, attached hereto and made a part hereof.

4. As District Attorney, I have taken an active part in all cases in which the State seeks the Death Penalty, and I am lead counsel in the Humphreys case.

5. On June 1, 2004, I read an article printed in The Atlanta-Journal Constitution, dated May 27, 2004. The article written by Richard Whitt, is entitled "New Rules Open Up Judicial Campaigns." See Exhibit C, attached hereto and made a part hereof.

0000054

6. This article stated that the undersigned District Attorney had stated that the Trial Judge had postponed a prior case without telling anyone. The article then stated that the Trial Judge responded that, "That's a blatant lie."

7. The article further stated that the Trial Judge said, "Mr. Head is making desperate statements, and I don't know why."

8. The case about which the undersigned had referred was <u>State v. Michael Willard Buttram</u>, Indictment No. 99-3546.

9. As a result of the Trial Judge's comments, affiant believes that Judge Dorothy A. Robinson must recuse herself or be recused from the above-styled <u>Humphreys</u> case, because she has demonstrated bias or prejudice toward the moving party which would influence the Trial Judge and impede or prevent impartiality in this action.

Respectfully submitted this 1st day of ____June____, 2004.

_____
Patrick H. Head
District Attorney
Cobb Judicial Circuit

Sworn to and subscribed before me
This 1st day of ____June____, 2004.

_____
Notary Public

My commission expires:

Notary Public, Cobb County, Georgia
My Commission Expires Feb. 16, 2007.

JUDGE ROBINSON

RE: Warrant(s)
03-W-12137

## GENERAL BILL OF INDICTMENT

WITNESSES

Det. Herman
CCPD

NO. _____ **040673**
COBB SUPERIOR COURT

JANUARY/FEBURARY TERM 2004

THE STATE OF GEORGIA
V.
STACEY IAN HUMPHREYS

_____ True _____ BILL

Feb 12 _____, 20 04

_____
Grand Jury Foreperson
Delivered in open Court by:

_____
Grand Jury Bailiff

JAY C. STEPHENSON, Clerk, S. C.

PATRICK H. HEAD, District Attorney

The Defendant herein waives copy of
indictment, list of witnesses, formal
arraignment and pleads _____ Guilty.

The Defendant herein waives copy of
indictment, list of witnesses, formal
arraignment and pleads _____ Guilty.

_____
Defendant

_____
Defendant

_____
Attorney for Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

_____
Assistant District Attorney

Filed In Office Feb-12-2004 17:21:14
ID# 2004-0017924-CR
Page 1

Jay C. Stephenson
Clerk of Superior Court Cobb County

EXHIBIT
A. 0111056

STATE OF GEORGIA, COUNTY OF COBB

IN THE SUPERIOR COURT OF SAID COUNTY

THE GRAND JURORS selected, chosen and sworn for the County of Cobb, to wit:

| | |
|---|---|
| Richard L. Perry-Foreperson | ~~James L. Stewart~~ |
| Neeka Moultrie-Asst. Foreperson | Miguel Solorzano |
| Kristen Louise Grace-Secretary | ~~Daniel George Hess~~ |
| Randall R. Thomas, Sr. | Benjamin Franklin Cox, Jr. |
| Christopher John Wix | Bette N. Selfridge |
| Elie Thaddeus Ducros | ~~James Patrick Spaulding~~ |
| Joyce Davis Stringer | Jarius Lamar Hayes |
| Claudell Taylor | Kathy J. Sexton |
| Lewen Grant Brown | ~~Joel John Barch~~ |
| Alfred Hinton, Jr. | Nhut Dao Huynh |
| Dorothy Price Cash | Fredric I. Weitz |
| Eileen Joan Lawrence | JoAnne V. Cash-Alt #1 |
| Cynthia J. Matthews-Alt #2 | |

in the name and behalf of the citizens of Georgia, charge and accuse **STACEY IAN HUMPHREYS** with the offense of **MURDER**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully and with malice aforethought cause the death of Cynthia Williams a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-0017924-CR
Page 2

000057

## COUNT TWO

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully and with malice aforethought cause the death of Lori Brown a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT THREE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of FELONY MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Cynthia Williams a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT FOUR

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of FELONY MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Lori Brown a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT FIVE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of AGGRAVATED ASSAULT, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully make an assault upon the person of Cynthia Williams, with a pistol, a deadly weapon by shooting her; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT SIX

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of AGGRAVATED ASSAULT, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully make an assault upon the person of Lori Brown, with a pistol, a deadly weapon by shooting her; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT SEVEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of KIDNAPPING WITH BODILY INJURY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully abduct and steal away Cynthia Williams, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit; a gunshot wound; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-001792A-CR
Page 4

## COUNT EIGHT

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of **KIDNAPPING WITH BODILY INJURY**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully abduct and steal away Lori Brown, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit: a gunshot wound; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT NINE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of **ARMED ROBBERY**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, to wit: a Bank of America Bank Card from the person and immediate presence of Cynthia Williams, by use of an offensive weapon, to wit: a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT TEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of **ARMED ROBBERY**, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, to wit: a Wachovia Bank Card from the person and immediate presence of Lori Brown, by use of an offensive weapon, to wit: a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-00179924-CR
Page 5

## COUNT ELEVEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of POSSESSION OF A FIREARM BY A CONVICTED FELON, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, having been convicted on the 11th day of October, 1993, by a court of competent jurisdiction to wit: Superior Court of Cobb County Case# 93-3083, of the offense of Burglary, a felony, under the laws of this State, did possess and transport a firearm to wit: a Rugar 9mm handgun; contrary to the laws of said state, the good order, peace and dignity thereof.

PATRICK H. HEAD, District Attorney

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

**COPY**

STATE OF GEORGIA

                                  *

v.                                 *

**STACEY IAN HUMPHREYS**

INDICTMENT#

*04-9-0673*

NOTICE OF STATE'S INTENT
TO SEEK THE DEATH PENALTY

Notice is hereby given that the State of Georgia will seek the death penalty in the event of a conviction for murder in the above-styled case, and expects the following statutory aggravating circumstances to be authorized by the evidence under Official Code of Georgia Annotated 17-10-30:

Under O.C.G.A. 17-10-30 (b)(2):

The offense of the murder of Cynthia Williams was committed while the offender was engaged in the commission of another capital felony.

The offense of the murder of Lori Brown was committed while the offender was engaged in the commission of another capital felony.

Under O.C.G.A. 17-10-30(b)(4)

The offense of the murder of Cynthia Williams was committed for the purpose of receiving money or any other thing of monetary value;

The offense of the murder of Lori Brown was committed for the purpose of receiving money or any other thing of monetary value;

Under O.C.G.A 17-10-30 (b)(7)

The offense of the murder of Cynthia Williams was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

The offense of the murder of Lori Brown was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

Filed In Office Feb-18-2004 17:24:14
ID# 2004-0017925-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

EXHIBIT
B  0111062

Under O.C.G.A. 17-10-30 (b)(10)
  The offense of the murder of Cynthia Williams was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest.

  The offense of the murder of Lori Brown was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest.

The State of Georgia requests the court to notify the jury in writing after a conviction for murder of the above statutory aggravating circumstances, as well as any others, which may be supported by the evidence upon the trial of this case. O.C.G.A. 17-10-30 (c).

Respectfully submitted,

PATRICK H. HEAD
District Attorney
Cobb County Judicial Circuit

ELEANOR DIXON
Assistant District Attorney
Cobb County Judicial Circuit

000063

a.m. Monday at the 20th Century Veterans Memorial on Bank Street at King Street in Smyrna. Black was in the 106th Infantry when he was captured Dec. 19, 1944, during the Battle of the Bulge.

Also on the Smyrna program are a flyover by a C-130 Hercules from the 94th Airlift Wing of Dobbins Air Reserve Base, presentation of colors by the 94th Honor Guard and music by the Campbell High School Orchestra.

➤ The Atlanta Vietnam Veteran Business Association will dedicate a granite memorial across the street from Veterans Memorial Park in downtown Smyrna at 11 a.m. today in honor of those who died while serving in Vietnam. A plaque on the memorial will honor Michael Robert Glenn, a Campbell High School graduate who died in Vietnam on Feb. 11, 1970.

➤ Pearl Harbor survivors will be remembered at 2 p.m. Sunday at the Pearl Harbor monument at the Marietta National Cemetery. The Georgia Pearl Harbor Survivors Association will place bricks and flowers to remember the survivors who have died and those still living.

— Tucker McQueen

deeply, and Jerry moved to Albany, Ga., then went by with little talk about his father, and Jerry Styles grew up, started his own family and settled down in Marietta to run his automotive business. There was seldom time to think about the past.

That changed two years ago after his mother handed him the small red address book his father carried during World War II. The task of deciphering the barely legible listings seemed insurmountable, but Styles began a dogged search to learn his father's story.

He found information about the men his father served with in a book on Rangers and by searching on the Internet. The WWII Rangers Battalions Association also helped.

"I'm so involved in this, I don't want to hunt, fish or do anything else," Styles said. "This is my passion — to honor my dad."

Tom Herring, secretary for the Rangers association, remembers meeting Styles at one of the group's reunions. Herring, who lives in Charlotte, also survived the beach landing on D-Day, June 6, 1944. He said his organization formed a Sons & Daughters Auxiliary a few years ago to help organize yearly reunions and perpetuate the legacy of the WWII Army Rangers.

Styles, now secretary of the younger group, is helping plan a

➤ Please see MEMORIAL, J3



Photos by ANDY SHARP / Staff
Jerry Styles' quest to learn about his father began with the address book (top) his dad carried during World War II. Above, he visits the Marietta National Cemetery

# New rules open up judicial campaigns

## Candidates can speak out, blast opponents

### CONGRESSIONAL FORUM
➤ The Centennial Sierra Club is hosting a forum for 6th District U.S. Congressional candidates at 7 p.m. June 3 at the East Cobb Government Center, 4400 Lower Roswell Road.

Members of the audience will be allowed to ask questions of the candidates following their introductions and opening statements.

The candidates, all Republicans, are Chris Chatwood of Marietta, Chuck Clay of Marietta, Roger Hines of Kennesaw, Kevin Johns of Marietta, Robert B. Lamutt of Marietta, Tom Price of Roswell and Al Beverly of Marietta.

The event is free and open to the public. For more information, call 770-578-1255.

By RICHARD WHITT
rwhitt@ajc.com

Let the sniping begin.

For years, state judicial elections have been all but invisible to most voters because of limits on what judges could say and do while campaigning.

This year will be the first election cycle since the 11th U.S. Court of Appeals in Atlanta struck down those limits and gave judges approval to personally solicit contributions and actively campaign.

And in at least one local race, candidates and their supporters already are jabbing at one another.

Before the 11th Circuit ruling, a judicial candidate's election committee could ask for campaign contributions or endorsements, but the candidate could not. The court ruled that that stricture did not significantly reduce the risk of compromising a judge's impartiality. If Georgia is going to have judges campaign for the bench, the state needs to treat such races

➤ Please see JUDGESHIPS, J3

(and no cuts in be dollars to plan fo net school.—Fin expected next mo

Noteworthy it expected proposal

➤ Increased cla grades. District officer Robert M generally would student per teach the district, to ke not hiring as man in the past — growing by rough annually.

➤ A cut of half dergarten slides roughly 197 p more kids with save the distr million.

However, thi pen. When 1 approved the sta (this month, it i tional $6.7 mill had not planned state cut its fur next school year lion, and not by as originally pro

District offici tions would be saved if it got in

➤ Teacher raise uary, when stat becomes availa state examines increase, Cobb' percent because ers more than schedule.

➤ Various cuts (including e administrative district level (f for some vacan

Cobb's budg year was $722.

Noteworthy budget propos

➤ More than $ funds for the which will be kind in Cob toward elemen includes hiring $101,785 in p $60,000 for $75,000 for s als. This is among new p get proposal, support of boa

➤ Please see E

000064

EXHIBIT
C

The Atlanta Journal-Constitution / Thursday, May 27, 2004  JF3

# Judgeships: New rules for candidates open up campaigns

 

Continued from J1

like other elections, the court said.

Georgia is one of 31 states that elect judges. In the other states, judges are appointed by the governor or state legislature or a judicial selection committee. Judicial elections in Georgia are nonpartisan and are held in the summer.

An earlier U.S. Supreme Court ruling struck down limits that prohibited judicial candidates from announcing their views on disputed legal or political issues.

In Cobb County, six Superior Court judges posts are up this July 20 ballot, but only two positions are contested. Three State Court judges are also on the ballot; none has opposition.

Attorney William J. McKenney is trying to unseat Judge Dorothy A. Robinson, who has been on the Superior Court bench for 24 years. McKenney is leveling a range of charges against the judge.

"Most courts start at 9 or 9:30," he said recently. "She comes in around 10 a.m. Decisions are just made timely. You expect motions to be read before the court hearing. Very few motions read before

Moreover, said McKenney, 56, the judge isn't nice to attorneys, police officers or court personnel, and she hasn't attended monthly meetings with fellow Cobb Superior Court judges since July 2002.

Robinson said she quit attending the meetings because they are held during regular court hours and would take time away from the court cases.

"Not a lot happens at those meetings," she said. "Some circuits don't even have them. I'm more interested in moving the cases along than attending meetings."

As to criticism of her treatment of others, Robinson said McKenney has "failed to identify any of those people." "It's hard to respond when you don't know who the people are," she said.

Robinson, 66, dismisses the criticism as sour grapes.

"Some lawyers think if you rule against them, you're disagreeable," she said. "I've had to rule against a lot of them in 31 years."

## Superior Court pioneer

Robinson was first appointed as a State Court judge by Gov. Jimmy Carter in 1972. In 1980, she became the first woman elected as a Cobb Superior Court judge, when she defeated incumbent judge Howell Ravan.

Robinson said "most bar" are supporting her for re-election.

Cobb District Attorney Pat Head isn't one of them. He is supporting McKenney.

Head said Robinson behaves disrespectfully toward defense and prosecuting attorneys, keeping them in court unnecessarily. "Robinson is notorious for sending the sheriff to fetch an attorney who is a few minutes late," he said.

"I think people should be treated with courtesy, dignity and respect," Head said.

"Some judges may have been on the bench so long they've forgotten it's not a dictatorship."

Head also complained that the judge delayed rulings on motions in a death penalty case for two years.

"At one point, Head said, lawyers showed up to begin the trial and Robinson had postponed the case without telling anyone."

"That's a blatant lie," Robinson responded last week.

The case was delayed, she said, because there were four issues relating to the case that were pending before the state Supreme Court, including the constitutionality of electrocution.

"Mr. Head is making desperate statements, and I don't know why," she said.

The Cobb Fraternal Order of Police also is supporting McKenney, whose office are most of his practice are in Atlanta.

"We looked at the candidates and their performance records over the years and determined through a vote of the membership that it was time for a change," said FOP president Steve Gaynor.

Police and defendants often

incumbent Dorothy A. Robinson is challenged by William J. McKenney.

have scheduling issues.

"She has no flexibility," Gaynor said. "We do not have a problem with other courtrooms."

Gaynor called Robinson "a great judge." "She knows the law," he said. "She has no people skills."

## Less-heated contest

In a much lower-profile race, Juvenile Court Judge Stephen Schuster is running against Marietta attorney Joan Davis for an open seat.

The 50-year-old Davis would become the first African-American elected a Cobb Superior Court judge.

Davis said she isn't running simply to offer diversity on the bench, but that "this fact that I'm African-American adds a whole other dimension."

She said Cobb County has a growing black population.

"I think the public would want the bench to be reflective of the population," she said.

Davis said she would add criticize her opponent publicly, but she cited what she called a "lack of commitment" by Schuster in announcing for Superior Court a year after being appointed to the Juvenile Court bench.

Juvenile Court Judge J. Stephen Schuster and attorney Joan Davis seek an open seat.

Schuster, who was appointed the bench two years ago, refuses to criticize his opponent, despite this, new rules. "I'm not running against anybody," the 53-year-old judge said. "I'm running on my record. I believe I'm the better candidate."

## Unopposed are relieved

Other Superior Court judges in Cobb are happy to be unopposed in this year's election.

"Yes, and thank goodness," Judge Kenneth Nix said.

However, Nix said he doesn't think removing restraints on judicial races will result in dramatic changes in tactics.

"Where I think the change will show up most is heretofore, judges couldn't comment on particular issues that might come before them," he said. "I can see at a public forum people asking them questions and not understanding if they won't comment."

"You can't quote-unquote hide behind the rules anymore," he said.

Judge Mary Staley, who also is unopposed, said there could be a sea change in how candidates approach campaigns.

"There are a lot more opportunities to campaign in more traditional ways, like legislators," Staley said.

"In my opinion, it will develop its own culture and be driven by the personality of the people involved."



This summer,
let your skin come
out and play

LASER HAIR REMOVAL
...........................
...........................
...........................

www.americanlasercenters.com

American Laser Centers

1-800-532-2906
BUCKHEAD/MARIETTA

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

THE STATE OF GEORGIA,                    *

v.                                        *        INDICTMENT NO. 04-9-0673-05

STACEY IAN HUMPHREYS,                     *

DEFENDANT.                                *

## ORDER

The within and foregoing motion to recuse having been read and considered,

IT IS HEREBY ORDERED pursuant to Rule 25, Uniform Superior Court

Rules, that this case be referred to the Chief Judge for assignment for a hearing.

SO ORDERED, this ____ day of _____, 2004.

_____
Dorothy A. Robinson, JUDGE
Superior Court
Cobb Judicial Circuit

CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing Motion to Recuse by depositing in the United States Mail a copy of the same in a properly addressed envelope with adequate postage affixed thereon to:

Jimmy D. Berry
236 Washington Ave
Marietta, GA  30060

Chris Adams
104 Marietta St. NW
Ste. 200
Atlanta, GA  30303

Honorable Dorothy Robinson
Cobb County Courthouse
(by Hand Delivery)

This 1ˢᵗ day of June, 2004.

Patrick H. Head
District Attorney
Cobb Judicial Circuit

Cobb County District Attorney
10 East Park Square
Marietta, GA  30090

Filed In Office Jun-03-2004 11:00:29
ID# 2004-0063759-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | ) | CRIMINAL ACTION FILE |
| | ) | NO. 04-9-0673-05 |
| v. | ) | |
| | ) | |
| STACEY IAN HUMPHREYS, | ) | **ORDER:** THE STATE OF |
| | ) | GEORGIA'S MOTION TO |
| Defendant. | ) | RECUSE JUDGE |
| | ) | |

## ORDER

The above-styled case having come before this Court on The State of Georgia's Motion to

Recuse Judge, and the Court having reviewed said motion and attached affidavit, as well as

reviewing other matters of record, finds as follows:

### FINDINGS OF FACT

On June 1, 2004, the State of Georgia by and through its representative District Attorney Pat

Head,  filed a Motion to Recuse Judge and an affidavit in support, alleging that this Court (Judge

Robinson) is biased or prejudiced against the District Attorney, and therefore this court should

recuse herself.  Specifically, the State of Georgia alleges, "the State of Georgia has reason to

question this Trial Court's impartiality in this matter as evidenced by this Court's comments

reported in The Atlanta Journal-Constitution on May 27, 2004.  In the article entitled 'New Rules

Open Up Judicial Campaigns,' this Court was quoted as saying that a statement by District Attorney

Pat Head, concerning a previous case over which the trial court presided was 'a blatant lie.'"

District Attorney Pat Head's affidavit adopts the statements contained in the motion to recuse and

1

further states that the Court said, "Mr. Head is making desperate statements, and I don't know why" in the same article.

## CONCLUSIONS OF LAW

When a trial judge is confronted with [a motion to recuse], [she] must temporarily cease to act upon the merits of the matter and shall immediately determine [(1)] timeliness of the motion and [(2)] the legal sufficiency of the affidavit, and [(3)] make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse.

Dodson v. Dean, 256 Ga. App. 4, 5-6, 567 S.E.2d 348 (2002), citing USCR 25.3.

"If all three conditions precedent set forth in USCR 25.3 are not met, the trial judge shall deny the motion on its face as insufficient and there is no need for the trial judge to assign the motion to another judge to hear." Brewer v. Waldroup, 259 Ga. App. 479, 480, 578 S.E.2d 139 (2003).

In the present case, the motion to recuse was filed timely and the affidavit is sworn to and is sufficient in form. Now the Court must determine whether, assuming any of the facts alleged in the affidavit are true, the recusal would be warranted.

Canon 3 (E) (1) generally requires judges to "disqualify themselves in any proceeding in which their impartiality might reasonably be questioned." "Impartiality might be reasonably questioned" means a reasonable perception, of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates, seeking to judge shop and to gain a trial advantage, because both of [sic] their credibility is suspect from self-interest. Recusal on this ground requires a rational basis for such questioning, not an arbitrary basis, even though no actual impropriety on the part of the trial court judge has been shown. (Citations and punctuation omitted.)"

Brewer v. Waldroup, 259 Ga. App. at 481 citing Baptiste v. State, 229 Ga. App. 691, 694, 494

2

S.E.2d 530 (1997).

> Any alleged prejudice or bias against the party's attorney rather than the party himself is not, per se, grounds for disqualification. If it were, an attorney who felt himself to be the object of such bias would be the living embodiment of a limitation on the trial judge's power and responsibility to hear cases within the jurisdiction of the judge's court. If the attorney and his relationship with the judge is determinative of whether or not that trial judge is "qualified" to hear cases which are otherwise within [her] court's jurisdiction, that attorney, depending upon whether or not he moved to disqualify on these grounds, would have the ultimate power to confer upon or deny to the judge this jurisdictional power and authority. If this were so, in some circumstances it could be in the attorney's "interest" to cultivate the judge's prejudice so as to avoid appearance before [her]. Such an attorney could offer clients not only legal advice and representation but also their "choice" of judges. Obviously this form of "judge shopping" is not a power which the bar can exercise over the bench of this state.

Mann v. State, 154 Ga. App. 677, 677-78, 269 S.E.2d 863 (1980).

"In order to be disqualifying the alleged bias must stem from an extra-judicial source and result in an **opinion on the merits** on some basis other than what the judge learned from his participation in the case. The alleged bias of the judge must be of such a nature and intensity to prevent the party from obtaining a trial uninfluenced by the court's prejudgment." McBride v. State, 213 Ga. App. 857, 859, 446 S.E.2d 193 (1994) (citations omitted; emphasis added; punctuation omitted); See also Phillips v. State, 275 Ga. 595, 600, 571 S.E.2d 361 (2002).

In the current case, the ground urged as a basis for this Court's recusal, that this Judge is biased against the District Attorney, is legally insufficient. Any comments made by the Court in the May 27, 2004 article are valid responses to the statements made by the District Attorney and **do not result in an opinion on the merits** of the instant case. The District Attorney's motion is an obvious attempt to limit "the trial judge's power and responsibility to hear cases within the jurisdiction of the judge's court." See Mann, supra, at 677-78. The District attorney does not

have the ultimate power to confer upon or deny this Court jurisdictional power and authority. See id. *Arguendo*, even if the District Attorney's motion to recuse as alleged could rise to the level to require a hearing, to recuse the Court in the instant case would serve to recuse this Court from **all** Cobb County criminal cases, exactly the type of power which the bar can not exercise over the bench of this state. See id.

Because the motion is legally insufficient, there is no need for this motion to be assigned to another judge to hear.

THEREFORE, for the above-mentioned reasons, IT IS HEREBY ORDERED AND ADJUDGED that the State of Georgia's Motion to Recuse is **DENIED.**

**SO ORDERED**, this _2nd_ day of _June_, 2004.

DOROTHY A. ROBINSON
Judge, Superior Court
Cobb Judicial Circuit

000071

ID# 2004-0063759-CR
Page 5

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the parties in the foregoing matter with a copy of the attached **ORDER** by depositing in the United States mail copy of same in a properly addressed envelope with adequate postage thereon.

This 3rd day of _____June_____, 2004.

_____
Melissa Condon Onacki
Law Clerk to:
Dorothy A. Robinson
Judge, Superior Court
Cobb Judicial Circuit

Patrick H. Head, Esq.
Russell Parker, Esq.
Eleanor Dixon, Esq.
Brian Lumpkin, Esq.
District Attorney's Office
10 East Park Square
Marietta, GA 30090
(770) 528-3080
Attorneys for the State

Stacey Ian Humphreys
c/o Cobb County Adult Detention Center
1825 County Services Parkway
Marietta, GA 30080
Defendant

Jimmy D. Berry, Esq.
236 Washington Ave.
Marietta, GA 30060
(770) 422-5434
Attorney for Defendant Humphreys

Pam Mutuku
30 Waddell Street
Marietta, GA 30090
Court Reporter

Chris Adams, Esq.
104 Marietta Street, N.W., Suite 200
Atlanta, GA 30303
(404) 651-5709
Attorney for Defendant Humphreys

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| **STATE OF GEORGIA** | * | **INDICTMENT NO.** |
| | | **04-9-0673-05** |
| vs. | * | |
| **STACEY IAN HUMPHREYS,** | * | |
| DEFENDANT | * | |

## APPLICATION FOR INTERIM APPEAL FROM ORDER DENYING THE STATE'S MOTION TO RECUSE THE TRIAL JUDGE

This death penalty case involves the execution-style shooting deaths of

Lori Brown and Cynthia Williams. The State of Georgia files this application

for interim review, before completion of the pretrial proceedings, from an order

denying the State's motion to recuse the trial judge based on an articulated bias

against the District Attorney. The State's motion to recuse, with the District

Attorney's supporting affidavit, and the trial court's recusal order are attached

to this application.[1]

### *This Court's Authority to Allow Early Interim Review*

Although the Unified Appeal does not presently prescribe a method for

appealing such orders before completion of pretrial proceedings, the Unified

Appeal allows for interim review of an order of recusal under OCGA § 17-10-

---

[1] The State files this application with the Clerk of the Georgia Supreme Court in accordance
with Unified Appeal Rule II (F) (3). The State has also filed this application with the trial
court's clerk in accordance with OCGA § 17-10-35.1 (a) (1).

35.1 (b) (2), as well as Unified Appeal Rules II (F) (2, b) and (G) (2).  Further, OCGA § 17-10-36 and Unified Appeal Rule 1 (B) (1) provides this Court with authority to revise and update the Unified Appeal checklist periodically. Indeed, these rules allow the parties to "raise any issue, whether or not it is listed on the checklist." Such revisions should be aimed at "[m]inimizing the occurrences of error and correcting as promptly as possible any error that nonetheless may occur." Unified Appeal Rule I (A) (2).

This objective is the basis of the State's request for this Court to exercise its authority and revise the Unified Appeal Process so as to allow for early review of the order denying the State's motion to recuse the trial judge.

### The Need for Early Interim Review

Waiting until completion of the pretrial proceedings to resolve the recusal issue via *regular* interim review would call into question, and may render moot, all pretrial matters decided by the trial judge in this case.  An *early* interim appeal, on the other hand, would avoid these problems and achieve the Unified Appeal's goal of correcting the occurrences of possible error "as promptly as possible. . . ." Unified Appeal Rule 1(A) (2).  Moreover, allowing *early* interim review of the recusal matter in question would be appropriate because a "trial court who is alleged to harbor prejudice against the State or in favor of the defendant is certainly no less of a potential impediment

Page 2

2

0111074

to the administration of justice in a criminal proceeding than is any of the five rulings which presently are designated as appealable [by the State] in OCGA § 5-7-1." Ritter v. State, 269 Ga. 884, 886 (506 SE2d 857) (1998). These circumstances demonstrate that the need for *early* interim review of the order denying the State's motion to recuse, without assigning the matter to an independent judge for review, outweighs any possible harm due to the minimal delay that would be caused by such review.

### *The State's Right to Appeal a Recusal Order*

Although Ritter v. State, 269 Ga. 884, holds that OCGA § 5-7-1 does not confer upon the State authority to directly appeal an order denying a motion to recuse, this holding does not control in the present case because the State is not seeking a direct appeal under OCGA § 5-7-1. Rather, the State is asking this Court to exercise its inherent power and authority under OCGA § 17-10-36, and Unified Appeal Rule 1 (B) (1), to authorize early interim review of a decision on a motion to recuse.

As there is no doubt that the denial of a motion to recuse a trial judge is crucial to the ultimate disposition of a criminal case, judicial economy and common sense demand early review of the trial court's denial of the State's motion to recuse. The State therefore respectfully urges this Court to consider this application for early interim review.

### *Judge Robinson Should Have Assigned the State's Motion to Recuse to Another Judge.*

District Attorney Pat Head is lead counsel in this death penalty case. After this case was assigned to Cobb Superior Court Judge Dorothy Robinson, this judge commented in a local newspaper that the State's attorney, District Attorney Pat Head, uttered "a blatant lie" concerning a previous death penalty case over which Judge Robinson presided. This comment, as well as Judge Robinson's comment to the same reporter that, "Mr. Head is making desperate statements, and I don't know why," evidence a personal bias or prejudice against the District Attorney that—if proved at a hearing before another judge—would require Judge Robinson's disqualification for personal bias under Canon 3C of the Georgia Code of Judicial Conduct.[2] Judge Robinson should have, therefore, assigned this case to another judge to consider the State's motion to recuse.

The three-step procedure for considering a motion to recuse is settled. When the trial judge is presented with a motion to recuse, she must cease to act upon the merits of the case, and determine whether the motion is timely, whether the accompanying affidavit is legally sufficient, and whether recusal

---

[2] This Cannon pertinently provides that a "judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where . . . he has a personal bias or prejudice concerning a party. . . ." Smith v. State, 250 Ga. 438 (1), 439 (298 SE2d 482) (1983).

4

would be warranted if any or all of the facts alleged in the affidavit were true. Uniform Superior Court Rule (USCR) 25.3.  See <u>Dodson v. Dean</u>, 256 Ga. App. 4, 5 (567 SE2d 348) (2002).

In the present case, Judge Robinson determined that the State's motion to recuse was timely and was accompanied by a legally sufficient affidavit, but found that the motion was insufficient to submit the issue of her alleged personal bias to another judge. In support of this judgment, Judge Robinson cites <u>McBride v. State</u>, 213 Ga. App. 857, 859 (446 SE2d 193) (1094), concluding that recusal is only warranted by an alleged bias resulting "in an **opinion on the merits**. . . ." **(Judge Robinson's Recusal Order, p. 3)** Although <u>McBride</u> supports Judge Robinson's conclusion, this is not the only basis for recusing a trial judge.  As stated above, Canon 3C of the Georgia Code of Judicial Conduct provides that a "judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where . . . he has a ***personal bias or prejudice concerning a party*** . . . ." (emphasis supplied) <u>Smith v. State</u>, 250 Ga. 438 (1), 439, supra.

Judge Robinson also relies on <u>Mann v. State</u>, 154 Ga. App. 677 (269 SE2d 863) (1980), which prohibits the use of motions to recuse as a basis for judge shopping. **(Judge Robinson's Recusal Order, pp. 2-3)** This holding is

5

not controlling because, unlike the motion to recuse in <u>Mann</u>, the motion to recuse in the present case is supported by the District Attorney's affidavit, which include undisputed facts that would authorize a finding of Judge Robinson's personal bias against the District Attorney. Moreover, nothing in the record in the present case supports Judge Robinson's finding that the District Attorney was judge shopping when he filed a motion to recuse.

Likewise, nothing in the record supports Judge Robinson's conclusion that granting the District Attorney's motion to recuse would require her to recuse herself in "**all** Cobb County criminal cases. . . ." **(Judge Robinson's Recusal Order, p. 4)** Because the District Attorney's office has a large case-load, the District Attorney rarely appears before Judge Robinson (usually only in cases where the State is seeking the death penalty). The vast majority of the criminal cases before Judge Robinson are handled by the District Attorney's assistants. Judge Robinson's alleged personal bias against the District Attorney would therefore not disqualify her as to "**all** Cobb County criminal cases. . . ." Judge Robinson would only be disqualified in those cases in which the District Attorney appeared as lead counsel.

Finally, none of the other cases cited in Judge Robinson's recusal order support her personal view that recusal is not required because the judge's comments about the District Attorney's veracity were "valid responses to the

statements made by the District Attorney and **do not result in an opinion on the merits** of the instant case." **(Judge Robinson's Recusal Order, p. 3)** Whether Judge Robinson's responses to the District Attorney's comments were valid or not is a subjective finding. Such a subjective finding by the trial judge was the basis for reversal in State v. Fleming, 245 Ga. 700, 702 (267 SE2d 207) (1980).

In Fleming, the District Attorney filed a motion to recuse and deposed in a supporting affidavit "that the trial judge was personally biased and prejudiced against the district attorney." Id. at 701. Because this sworn statement called for an unbiased, objective ruling on the basis of the District Attorney's claim, and because the trial judge therein presided over an evidentiary hearing on that issue, this Court remanded the case and directed that the district attorney's motion to recuse be submitted to another judge for resolution. Id. at 701 (1), 702-03.

In the present case, the District Attorney not only deposed in a supporting affidavit that Judge Robinson was personally biased and prejudiced against him, the District Attorney's affidavit offers proof from an extrajudicial source supporting this assertion. Therefore, under Fleming, Judge Robinson should not have made any subjective findings as to the validity of the allegations but was required to assign the State's motion to recuse to another

Page 7

00079

judge for an evidentiary hearing. Judge Robinson's failure to do so requires reversal of her order denying the State's motion to recuse.

The State therefore respectfully urges this Court to grant this application for interim appeal.

Respectfully submitted this _22_ day of _June_, 2004

Patrick H. Head
District Attorney
Cobb Judicial Circuit

Dana Norman
Assistant District Attorney
Cobb Judicial Circuit

011080

IN THE SUPERIOR COURT OF COBB COUNTY    PM 4: 24

STATE OF GEORGIA

COBB SUPERIOR COURT CLERK

THE STATE OF GEORGIA,                              *

v.                                                 *        INDICTMENT NO.    04-9-0673-05

STACEY IAN HUMPHREYS,                              *

DEFENDANT.                                         *

## MOTION TO RECUSE JUDGE

COMES NOW the State of Georgia, by and through its undersigned

representative, and pursuant to Rule 25 et seq. of the Uniform Superior Court Rules,

and Canon 3E(1) of the Code of Judicial Conduct, moves to recuse this Honorable

Court on the grounds set forth in the attached Affidavit of Patrick H. Head, District

Attorney.

In the instant case, the State of Georgia has reason to question this Trial Court's

impartiality in this matter as evidenced by this Court's comments reported in The

Atlanta Journal-Constitution on May 27, 2004. In the article entitled "New Rules Open

Up Judicial Campaigns," this Court was quoted as saying that a statement by District

Attorney Pat Head, concerning a previous case over which the trial court presided, was

"a blatant lie."

Based upon the Trial Judge's comment that the District Attorney had lied about

events which had occurred during another case, the Trial Judge evidenced a bias or

prejudice against the District Attorney.

Based on the foregoing and on the Affidavit attached hereto and made a part hereof, the State shows that Trial Court's impartiality is reasonably questioned. Disqualification of the Trial Court from further proceedings in this matter is therefore warranted pursuant to Canon 3E of the Code of Judicial Conduct.

WHEREFORE, the State of Georgia prays that this case be reassigned to another judge in this Court or, in the alternative, that this case be referred to another judge for an evidentiary hearing and a determination of this motion on the merits.

Respectfully submitted this 1st day of June, 2004.

Patrick H. Head
District Attorney
Cobb Judicial Circuit

2

FILED IN OFFICE

2004 JUN -1 PM 4: 24

Jay C. [signature]

COBB SUPERIOR COURT CLERK

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

THE STATE OF GEORGIA,               *

v.                                  *      INDICTMENT NO. 04-9-0673-05

STACEY IAN HUMPHREYS,               *

    DEFENDANT.                       *

## AFFIDAVIT IN SUPPORT OF MOTION TO RECUSE

Comes now, Patrick H. Head, District Attorney, who appeared before me, and being a person exceeding eighteen years of age, states under oath that the following facts are true and correct and based on personal knowledge:

1. I am the District Attorney of the Cobb Judicial Circuit.

2. The above-styled murder case was indicted on February 12, 2004, and has been assigned to The Honorable Dorothy A. Robinson. See Exhibit A, attached hereto and made a part hereof.

3. Notice of the State's intent to seek the Death Penalty in the Humphreys case was filed February 12, 2004. See Exhibit B, attached hereto and made a part hereof.

4. As District Attorney, I have taken an active part in all cases in which the State seeks the Death Penalty, and I am lead counsel in the Humphreys case.

5. On June 1, 2004, I read an article printed in The Atlanta-Journal Constitution, dated May 27, 2004. The article written by Richard Whitt, is entitled "New Rules Open Up Judicial Campaigns." See Exhibit C, attached hereto and made a part hereof.

000083

6. This article stated that the undersigned District Attorney had stated that the Trial Judge had postponed a prior case without telling anyone. The article then stated that the Trial Judge responded that, "That's a blatant lie."

7. The article further stated that the Trial Judge said, "Mr. Head is making desperate statements, and I don't know why."

8. The case about which the undersigned had referred was <u>State v. Michael Willard Buttram</u>, Indictment No. 99-3546.

9. As a result of the Trial Judge's comments, affiant believes that Judge Dorothy A. Robinson must recuse herself or be recused from the above-styled <u>Humphreys</u> case, because she has demonstrated bias or prejudice toward the moving party which would influence the Trial Judge and impede or prevent impartiality in this action.

Respectfully submitted this 1ˢᵗ day of _____June_____, 2004.

_____
Patrick H. Head
District Attorney
Cobb Judicial Circuit

Sworn to and subscribed before me
This 1ˢᵗ day of June, 2004.

_____
Notary Public

My commission expires:

Notary Public, Cobb County, Georgia
My Commission Expires Feb. 16, 2007.

4

JUDGE ROBINSON

RE: Warrant(s)
03-W-12137

## GENERAL BILL OF INDICTMENT

NO. _____ 040673

WITNESSES
COBB SUPERIOR COURT

Det. Herman
CCPD
JANUARY/FEBURARY TERM 2004

THE STATE OF GEORGIA
V.
STACEY IAN HUMPHREYS

_____ True _____ BILL

Feb 12 , 2004

Grand Jury Foreperson

Delivered in open Court by:

Grand Jury Bailiff

JAY C. STEPHENSON, Clerk, S. C.

PATRICK H. HEAD, District Attorney

---

The Defendant herein waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

The Defendant herein waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Defendant

_____
Attorney for Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

_____
Assistant District Attorney

EXHIBIT

A 000085

ID# 2004-00723-CR Page 13

Filed In Office Feb-12-2004 17:24:14
ID# 2004-0017924-CR Page 1
Jay C. Stephenson,
Clerk of Superior Court Cobb County

STATE OF GEORGIA, COUNTY OF COBB

IN THE SUPERIOR COURT OF SAID COUNTY

THE GRAND JURORS selected, chosen and sworn for the County of Cobb, to wit:

Richard L. Perry- Foreperson

Neeka Moultrie-Asst. Foreperson

Kristen Louise Grace-Secretary

Randall R. Thomas, Sr.

Christopher John Wix

Elie Thaddeus Ducros

Joyce Davis Stringer

Claudell Taylor

Lewen Grant Brown

Alfred Hinton, Jr.

Dorothy Price Cash

Eileen Joan Lawrence

Cynthia J. Matthews-Alt #2

~~James L. Stewart~~

Miguel Solorzano

~~Daniel George Hess~~

Benjamin Franklin Cox, Jr.

Bette N. Selfridge

~~James Patrick Spaulding~~

Jarius Lamar Hayes

Kathy J. Sexton

~~Joel John Barch~~

Nhut Dao Huynh

Fredric I. Weitz

JoAnne V. Cash-Alt #1

in the name and behalf of the citizens of Georgia, charge and accuse STACEY IAN HUMPHREYS with the offense of MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully and with malice aforethought cause the death of Cynthia Williams a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-0017924-CR
Page 2

## COUNT TWO

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully and with malice aforethought cause the death of Lori Brown a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT THREE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of FELONY MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of  November, 2003, did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Cynthia Williams a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT FOUR

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of FELONY MURDER, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of  November, 2003, did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Lori Brown a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-0017924-CR
Page 3

## COUNT FIVE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of AGGRAVATED ASSAULT, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully make an assault upon the person of Cynthia Williams, with a pistol, a deadly weapon by shooting her; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT SIX

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of AGGRAVATED ASSAULT, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully make an assault upon the person of Lori Brown, with a pistol, a deadly weapon by shooting her; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT SEVEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of KIDNAPPING WITH BODILY INJURY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully abduct and steal away Cynthia Williams, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit: a gunshot wound; contrary to the laws of said state, the good order, peace and dignity thereof.

ID# 2004-00729-CR
Page 4

## COUNT EIGHT

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of KIDNAPPING WITH BODILY INJURY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully abduct and steal away Lori Brown, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit: a gunshot wound; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT NINE

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of ARMED ROBBERY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, to wit: a Bank of America Bank Card from the person and immediate presence of Cynthia Williams, by use of an offensive weapon, to wit: a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT TEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of ARMED ROBBERY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, to wit: a Wachovia Bank Card from the person and immediate presence of Lori Brown, by use of an offensive weapon, to wit: a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

## COUNT ELEVEN

and the Grand Jurors, aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of POSSESSION OF A FIREARM BY A CONVICTED FELON, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, having been convicted on the 11th day of October, 1993, by a court of competent jurisdiction to wit: Superior Court of Cobb County Case# 93-3083, of the offense of Burglary, a felony, under the laws of this State, did possess and transport a firearm to wit: a Rugar 9mm handgun; contrary to the laws of said state, the good order, peace and dignity thereof.

PATRICK H. HEAD, District Attorney

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

**COPY**

STATE OF GEORGIA

v.

STACEY IAN HUMPHREYS

INDICTMENT#

*04-9-0673*

## NOTICE OF STATE'S INTENT
## TO SEEK THE DEATH PENALTY

Notice is hereby given that the State of Georgia will seek the death penalty in the event of a conviction for murder in the above-styled case, and expects the following statutory aggravating circumstances to be authorized by the evidence under Official Code of Georgia Annotated 17-10-30:

Under O.C.G.A. 17-10-30 (b)(2):
The offense of the murder of Cynthia Williams was committed while the offender was engaged in the commission of another capital felony.

The offense of the murder of Lori Brown was committed while the offender was engaged in the commission of another capital felony.

Under O.C.G.A. 17-10-30(b)(4)
The offense of the murder of Cynthia Williams was committed for the purpose of receiving money or any other thing of monetary value;

The offense of the murder of Lori Brown was committed for the purpose of receiving money or any other thing of monetary value;

Under O.C.G.A 17-10-30 (b)(7)
The offense of the murder of Cynthia Williams was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

The offense of the murder of Lori Brown was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

Filed In Office Feb-12-2004 17:24:14
ID# 2004-0017925-CR
Page 1

Jay C. Stephenson
Clerk of Superior Court Cobb County

EXHIBIT
B    000091

Under O.C.G.A. 17-10-30 (b)(10)
     The offense of the murder of Cynthia Williams was committed for the purpose of
avoiding, interfering with, or preventing a lawful arrest.

     The offense of the murder of Lori Brown was committed for the purpose of
avoiding, interfering with, or preventing a lawful arrest.


The State of Georgia requests the court to notify the jury in writing after a conviction for
murder of the above statutory aggravating circumstances, as well as any others, which
may be supported by the evidence upon the trial of this case.  O.C.G.A. 17-10-30 (c).

Respectfully submitted,

PATRICK H. HEAD
District Attorney
Cobb County Judicial Circuit

ELEANOR DIXON
Assistant District Attorney
Cobb County Judicial Circuit

a.m. Monday at the 20th Century Veterans Memorial on Bank Street at King Street in Smyrna. Black was in the 106th Infantry when he was captured Dec. 19, 1944, during the Battle of the Bulge.

Also on the Smyrna program are a flyover by a C-130 Hercules from the 94th Airlift wing of Dobbins Air Reserve Base, presentation of colors by the 94th Honor Guard and music by the Campbell High School Orchestra.

➤ The Atlanta Vietnam Veteran Business Association will dedicate a granite memorial across the street from Veterans Memorial Park in downtown Smyrna at 11 a.m. today in honor of those who died while serving in Vietnam. A plaque on the memorial will honor Michael Robert Glenn, a Campbell High School graduate who died in Vietnam on Feb. 11, 1970.

➤ Pearl Harbor survivors will be remembered at 2 p.m. Sunday at the Pearl Harbor monument at the Marietta National Cemetery. The Georgia Pearl Harbor Survivors Association will place bricks and flowers to remember the survivors who have died and those still living.

— Tucker McQueen

death, and then he moved to Albany, Ga. There, but by with little talk about his father, and Jerry Styles grew up, started his own family and settled down in Marietta to run his automotive business. There was seldom time to think about the past.

That changed two years ago after his mother handed him the small red address book his father carried during World War II. The task of deciphering the barely legible listings seemed insurmountable, but Styles began a dogged search to learn his father's story.

He found information about the men his father served with in a book on Rangers and by searching on the Internet. The WWII Rangers Battalions Association also helped.

"I'm so involved in this, I don't want to hunt, fish or do anything else," Styles said. "This is my passion — to honor my dad."

Tom Herring, secretary for the Rangers association, remembers meeting Styles at one of the group's reunions. Herring, who lives in Charlotte, also survived the beach landing on D-Day, June 6, 1944. He said his organization formed a Sons & Daughters Auxiliary a few years ago to help organize yearly reunions and perpetuate the legacy of the WWII Army Rangers.

Styles, now secretary of the younger group, is helping plan a



Photos by ANDY SHARP / Staff

Jerry Styles' quest to learn about his father began with the address book (top) his dad carried during World War II. Above, he visits the Marietta National Cemetery

➤ Please see MEMORIAL, J3

# New rules open up judicial campaigns

## Candidates can speak out, blast opponents

**CONGRESSIONAL FORUM**

➤ The Centennial Sierra Club is hosting a forum for 6th District U.S. Congressional candidates at 7 p.m. June 3 at the East Cobb Government Center, 4400 Lower Roswell Road.

Members of the audience will be allowed to ask questions of the candidates following their introductions and opening statements.

The candidates, all Republicans, are Chris Chatwood of Marietta, Chuck Clay of Marietta, Roger Hines of Kennesaw, Kevin Johns of Marietta, Robert B. Lamutt of Marietta, Tom Price of Roswell and Al Beverly of Marietta.

The event is free and open to the public. For more information, call 770-578-1255.

**By RICHARD WHITT**
rwhitt@ajc.com

Let the sniping begin.

For years, state judicial elections have been all but invisible to most voters because of limits on what judges could say and do while campaigning.

This year will be the first election cycle since the 11th U.S. Court of Appeals in Atlanta struck down those limits and gave judges approval to personally solicit contributions and actively campaign.

And in at least one local race, candidates and their supporters already are jabbing at one another.

Before the 11th Circuit ruling, a judicial candidate's election committee could ask for campaign contributions or endorsements, but the candidate could not. The court ruled that that stricture did not significantly reduce the risk of compromising a judge's impartiality. If Georgia is going to have judges campaign for the bench, the state needs to treat such races

➤ Please see JUDGESHIPS, J3

THE ATLANTA JOURNAL-CONSTITUTION

CHECK FOR BREAKING NEWS UPD:

(right column, partially cut off)

(and no cuts in b. dollars to plan fo net school. Fir expected next mo

Noteworthy h expected proposal

➤ Increased cla: grades. District officer Robert M generally would student per teach the district, to her not hiring as man In the past — i growing by rough annually.

➤ A cut of half t dergarten aides roughly 197 po more kids with f save the distri million.

However, this pen. When P approved the stat this month, it in tional $5.7 million had not planned c state cut its fund next school year b tion, and not by a as originally propc

District official tions would he saved if it got mor.

➤ Teacher raises uary, when state becomes available state assumes ab increase, Cobb's percent because I ers more than schedule.

➤ Various cuts o (including eli administrative district level (inc for some vacant p Cobb's budget year was $722.9

Noteworthy it budget proposal

➤ More than $3 funds for the which will be th kind in Cobb toward element: includes hiring $101,783 in pay $60,000 for $75,000 for sal als. This is th among new prc get proposal, t support of boar

➤ Please see BI

EXHIBIT C

000093

The Atlanta Journal-Constitution / Thursday, May 27, 2004 · JF5

# dgeships: New rules for candidates open up campaigns

Continued from J21

like other elections, the court said.

Georgia is one of 31 states that elect judges. In the other 19 states, judges are appointed by the governor or state legislature or a judicial selection committee. Judicial elections in Georgia are nonpartisan and are held in the summer.

An earlier U.S. Supreme Court ruling struck down the rule that prohibited judicial candidates from announcing their views on disputed legal or political issues.

In Cobb County, six Superior Court judges posts are on the July 20 ballot, but only two positions are contested. Six State Court judges are also on the ballot; none has opposition.

Attorney William J. McKenney is trying to unseat Judge Dorothy A. Robinson, who has been into the Superior Court bench for 24 years. McKenney is leveling a range of charges against the long-time judge.

"Most courts start at 9 or 9:30," he said recently. "She comes in around 10 a.m. Decisions are just made timely ... expect motions to be read before the court hearing. Very rarely are motions read before the hearing."

Moreover, said McKenney, 56, the judge isn't nice to attorneys, police officers in court, personnel, and she hasn't attended monthly meetings with fellow Cobb Superior Court judges since July 2002.

Robinson said she quit attending the meetings because they are held during regular court hours and would take time away from the court.

"Not a lot happens at those meetings," she said. "Some meetings don't even have them. I'm more interested in moving the cases along than attending meetings."

As to criticism of her treatment of others, Robinson said McKenney has "failed to identify any of those people he's hard to respond when you don't know who the people are," she said.

Robinson, 66, dismisses that criticism as sour grapes. "Some lawyers think if you rule against them, you're disagreeable," she said. "I've had to rule against a lot of them in 23 years."

Robinson, a Slick Court appointed by Gov. Jimmy Carter in 1972. In 1980, she became the first woman elected as a Cobb Superior Court judge when she defeated incumbent Judge Howell Ravan.

Robinson said "most law years" are supporting her for re-election.

Cobb District Attorney Pat Head isn't one of them. He is supporting McKenney.

Head said Robinson behaves disrespectfully toward defense and prosecuting attorneys, keeping them in court unnecessarily. Robinson is notorious for sending the sheriff to fetch an attorney

who is a few minutes late, he said.

"This judge should be treated with courtesy, dignity and respect," Head said. "Some judges may have been on the bench so long they've forgotten it's not a dictatorship."

Head also complained that the judge delayed rulings on motions in a death penalty case for two years. 

At one point, Head said, lawyers showed up at the trial and Robinson had postponed the case without telling anyone ...

That's a blatant disregard for the people ... the case was delayed, she said, because there were four issues relating to the trial that were pending before the state Supreme Court, including the constitutionality of electrocution.

"Mr. Head is making derogative statements, and I don't know why," she said.

The Cobb Fraternal Order of Police "also" is supporting McKenney, citing unhappiness with most of his practice, are in Atlanta.

"We looked at the candidates' and their performance records over the years and determined through a vote of the membership that it was time for a change," said FOP president Steve Gaynor.

Police and defendants often have scheduling issues.

"She has no flexibility," Gaynor said. "We do not have a problem with other courthouses."

Gaynor called Robinson a great judge. "She knows the law," he said. "She has her people skills."

## Less-heated contest

In another Cobb, lower-profile race, 'Juvenile Court judge' Stephen Schuster is running against Marietta attorney Joan Davis for an open seat.

The 50-year-old Davis would become the first African-American elected a Cobb Superior Court judge. Davis said she isn't running simply to offer diversity on the bench, but that "the fact that I'm African-American adds a whole other dimension."

She said Cobb County has a growing black population.

"I think the public would want the bench to be reflective of the population," she said.

Davis said she would not criticize her opponent publicly, but she cited what she called a "lack of commitment" by Schuster in announcing for Superior Court a year after being appointed to the Juvenile Court bench.

 

Incumbent Dorothy A. Robinson is challenged by William J. McKenney, left.

Juvenile Court judge J. Stephen Schuster and attorney Joan Davis seek an open seat.

Schuster, who was appointed the bench two years ago, refuses to criticize his opponent despite that new rules anymore.

"I'm not running against anybody," the 53-year-old judge said. "I'm running on my record ... I believe I'm the better candidate."

## Unopposed are relieved

Other Superior Court judges in Cobb are happy to be unopposed. In Cobb this year's judicial elections ...

"Yes," said Judge Kenneth Nix.

However, Nix said he doesn't think removing restraints on judicial races will result in dramatic changes in tactics.

"Where I think the change will show up most is heretofore, judges couldn't comment on particular issues that might come before them," he said. "I can see at a public forum people asking them questions and ... not understanding. If they won't comment ...

"You can't — quote unquote — hide behind the rules anymore," he said.

Judge Mary Staley, who also is unopposed, said there could be a sea change in how candidates' approach campaigns.

"There are a lot more opportunities to campaign in more traditional ways, like legislators," Staley said.

"In my opinion," it will develop its own culture and be driven by the personality of the people involved."



This summer, let your skin come out and play

LASER HAIR REMOVAL

Underarm starting at ... $99.95
Bikini Line ........... $109.95
Lip ................... $109.95
Underarm .............. $129.95

www.americanlaser.com

American Laser Centers
1-800-532-2906
BUCKHEAD/MARIETTA

000094

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

THE STATE OF GEORGIA,                      *

                                  *    INDICTMENT NO. 04-9-0673-05

v.

STACEY IAN HUMPHREYS,                      *

    DEFENDANT.                               *

## ORDER

The within and foregoing motion to recuse having been read and considered,

IT IS HEREBY ORDERED pursuant to Rule 25, Uniform Superior Court

Rules, that this case be referred to the Chief Judge for assignment for a hearing.

SO ORDERED, this ____ day of _____, 2004.

                                    _____

                                    Dorothy A. Robinson, JUDGE
                                    Superior Court
                                    Cobb Judicial Circuit

ID# 2004-0072329-CR
Page 24

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing Motion to Recuse by depositing in the United States Mail a copy of the same in a properly addressed envelope with adequate postage affixed thereon to:

Jimmy D. Berry
236 Washington Ave
Marietta, GA 30060

Chris Adams
104 Marietta St. NW
Ste. 200
Atlanta, GA 30303

Honorable Dorothy Robinson
Cobb County Courthouse
(by Hand Delivery)

This 1st day of June, 2004.

Patrick H. Head
District Attorney
Cobb Judicial Circuit

Cobb County District Attorney
10 East Park Square
Marietta, GA 30090

000096

COBB COUNTY GA.
FILED IN OFFICE

04 JUN -3  AM 11: 05

Jay C. Stephinson
COBB SUPERIOR COURT CLERK

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

STATE OF GEORGIA,      )      CRIMINAL ACTION FILE
                       )      NO. 04-9-0673-05

v.                      )

STACEY IAN HUMPHREYS,   )      **ORDER:** THE STATE OF
                       )      GEORGIA'S MOTION TO
       Defendant.       )      RECUSE JUDGE

### ORDER

The above-styled case having come before this Court on The State of Georgia's Motion to Recuse Judge, and the Court having reviewed said motion and attached affidavit, as well as reviewing other matters of record, finds as follows:

### FINDINGS OF FACT

On June 1, 2004, the State of Georgia by and through its representative District Attorney Pat Head, filed a Motion to Recuse Judge and an affidavit in support, alleging that this Court (Judge Robinson) is biased or prejudiced against the District Attorney, and therefore this court should recuse herself. Specifically, the State of Georgia alleges, "the State of Georgia has reason to question this Trial Court's impartiality in this matter as evidenced by this Court's comments reported in The Atlanta Journal-Constitution on May 27, 2004. In the article entitled 'New Rules Open Up Judicial Campaigns,' this Court was quoted as saying that a statement by District Attorney Pat Head, concerning a previous case over which the trial court presided was 'a blatant lie.'" District Attorney Pat Head's affidavit adopts the statements contained in the motion to recuse and

1

further states that the Court said, "Mr. Head is making desperate statements, and I don't know why"

in the same article.

## CONCLUSIONS OF LAW

When a trial judge is confronted with [a motion to recuse], [she] must temporarily cease to act upon the merits of the matter and shall immediately determine [(1)] timeliness of the motion and [(2)] the legal sufficiency of the affidavit, and [(3)] make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted.  If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse.

Dodson v. Dean, 256 Ga. App. 4, 5-6, 567 S.E.2d 348 (2002), citing USCR 25.3.

"If all three conditions precedent set forth in USCR 25.3 are not met, the trial judge shall

deny the motion on its face as insufficient and there is no need for the trial judge to assign the

motion to another judge to hear." Brewer v. Waldroup, 259 Ga. App. 479, 480, 578 S.E.2d 139

(2003).

In the present case, the motion to recuse was filed timely and the affidavit is sworn to and

is sufficient in form.  Now the Court must determine whether, assuming any of the facts alleged

in the affidavit are true, the recusal would be warranted.

Canon 3 (E) (1) generally requires judges to "disqualify themselves in any proceeding in which their impartiality might reasonably be questioned." "Impartiality might be reasonably questioned" means a reasonable perception, of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates, seeking to judge shop and to gain a trial advantage, because both of [sic] their credibility is suspect from self-interest.  Recusal on this ground requires a rational basis for such questioning, not an arbitrary basis, even though no actual impropriety on the part of the trial court judge has been shown.  (Citations and punctuation omitted.)"

Brewer v. Waldroup, 259 Ga. App. at 481 citing Baptiste v. State, 229 Ga. App. 691, 694, 494

2

B011098

S.E.2d 530 (1997).

> Any alleged prejudice or bias against the party's attorney rather than the party himself is not, per se, grounds for disqualification. If it were, an attorney who felt himself to be the object of such bias would be the living embodiment of a limitation on the trial judge's power and responsibility to hear cases within the jurisdiction of the judge's court. If the attorney and his relationship with the judge is determinative of whether or not that trial judge is "qualified" to hear cases which are otherwise within [her] court's jurisdiction, that attorney, depending upon whether or not he moved to disqualify on these grounds, would have the ultimate power to confer upon or deny to the judge this jurisdictional power and authority. If this were so, in some circumstances it could be in the attorney's "interest" to cultivate the judge's prejudice so as to avoid appearance before [her]. Such an attorney could offer clients not only legal advice and representation but also their "choice" of judges. Obviously this form of "judge shopping" is not a power which the bar can exercise over the bench of this state.

Mann v. State, 154 Ga. App. 677, 677-78, 269 S.E.2d 863 (1980).

"In order to be disqualifying the alleged bias must stem from an extra-judicial source and result in an **opinion on the merits** on some basis other than what the judge learned from his participation in the case. The alleged bias of the judge must be of such a nature and intensity to prevent the party from obtaining a trial uninfluenced by the court's prejudgment." McBride v. State, 213 Ga. App. 857, 859, 446 S.E.2d 193 (1994) (citations omitted; emphasis added; punctuation omitted); See also Phillips v. State, 275 Ga. 595, 600, 571 S.E.2d 361 (2002).

In the current case, the ground urged as a basis for this Court's recusal, that this Judge is biased against the District Attorney, is legally insufficient. Any comments made by the Court in the May 27, 2004 article are valid responses to the statements made by the District Attorney and **do not result in an opinion on the merits** of the instant case. The District Attorney's motion is an obvious attempt to limit "the trial judge's power and responsibility to hear cases within the jurisdiction of the judge's court." See Mann, supra, at 677-78. The District attorney does not

3

have the ultimate power to confer upon or deny this Court jurisdictional power and authority.

See id. *Arguendo*, even if the District Attorney's motion to recuse as alleged could rise to the

level to require a hearing, to recuse the Court in the instant case would serve to recuse this Court

from **all** Cobb County criminal cases, exactly the type of power which the bar can not exercise

over the bench of this state. See id.

Because the motion is legally insufficient, there is no need for this motion to be assigned

to another judge to hear.

THEREFORE, for the above-mentioned reasons, IT IS HEREBY ORDERED AND

ADJUDGED that the State of Georgia's Motion to Recuse is **DENIED.**

**SO ORDERED**, this _28_ day of _June_, 2004.

DOROTHY A. ROBINSON
Judge, Superior Court
Cobb Judicial Circuit

4

# CERTIFICATE OF SERVICE

This is to certify that I have this day served the parties in the foregoing matter with a copy of the attached **ORDER** by depositing in the United States mail copy of same in a properly addressed envelope with adequate postage thereon.

This 3rd day of _____ June _____, 2004.

_____
Melissa Condon Onacki
Law Clerk to:
Dorothy A. Robinson
Judge, Superior Court
Cobb Judicial Circuit

Patrick H. Head, Esq.
Russell Parker, Esq.
Eleanor Dixon, Esq.
Brian Lumpkin, Esq.
District Attorney's Office
10 East Park Square
Marietta, GA 30090
(770) 528-3080
Attorneys for the State

Stacey Ian Humphreys
c/o Cobb County Adult Detention Center
1825 County Services Parkway
Marietta, GA 30080
Defendant

Jimmy D. Berry, Esq.
236 Washington Ave.
Marietta, GA 30060
(770) 422-5434
Attorney for Defendant Humphreys

Pam Mutuku
30 Waddell Street
Marietta, GA 30090
Court Reporter

Chris Adams, Esq.
104 Marietta Street, N.W., Suite 200
Atlanta, GA 30303
(404) 651-5709
Attorney for Defendant Humphreys

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

**STATE OF GEORGIA**          *          **INDICTMENT NO.**
                                                     **04-9-0673-05**

vs.                                     *

**STACEY IAN HUMPHREYS,**     *

DEFENDANT                     *

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing Application for

Interim Appeal from Order Denying The State's Motion to Recuse upon the below-

indicated Parties by hand-delivery or by placing a copy of the same in the United States

Mail properly addressed and adequate postage affixed thereon.

Honorable Dorothy Robinson          Mr. Chris Adams
Cobb County Superior Court          104 Marietta Street, Suite 200
                                                     Atlanta, GA  30303

Mr. Jimmy Berry
236 Washington Avenue
Marietta, GA. 30060

This the 22ND day of June, 2004.

Dana J. Norman
Assistant District Attorney
Cobb Judicial Circuit

10 East Park Square
Marietta, Georgia 30090-9602
(770) 528-3080

000102

**REMITTITUR**

Filed In Office Aug-10-2004 09:15:16
ID# 2004-0091681-CR
Page 1

## SUPREME COURT OF GEORGIA

Case No. S04R1733



*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb County

Atlanta,    July 19, 2004

04-9-0673-05

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed.

### THE STATE  v.  STACEY IAN HUMPHREYS

It appearing that this application for interim review has not been pre-authorized by the trial court as is required by statute and the Unified Appeal Procedure, it is hereby dismissed.  OCGA § 17-10-35.2; U.A.P. II (F) (1).

**SUPREME COURT OF THE STATE OF GEORGIA**

Clerk's Office, Atlanta

I certify that the above is a true extract from the Minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

*Lynn M. Stinchcomb* , Chief Deputy Clerk

000103

Filed in Office Sep-28-2004 14:27:03
ID: 2004-0114418-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

*EX PARTE*
PLEADING NUMBER __1__

## MOTION FOR FUNDS TO HIRE AN INVESTIGATOR TO AID IN THE PREPARATION OF THE DEFENSE

Comes now Defendant, by and through his attorneys, and moves this Court for an order authorizing counsel to retain the services of an investigator and directing that the costs of such expert assistance be paid by the county. This motion is made pursuant to the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, to Article I, § I, ¶¶ I, II, VII, XI, XII, XIV, XVI, XVII and XXVIII of the Georgia Constitution, to O.C.G.A. §§ 17-12-31, 17-12-44, 24-9-20, 24-9-21, to Uniform Superior Court Rule 29, and to all other applicable state and federal law and case precedent. In support of this motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives

1

rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be

2

taken at both stages of any capital trial. <u>Beck v. Alabama</u>, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

In <u>Ake v Oklahoma</u>, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed. 2d 53 (1985), the United States Supreme Court held that an indigent defendant is entitled to funds for an expert where the area of expertise is a "significant factor." The state must "assure that the defendant has a fair opportunity to present his defense." The Court observed that "justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at state." 470 U.S. at 76. <u>See also</u> <u>Griffin v. Illinois</u>, 351 U.S. 12, 17-19, 76 S.Ct. 585, 100 L.Ed. 2d 891 (1956) ("[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has").

3.

This right is *not* limited to mental health experts. To provide effective assistance an attorney must adequately investigate and prepare his or her client's case. <u>Goodwin v. Balkcom</u>, 684 F.2d 794, 805 (11th Cir. 1982) (at heart of effective representation is independent duty to investigate and prepare); <u>see also</u> <u>McQueen v. Swenson</u>, 498 F.2d 207, 217 (8th Cir. 1974) (attorney who does not seek out all facts relevant to client's case will not be prepared at trial). Where investigative and other services are necessary to the preparation and presentation of an adequate defense, the denial of access to those services may also deprive a defendant of the minimally effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. <u>Blake v. Kemp</u>, 758 F.2d 523, 531 (11th Cir. 1985); <u>Pedrero</u>

3

v. Wainwright, 590 F.2d 1383, 1396 (5th Cir. 1979); United States v. Fessel, 531 F.2d 1275 (5th Cir. 1976). See also Mason v. Arizona, 504 F.2d 1345, 1352 (9th Cir. 1974) (failure to provide investigative assistance when necessary to defense constitutes ineffective performance), cert. denied, 420 U.S. 9936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975).

4.

Because of the large number of complex legal issues that must be researched and briefed, Defendant's counsel does not physically have the time to interview all potential witnesses that will be essential to providing Defendant with an adequate and effective defense.  If Defendant were not an indigent and could afford to hire a private criminal investigator, his counsel would advise the hiring of such an expert.

5.

The State of Georgia has had several experienced criminal investigators investigating the incidents out of which Defendant's indictment has arisen. These investigators have taken statements from each person charged with the crimes and from the victims and witnesses, and have examined numerous items of physical evidence. The District Attorney's office has relied and will continue to rely on these investigators, whereas, Defendant, because of his poverty, will not have the advantage of experienced investigators assisting him in the preparation of his defense.

6.

Defendant will make a proffer of the name, background and expertise of said investigator, together with the anticipated expense of hiring same, in an *ex parte* presentation to the Court.  If Defendant were to be forced to disclose the name of his proposed

4

investigator and the expected services of said investigator, then he will be forced to reveal his

attorney's work product in violation of the safeguards of O.C.G.A. §§ 24-9-21 and 24-9-24,

*et seq.*

WHEREFORE, Defendant respectfully requests:

(a)    That he be granted an *ex parte* hearing on his proffer of need;

(b)    That he be granted sufficient funds to retain the services of a private

investigator; and

(c)    That he be granted such other relief as is proper in this matter.

Respectfully submitted this ___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(702)

5

## CERTIFICATE OF SERVICE

Comes now the undersigned counsel for Defendant and hereby certifies that a copy of

the *Ex Parte* Motion for Funds to Hire an Investigator to Aid In the Preparation of the

Defense has **NOT** been served upon the District Attorney in this case, because it is an *ex*

*parte* pleading.

Respectfully submitted this ____ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

702

6

Filed in Office Sep-28-2004 14:27:03
ID 2004-0114419-CR
Page 1

IN THE SUPERIOR COURT OF COBB COUNTY

*Jay C. Stephenson*
Clerk of Superior Court Cobb County

STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

### *EX PARTE*
### PLEADING NUMBER 2

### MOTION AND PROFFER IN SUPPORT OF DEFENDANT'S
### MOTION FOR FUNDS TO RETAIN THE SERVICES OF
### A BOARD CERTIFIED PSYCHOLOGIST AND PSYCHIATRIST

Comes now Defendant, by and through council, and moves this Court for funding to retain the services of an expert psychologist and possibly an expert psychiatrist. This motion is made pursuant to the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, VII, XI, XII, XIV, XVII, XXIV and XXVIII of the Constitution of the State of Georgia, and to all other applicable state and federal law. In further support of this motion, Defendant states:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate

1

punishment' in any capital case." <u>Johnson v. Mississippi</u>, 486 U.S. 578, 584, 108 S.Ct. 1981,

100 L.Ed.2d. 575 (1988) (quoting <u>Gardner v. Florida</u>, 430 U.S. 349, 363-64, 97 S.Ct. 1197,

51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting <u>Woodson v. North Carolina</u>, 428

U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when

a defendant's life is at stake, a court must be "particularly sensitive to insure that every

safeguard is observed." <u>Gregg v. Georgia</u>, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859

(1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly

different from any other sentence. <u>E.g.</u>, <u>Ford v. Wainwright</u>, 477 U.S. 399, 411, 106 S.Ct.

2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded

that factfinding procedures aspire to a heightened standard of reliability. This especial

concern is a natural consequence of the knowledge that execution is the most irremediable

and unfathomable of penalties; that death is different." (citations omitted)); <u>California v.</u>

<u>Ramos</u>, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the

qualitative difference of death from all other punishments"); <u>Eddings v. Oklahoma</u>, 455 U.S.

104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is

. . . profoundly different from all other penalties"). For this reason, our system of justice

must go "to <u>extraordinary measures</u> to ensure that the prisoner sentenced to be executed is

afforded process that will guarantee, as much as is humanly possible, that the sentence was

not imposed out of whim, passion, prejudice, or mistake." <u>Eddings v. Oklahoma</u>, 455 U.S. at

118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be

taken at both stages of any capital trial. <u>Beck v. Alabama</u>, 447 U.S. 625, 638, 100 S.Ct.

2382, 65 L.Ed.2d 392 (1980).

2

2.

It is, of course, now well established that any evidence regarding the mental impairments or limitations of an accused are constitutionally indispensable to the penalty determination.

> [E]vidence about the defendant's background and character is relevant [to an individualized assessment of the appropriateness of the death penalty] because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.

California v. Brown, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring). Accord Woodson, 428 U.S. at 304 (any of the 'diverse frailties of humankind" regarding the accused must be taken into consideration); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (sentencer must "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record ... as a basis for a sentence less than death"); Eddings, 455 U.S. 104 (1982) (childhood trauma must be considered by the sentencer); People v. Marsh, 36 Cal. 3d 134 (1984) (evidence of unhappy childhood and neglect found to be mitigating factor); Moody v. State, 418 So. 2d 989 (Fla. 1982) (personality change following service in Vietnam a mitigating factor).

3.

Mental impairment is the most compelling mitigating factor. See Zant v. Stephens,

3

462 U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (mental illness militates in favor of lesser sentence). Given the foregoing, it cannot be doubted that any mental disability of Defendant will be a "significant factor" at his sentencing. Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

4.

Based upon counsel's investigation to date and interviews with Defendant as well as the nature of the charges it appears that there could possibly be several areas of psychological and perhaps even psychiatric impairment, the nature of which must be considered as mitigation at the sentencing phase.

### Request For Board Certified Psychologist

5.

The services of a psychologist are required for the following reasons:

a.   to review medical, school and institutional records and interview members of Defendant's family;

b.   to conduct a comprehensive psychological evaluation and a physical and neurological examination of Defendant so that any concrete evidence of impairment can be related to the jury;

c.   to prescribe the appropriate psychological testing to determine the existence of any disabilities and, if they exist, to document them;

d.   to express an opinion within a reasonable degree of medical certainty as to any causal connection between any impairments, or environmental/genetic predispositions, and the antisocial behavior with which Defendant is charged;

4

e.    to assist counsel in understanding Defendant's mental impairments, if they

exist, in presenting evidence in his behalf, and in cross examining any

evidence offered by the State's experts to the jury; and

f.    to testify with regard to the findings and conclusions.

6.

The services of a psychologist who can conduct psychological testing are required to

determine the existence and degree of Defendant's impairments.    The following

psychological tests are necessary to make such determinations:

a.    Wechsler Adult Intelligence Scale Revised (WAIS-R) – the most widely used

test on cognitive functioning (IQ) of adults which yields highly reliable

results;

b.    Minnesota Multiphasic Personality Inventory (MMPI) -- the most widely

used and researched personality measurement device, consisting of a 566

item personality test, through interpretation of which the psychologist can

provide descriptive, predictive, diagnostic, and prognostic information;

c.    Rorschach test -- widely used projective assessment test utilized to measure

factors such as the patient's maturity, interpersonal relationship style,

emotional responsiveness, level of functioning, ability to organize and

marshal resources, and reality perception; and

d.    Thematic Apperception Test (HRB) – highly sophisticated neurological test

battery consisting of five distinct tests designed to detect brain damage.

5

7.

Counsel also believes that there must be an assessment of the possibility and extent of Defendant's drug use, if any, during the period of time leading up to the events which have resulted in the charges in this indictment. The prolonged use of such drugs as "crack" cocaine and alcohol are known to have a marked effect on an individual's ability to appreciate the consequences of certain acts. An expert is necessary to assist counsel in this area and also to be prepared to testify to the jury as to the effects of such drug usage on an individual's mental condition, if there is any. Only an expert psychologist or psychiatrist can determine if there has been any effect of prolonged drug use or abuse on an individual's ability to appreciate consequences of certain acts and only an expert psychologist, therefore, could properly assist counsel in presenting that evidence to a jury during a sentencing phase in the event one is necessary.

8.

Counsel requests that this Court authorize sufficient funds so that Defendant can retain the services of a board certified psychologist who will assist counsel by administering the psychological tests necessary to determine the effects of any mental impairment, environmental or genetic impairment, any drug use and any organic brain damage which would ultimately require the assistance of a board certified psychiatrist. It is anticipated that the services of this defense expert will require the expenditure of no more than five thousand ($5,000) dollars.

**Request For Board Certified Psychiatrist**

9.

Counsel further requests that this Court authorize sufficient funds so that Defendant can retain the services of a board certified psychiatrist, in the event the psychologist determines the possible existence of any brain damage or severe mental impairment. This psychiatrist will administer the battery of psychiatric tests and conduct the necessary psychiatric evaluations to determine whether or not Defendant suffers from any mental impairments which should be considered by the jurors in their determination as to the appropriate punishment in this case.

10.

In Ake, 470 U.S. at 83, the Supreme Court held that:

> when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the Defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation and presentation of the defense.

The Court in Ake further cautioned that without a psychiatrist "to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable," and to offer other professional assistance, the possibility of "an inaccurate resolution of sanity issues is extremely high." Id. at 82.[1]

---

[1] See Ford v. Gaither, 953 F.2d 1296 (11th Cir. 1992), wherein the United States Court of

7

11.

The services of a psychiatrist who can conduct neurological testing are required to determine the existence of Defendant's impairments. The following psychiatric tests must be conducted, at a minimum, in order to properly evaluate Defendant in preparation for his upcoming trial:

    a.    an Electroencephalogram (EEG);

    b.    a Brain Scan;

    c.    a Magnetic Resonance Imaging Test (MRI); and

    d.    a complete physical examination.

12.

In Jeffers v. Lewis, 974 F.2d 1075 (9th Cir. 1992) the court held that the sentencing court's failure to consider evidence of mental impairments falling short of "significant impairment" required a new sentencing hearing. In Waters v. Zant, 979 F.2d 1473 (11th Cir., 1992), the court held that trial counsel was ineffective for (1) failing to introduce mitigating evidence regarding the defendant's mental impairment even though the mental impairment fell short of insanity; (2) failing to elicit from family members testimony with regard to the defendant's troubled childhood, history of mental illness, and lack of prior violent behavior;

---

Appeals for the 11th Circuit affirmed the United States District Court for the Northern District of Georgia's grant of a petition for writ of habeas corpus on the ground that the trial court's failure to order an examination, including an assessment as to the petitioner's competency at the time of the murder, greatly hindered his defense, in violation of due process.

See also Cowley v. Stricklin, 929 F.2d 640 (11th Cir. 1991), wherein the United States Court of Appeals for the 11th Circuit reversed the United States District Court for the Northern District of Alabama's denial of a petition for a writ of habeas corpus on the ground that the state's failure to provide defendant with expert psychiatric assistance for his defense violated due process.

(3) eliciting damaging testimony from experts because trial counsel did not know or have the ability to learn to differences between "anxiety neurosis" and paranoid schizophrenia". In Loyd v. Whitley, 977 F.2d 149 (5th Cir. 1992) the court granted relief because of the trial counsel's mistaken belief that funds were not available to obtain an independent psychiatric evaluation and because the trial counsel was ineffective during the penalty phase of the trial, since a postconviction evaluation yielded substantial information disputing the conclusions of the state's trial experts that the defendant was competent, sane and suffered only from antisocial personality disorder. It should be noted that the information which the trial counsel did not seek help in eliciting would normally have been discovered in the preparation of a social history of the defendant. In Kenley v. Armontrout, 937 F.2d 1298 (8th Cir. 1991) the court granted relief because the trial counsel in the case failed to obtain medical, psychiatric and military records containing mitigating evidence. The court also found that the trial counsel was ineffective for unreasonably concluding that the state's psychiatrist's diagnosis of an antisocial personality meant that no mitigation with regard to the defendant's mental state existed. The trial counsel did not understand or comprehend that the state's report was incomplete, inconclusive and did not rule out the possibility that the defendant suffered from mental impairments that were mitigating. Likewise, in Cunningham v. Zant, 928 F.2d 1006 (11th Cir. 1991) the court found trial counsel ineffective for failing to present mitigating evidence regarding the defendant's mental retardation, minimal schooling, severe head injury, and poverty-stricken background.

9

13.

The services of this defense expert will only be necessary if the psychological testing and evaluation reveals the existence of any type or degree of organic brain damage or severe mental impairment that will render the diagnosis and opinion out of the realm of the psychologist's expertise. It is anticipated that this expert will require the expenditure of no more than three thousand ($3,000) dollars.

14.

Defendant will make a proffer of the name, background and expertise of said experts, together with the anticipated expense of hiring same, in an *ex parte* presentation to the Court. If Defendant were to be forced to disclose the name of his proposed expert and the expected services of said expert, then he will be forced to reveal his attorney's work product in violation of the safeguards of O.C.G.A. §§ 24-9-21 and 24-9-24, *et seq.*

WHEREFORE, Defendant respectfully requests:

(a)     That he be granted an *ex parte* hearing on his proffer of need;

(b)     That he be granted sufficient funds to retain the services of an expert psychologist and psychiatrist; and

(c)     That he be granted such other relief as is proper in this matter.

Respectfully submitted this __7__ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

10

000119

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

(703)

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

11

# CERTIFICATE OF SERVICE

Comes now the undersigned counsel for Defendant and hereby certifies that a copy of

the *Ex Parte* Motion and Proffer in Support of Defendant's Motion for Funds to Retain the

Services of A Board Certified Psychologist and Psychiatrist has **NOT** been served upon the

District Attorney in this case, because it is an *ex parte* pleading.

Respectfully submitted this 24 day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

703

12

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

# IN THE SUPERIOR COURT OF COBB COUNTY,

## STATE OF GEORGIA

STATE OF GEORGIA,

v.

Case No. 04-9-673-05

STACEY HUMPHREYS,
 Defendant.

*EX PARTE*
PLEADING NUMBER 3

## PROFFER TO OBTAIN FUNDS FOR EXPERT ON JURY COMPOSITION FOR DEFENDANT'S JURY CHALLENGE

Comes now Defendant, by and through council, and moves this Court to approve funds with which he can retain the services of a jury composition expert. This motion and request is made pursuant to the provisions of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States and pursuant to the provisions of Article 1, § 1, ¶¶ I, II, VII, XI, XII, XIV, XXIV, and XXVIII of the Constitution of the State of Georgia. In support of this request Defendant would show as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that d eath i s t he a ppropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981,

1

100 L.Ed.2d. 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2

IL 2004-0114420-CR
Page 3

2.

A jury composition expert could provide this Court with an in-depth analysis of the jury list composition in light of 1990 census figures.

3.

O.C.G.A. § 15-12-40, the Sixth Amendment to the Constitution of the United States, and Article I, § I, ¶ XI of the Constitution of the State of Georgia require that the jury lists be composed of a fairly representative cross section of the community.

4.

In <u>Taylor v. Louisiana</u>, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the United States Supreme Court stated that the list of trial jurors must represent a fair cross section of the community as required by the Sixth Amendment. Furthermore, it is no longer necessary to show an opportunity to discriminate in the selection process. <u>Taylor</u> merely requires the defense to show a systematic exclusion of a cognizable class regardless of how the exclusion occurred.

5.

In <u>Walraven v. State</u>, 250 Ga. 401, 406, 297 S.E.2d 278 (1982), the Georgia supreme Court recognized that "the fair-cross-section requirement involves a comparison of the makeup of jury venires ... with the makeup of the <u>community</u>, not of the voter registration lists."

6.

In light of the availability of current population figures and breakdowns for this

3

000124

county, it is imperative and constitutionally required that the jury lists be compared to the makeup of the community as reflected in the census figures for 1990.

7.

Defendant will make a proffer of the name, background and expertise of said expert, together with the anticipated expense of hiring same, in an *ex parte* presentation to the Court. If Defendant were to be forced to disclose the name of his proposed expert and the expected services of said expert, then he will be forced to reveal his attorney's work product in violation of the safeguards of O.C.G.A. §§ 24-9-21 and 24-9-24, *et seq.*

WHEREFORE, Defendant respectfully requests:

(a)   That he be granted an *ex parte* hearing on his proffer of need;

(b)   That he be granted sufficient funds to retain the services of a jury composition expert; and

(c)   That he be granted such other relief as is proper in this matter.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

704

4

2004-0114420-CR
Page 5

## CERTIFICATE OF SERVICE

Comes now the undersigned counsel for Defendant and hereby certifies that a copy of

the *Ex Parte* Proffer to Obtain Funds for Expert on Jury Composition For Defendant's Jury

Challenge has **NOT** been served upon the District Attorney in this case, because it is an *ex*

*parte* pleading.

Respectfully submitted this ___ day of September, 2004.


236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500


Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

704

5

Filed In Office Sep-28-2004 14:27:03
ID# 2004-0114421-CR
Page 1

IN THE SUPERIOR COURT OF COBB COUNTY

Jay C. Stephenson

STATE OF GEORGIA    Clerk of Superior Court Cobb County

STATE OF GEORGIA,                            *
                                             *
v.                                           *        Case No. 04-9-673-05
                                             *
STACEY HUMPHREYS,                            *
    Defendant.                               *

*EX PARTE*
PLEADING NUMBER 4

## MOTION AND PROFFER IN SUPPORT OF DEFENDANT'S MOTION FOR FUNDS TO RETAIN THE SERVICES OF A JURY SELECTION EXPERT

Comes now Defendant, by and through council, and moves this Court to approve funds with which he can retain the services of an expert in the field of jury selection. This motion and request is made pursuant to the provisions of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States and pursuant to the provisions of Article 1, § 1, ¶¶ I, II, VII, XI, XII, XIV, XXIV, and XXVIII of the Constitution of the State of Georgia. In support of this request Defendant would show as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate

1

IL.. 2004-0114421-CR
Page 2

punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981,

100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197,

51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428

U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when

a defendant's life is at stake, a court must be "particularly sensitive to insure that every

safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859

(1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly

different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct.

2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded

that factfinding procedures aspire to a heightened standard of reliability. This especial

concern is a natural consequence of the knowledge that execution is the most irremediable

and unfathomable of penalties; that death is different." (citations omitted)); California v.

Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the

qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S.

104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is

. . . profoundly different from all other penalties"). For this reason, our system of justice

must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is

afforded process that will guarantee, as much as is humanly possible, that the sentence was

not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at

118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be

taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct.

2382, 65 L.Ed.2d 392 (1980).

2

2.

If Defendant should be convicted of murder in this matter as indicted, the State has announced its intention to seek the death penalty. The jury will determine at the penalty phase of this trial whether he should be sentenced to death, to life imprisonment without parole, or to life imprisonment.

3.

The selection of a jury of Defendant's "peers" will be, at best, a tedious exercise in avoiding the racial insensitivities of the prospective jurors. The fact that this case will involve allegations that Defendant beat the victim to death with a hammer will tremendously exacerbate the already underlying political atmosphere brought about by polictical advertisements about crime and punishment, and the candidate for Governors attitudes on crime and punishment and the media's attention to this matter.

4.

The prospective jurors in this case must be placed under the most sensitive of evaluations so that no prospective juror is seated without first being questioned and tested for any racial because of media attention.

5.

In order to properly conduct voir dire under the circumstances of this case it will be necessary for Defendant's counsel to have the assistance of an expert in the evaluation and selection of prospective jurors in this case. The proper evaluation of jurors under the peculiar circumstances of this case is beyond the abilities of trial counsel. The ability to

3

analyze, evaluate and qualify prospective jurors is within the realm of the expertise of certain individuals who have the academic and experiential backgrounds in evaluating prospective jurors.

6.

A jury selection expert would assist Defendant and his trial counsel in the area of consulting, researching and testing certain jury related issues during the pretrial stages of this case. This expert would conduct an analysis of the Grand Jury list which indicted Defendant and that analysis would be based on, but not limited to, the address, age, race and sex of the grand jury list members. The expert will also conduct an analysis of the traverse jury list for those jurors who will be summoned for Defendant's trial and for twelve months prior to that term.

7.

The Sixth Amendment to the Constitution of the United States and Article I, § I, ¶ XI of the Constitution of the State of Georgia require that Defendant receive a trial by an impartial jury.  An accused in a death penalty case is already denied a jury of his peers selected from a cross-section of the community because existing law requires every member of the jury to be able to reach a verdict in such a way that the death penalty will be imposed in an appropriate case. Therefore, an accused is denied access to those numerous citizens of the community who would not reach a verdict that would result in the death penalty.  In a case in which the ultimate sanction of death can be imposed, a person who is innocent until proven guilty is entitled to the assistance requested in this motion for the critical process of selection of those persons who will decide all issues in this case.  Due process, equal

4

protection of the laws, effective assistance of counsel, and the inviolate right to trial by jury cannot allow anything less.

### 8.

The State in this case has a significant advantage over the accused with respect to resources and manpower available to it at its discretion. The District Attorney's Office has access to all criminal history information concerning prospective jurors, has access to other sources of information unavailable to the accused, has the ability and funds to deploy more manpower in investigation and preparation than the accused, and has absolute discretion to hire any expert it wishes, in addition to those already automatically available to it, *without any court supervision over selection and payment whatsoever.*

### 9.

Because of the unique nature of a capital murder case, the law has recognized a number of protections and procedures that are not applicable to other criminal cases. Trial and appellate judges recognize that "jury selection plays a vastly greater role than merely assuring defendants' rights." United States v. Trice, 864 F.2d 1421, 1427 (8th Cir. 1988). *Voir dire* is not a perfunctory process. It plays an integral part in Anglo-Saxon jurisprudence:

> [J]ury selection is [not] a preliminary and essentially ministerial act. At the least it is an essential instrument to the delivery of a defendant's constitutionally secure right to a jury trial rooted in the commands of due process, if not the trial guarantees of the sixth amendment and section 2 of article III

5

themselves.

U.S. v. Ford, 824 F.2d 1430 (5th Cir. 1987).

10.

The jury selection expert would assist Defendant and his trial counsel in the area of consulting and researching certain jury selection issues during the jury selection process.

11.

The jury selection expert would assist Defendant and his trial counsel in reviewing the evidence and facts in this case and then assist trial counsel in the development of a jury profile to be used during the jury selection phase of the case.

12.

Defendant will make a proffer of the name, background and expertise of said expert, together with the anticipated expense of hiring same, in an *ex parte* presentation to the Court. If Defendant were to be forced to disclose the name of his proposed expert and the expected services of said expert, then he will be forced to reveal his attorney's work product in violation of the safeguards of O.C.G.A. §§ 24-9-21 and 24-9-24, *et seq.*

WHEREFORE, Defendant respectfully requests:

(a)    That he be granted an *ex parte* hearing on his proffer of need;

(b)    That he be granted sufficient funds to retain the services of a jury selection expert; and

(c)    That he be granted such other relief as is proper in this matter.

Signatures on following page

6

ID. 2004-0114421-CR
Page 7

Respectfully submitted this ___1___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

705

7

IL 2004-0114421-CR
Page 8

## CERTIFICATE OF SERVICE

Comes now the undersigned counsel for Defendant and hereby certifies that a copy of

the *Ex Parte* Motion and Proffer in Support of Defendant's Motion for Funds To Retain the

Services of a Jury Selection Expert has **NOT** been served upon the District Attorney in this

case, because it is an *ex parte* pleading.

Respectfully submitted this ___ day of September, 2004.


236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500


Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

705

8

In Office Sep-28-2004 16:14:58
ID# 2004-0114590-CR
Page 1

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

Jay C. Stephenson
Clerk of Superior Court Cobb County

STATE OF GEORGIA,

    v.

STACEY HUMPHREYS,
    Defendant.

Case No. 04-9-673-05

## DEFENDANT'S SPECIAL DEMURRER TO ALL COUNTS OF THE INDICTMENT

COMES NOW Defendant in the above styled matter and files this, his Special Demurrer to the Indictment and in support of said motion shows this Honorable Court the following:

### ARGUMENT & CITATION OF AUTHORITY

On February 12, 2004, Defendant was Indicted in a Eleven Count Indictment.

Count 1 of the indictment states:

. . . in the name and behalf of the citizens of Georgia, charge and accuse STACEY IAN HUMPHREYS with the offense of MURDER for that the accused in the County of Cobb and State of Georgia, on the 3rd day of November, 2003 did unlawfully and with malice aforethought, cause the death of Cynthia Williams a human being, by shooting her with a pistol; contrary to the laws of said State, the good order, peace and dignity thereof.

Count 2 of the indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Goergia, further charge and accuse STACEY IAN HUMPHREYS with the offense of MURDER for that the said accused, in the County of Cobb and State of Georgia on the 3rd day of November, 2003, did unlawfully and with malice aforethought, cause the death of Lori Brown a human being, by shooting her with a pistol; contrary to laws of said State, the good order, peace and dignity thereof.

Count 3 of the indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of FELONY MURDER for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Cynthia Williams a human being, by shooting her with a pistol; contrary to the laws of said State, the good order, peace and dignity thereof.

Count 4 of the indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of FELONY MURDER for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did while in the commission of a felony, to wit: aggravated assault, did unlawfully cause the death of Lori Brown a human being, by shooting her with a pistol; contrary to the laws of said state, the good order, peace and dignity thereof.

Count 5 of the indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of AGGRAVATED ASSAULT for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully make an assault upon the person of Cynthia Williams, with a pistol, a deadly weapon by shooting her; contrary to the laws of said state, the good order, peace and dignity thereof.

Count 6 of the indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of AGGRAVATED ASSAULT for that the said accused, in the County Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully make an assault upon the person of Lori Brown, with a pistol, a deadly weapon by shooting her; contrary to the laws of said State, the good order, peace and dignity.

Count Seven of the indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of KIDNAPPING WITH BODILY INJURY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, did unlawfully abduct and steal away Cynthia Williams, a person, without lawful authority and hold said person against her will and cause said person to receive bodily injury, to wit: a gunshot wound; contrary to the laws of the said State, the good order, peace and dignity thereof.

Count Eight of the Indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of KIDNAPPING WITH BODILY INJURY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, Cynthia Williams, by use of an offensive weapon, to wit: a pistol; contrary to the laws of the said State, the good order, peace and dignity.

Count Nine of the Indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse CHRIDTOPHER EUGENE BROWN with the offense of ARMED ROBBERY for that said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, to wit: a Bank of America Bank Card from the person and immediate presence of Cynthia Williams, by use of an offensive weapon, to wit: a pistol; contrary to the laws of the State, the good order, peace and dignity thereof.

Count Ten of the Indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of ARMED ROBBERY, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, with intent to commit theft, did take property of another, to wit: a Wachovia Bank Card from the person and immediate presence of Lori Brown, by use of an offensive weapon, to wit: a pistol; contrary to the laws of said State, the good order, peace and dignity thereof.

Count Eleven of the Indictment states:

And, the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse STACEY IAN HUMPHREYS with the offense of POSSESSION OF A FIREARM BY A CONVICTED FELON, for that the said accused, in the County of Cobb and State of Georgia, on the 3rd day of November, 2003, having been convicted on the 11th day of October, 1993, by a court of competent jurisdiction to wit: Superior Court of Cobb County Case # 93-3083, of the offense of Burglary, a felony, under the laws of this State, did possess and transport a firearm to wit: a Rugar 9mm handgun; contrary to the laws of said State, the good order, peace dignity thereof.

On February 12, 2004, the Cobb County District Attorney gave his Notice of the State's intention to seek the death penalty based on O.C.G.A. § 17-10-30(b) (2), (4) & (7). However, the indictment does not set out the fact that the State is seeking the death penalty, nor does it include the statutory aggravating circumstances the State contends warrants the enhanced supreme punishment of death, as opposed to the lesser sentence of life in imprisonment.

Defendant contends, in light of the recent Supreme Court decision in *Blakely v. Washington*, 2004 WL 1402697 (June 24, 2004), that the current Indictment violates his constitutional right to have an indictment which contains any fact that might increase the penalty beyond the prescribed statutory maximum of life, for the offenses with which she is charged.

Justice Scalia establishes in *Blakely* what is meant by the term "statutory maximum sentence". It is the maximum sentence a judge may impose based solely on the facts reflected in the indictment upon which a jury has returned a verdict; or which has been admitted to by the defendant. See also *Ring v. Arizona*, 536 U.S. 584, at 602 (2002). It is not the maximum sentence that can be imposed for a violation of the particular code section.

In *Blakely* the state argued that the enhancement of defendant's sentence from 53 months, a number calculated pursuant to the Washington State sentencing guidelines, to 90 months by the judge at sentencing was proper, because the 90 month sentence was within the 120 month maximum sentence allowed by law. The Supreme Court found however, that the "statutory maximum" was not the maximum sentence allowed by law, but was instead the 53 months calculated under the sentencing guidelines. The 53 month calculation was based exclusively upon the allegations in the indictment to which the defendant plead guilty and the judge's enhancement of that sentence was based upon aggravating factors not included in the indictment.

The Supreme Court based the *Blakely* opinion upon two long-standing tenets of common law: "that the truth of every [indictment] against the Defendant should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors," 4 w. Blackstone commentaries on the laws of England, 343 (1769), and that "an [indictment] which lacks any particular fact, which the law makes essential to the punishment is no [indictment] within the requirements of the common law, and it is no [indictment] in reason." 1 J. Bishop Criminal Procedure, paragraph 87, page 55 (2d Ed. 1872). Justice Scalia emphasized these principals in at footnote 5 of the opinion stating that the entire chapter of Bishop's treatise is devoted to the point that "every fact that is legally essential to the punishment **must** be charged in the indictment and proved to a jury." 1 J. Bishop, Criminal Procedure, Ch. 6, pp. 50 – 56 (2d Ed. 1782).

The Courts opinion in *Blakely* follows the rule expressed by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "other than the fact of a prior conviction, any fact that increased the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury in the indictment and proved beyond a reasonable doubt."

The *Blakely* opinion therefore, overrules the Georgia Supreme Court's holding in *Terrell v. State*. In *Terrell vs. State* 276 Ga. 34, 572 S.E. 2d 595 (2002), where the Court concluded that the State's failure to list the statutory aggravating factors for a death sentence in an indictment did not violate due process, where the State afforded defendant notice of the statutory aggravating factors through their notice of intent to seek the death penalty. See O.C.G.A. §17-10-30.

The *Terrell* Court based its decision upon its interpretation of the opinions in *Apprendi* and *Ring* which were summed up by the Court with the following language: "if a state makes an increase in a defendant's authorized punishment, contingent on the findings of a fact, that fact,

no matter how the State labels it, must be found by a jury beyond a reasonable doubt." *See Ring*.

The holding in *Blakely* makes the decision in *Terrell* incomplete, because in addition to the

requirement that facts increasing a defendant's authorized punishment must be found by a jury

beyond a reasonable doubt, those facts must be also be alleged in the indictment if they are to be

relied upon to enhance a defendant's sentence.

In the instant indictment, the State has not alleged facts, i.e., the statutory aggravating

circumstances they contend exists, warranting the imposition of the death penalty and further

waited almost three full years before filing notice. Therefore the State has failed to properly

allege facts, which might increase the penalty beyond the prescribed statutory maximum

sentence of life imprisonment based upon the facts alleged in the indictment.

Wherefore, this indictment is insufficient to allow the State to proceed in a death penalty

prosecution and must be dismissed; or the State's notice to seek the death penalty should be

dismissed and this matter should be pursued without the use of the unified appeal procedure.

This ___7___ day of __September__, 2004.


236 Washington Avenue                         Jimmy D. Berry
Marietta, GA 30060                            Attorney for Defendant
770-422-5434                                  GA Bar No. 055500


Multi-County Public Defender's Office         Christopher W. Adams
104 Marietta Street, Suite 200                Attorney for Defendant
Atlanta, GA 30303                             GA Bar No. 002725
404-824-0615

# CERTIFICATE OF SERVICE

This is to certify that, as of this date, I have served the proper prosecuting officer in the foregoing matter with a copy of the foregoing by one of the following ways:

_____ (a)   Depositing in the United States Mail, with adequate postage affixed thereon; or

_____ (b)   Personally placing a copy of same in his hands, or his authorized agent for this purpose.

Cobb County District Attorney's Office
10 East Park Square
Marietta, Georgia 30060

Respectfully submitted on September 28, 2004.

Respectfully submitted,

JIMMY D. BERRY
State Bar No. 055500
Attorney for Defendant

236 Washington Avenue
Marietta, Georgia 30060
(770) 422-5434

In Office Sep-28-2004 16:14:58
2004-0114591-CR
Page 1

# IN THE SUPERIOR COURT OF COBB COUNTY

Jay C. Stephenson
Clerk of Superior Court Cobb County

## STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## MOTION FOR COMPLETE RECORDATION
## AND TRANSCRIPT OF ALL PROCEEDINGS

### (Motion No. __1__ )

COMES NOW Defendant, by and through his attorneys, and respectfully moves this Court for an order directing the Court Reporter to record all proceedings in this case, including all hearings on motions, voir dire, opening statements, closing arguments, and all conferences between counsel for the State and counsel for Defendant, including side-bar and/or bench conferences held out of the presence of the jury during the course of this trial. This motion is made pursuant to the rights and guarantees set forth in the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States, to the provisions of Article I, § I, ¶¶ I, II, VII, XI, XII, XIII, XIV, XXV and XXVIII of the Constitution of the State of Georgia, and to Rules II(A)(3) and IV(A)(4) of, and the Note to, the Unified Appeal Outline of Proceedings. In support of this motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting

Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J.,

concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d

944 (1976))). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings

generally, this Court has demanded that factfinding procedures aspire to a heightened standard of

reliability. This especial concern is a natural consequence of the knowledge that execution is the

most irremediable and unfathomable of penalties; that death is different." (citations omitted));

California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)

(recognizing "the qualitative difference of death from all other punishments"); Eddings v.

Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by

public authority is . . . profoundly different from all other penalties"). For this reason, our

system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be

executed is afforded process that will guarantee, as much as is humanly possible, that the

sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma,

455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures"

must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct.

2382, 65 L.Ed.2d 392 (1980).

2.

The Unified Appeal provides that "[a]ll proceedings in the Superior Court shall be

recorded and transcribed." Unified Appeal, Note (emphasis in original). An extensive list of the

various proceedings which must be transcribed is included in Rule IV(A)(4) of the Unified

Appeal. Finally, Rule II(A)(3) of the Unified Appeal provides that "[t]he [court] reporter shall

be reminded that the trial shall be completely transcribed as set forth in Rule IV(A)."

2.

WHEREFORE, Defendant requests an order directing that all proceedings related to this case be transcribed.

Respectfully submitted this __1__ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(105)

ID# 2004-01145591-CR
Page 3

2004-0114592-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| | * | Case No. 04-9-673-05 |
| v. | * | |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## NOTICE OF ASSERTION OF RIGHT TO BE PRESENT

### (Motion No. 2)

COMES NOW Defendant, by and through his attorneys, and gives notice to this Court of his request that he be present at each and every stage of the proceedings in this case. Defendant's right to be present is guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, by Article I, § I, ¶¶ I, II, IV, V, XI, XII, XIII, XIV, XVI, XVII & XXVIII of the Constitution of the State of Georgia, and by other applicable law. In support of his motion, Defendant states as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that fact finding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is ... profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

Georgia law provides explicitly that in capital cases "[t]he defendant shall be present during **all** proceedings in the superior courts." Uniform Appeal, Note  (emphasis in original). In Pierce v. State, 47 Ga. App. 830, 171 S.E. 731 (1933), the Georgia Court of Appeals held:

> We think that the right to be present at all stages of the trial ranks
> among the defendant's most substantial rights.  It ranks next in
> importance to, if not on a par with, his right to be presumed to be
> innocent until proved guilty .... "The presence of counsel was no
> substitute for that of the man on trial.  Both should have been
> present."

47 Ga. App. at 831 (quoting Wilson v. State, 87 Ga. 583, 584, 13 S.E. 566 (1891)). The right of a defendant in a criminal case to be present at all proceedings is a right which has long been

recognized by the courts in this state. In Plain v. State, 60 Ga. 284, 288 (1878), the Georgia Supreme Court stated:

> For fear of misapprehension, we will add, that it is not a safe
> practice to take action in a criminal case without the accused and
> his counsel are both present. Even when a benefit is intended, the
> effect may not be altogether beneficent; and no other eyes are so
> keen in discerning possible detriment, as those of the man who is
> to undergo punishment and the counsel who bears upon his
> conscience the weight of this client's case.

3.

The right to be present is implicit -- and has long been recognized -- in the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States. With respect to the right to counsel, the United States Supreme Court has noted that the constitutional provision grants the right to the assistance of counsel. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); U.S. CONST. amend. VI. "The counsel provision ... speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment shall be an aid to a willing defendant ...." Faretta v. California, 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1974) (emphasis added);[1] see also Burney v. State, 244 Ga. 33, 36, 257 S.E.2d 543 (1979) (defendant's right under Art. I, § I, ¶ IX of the Constitution of the State of Georgia to actively participate in the trial); Trunell v. State, 487 So.2d 820 (Miss. 1986).

---

[1] The Faretta Court spoke plainly to the defendant's role in a criminal trial:
The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor."
422 U.S. at 819 (citations omitted).

4.

Under the United States Constitution, the rights to consult with counsel and to the assistance of counsel attach as soon as "the process shifts from investigatory to accusatory...." Escobedo v. Illinois, 378 U.S. 478, 492, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). For decades, the Supreme Court has recognized that this right is applicable "'during perhaps the most critical period of the proceedings ... that is to say, from the time of ... arraignment until the beginning of ... trial ....'" Massiah v. United States, 377 U.S. 201, 205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (quoting Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). The accused is "as much entitled to [this right] during that period as at the trial itself." Id.

5.

In addition to underscoring the advisory role of counsel, the courts have stressed the importance of the defendant's taking an active role in his defense. Over a century ago, the Supreme Court acknowledged that "[t]he necessities of the defense may not be met by the presence of his counsel only." Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262 (1884). By 1912, the Court already had held that the defendant **"is entitle[d] ... to be present at all ... stages of the proceedings."** Diaz v. United States, 223 U.S. 442, 454, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (emphasis added); accord Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1933) ("in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present **in his own person**" (emphasis added)); Faretta v. California, 422 U.S. at 819-20 ("The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails").

6.

The Snyder Court provided the basic rationale which underlies the accused's right to be present: Only then "will [it] be in his power ... to give advice or suggestion ...." 291 U.S. at 106; accord Faretta v. California, 422 U.S. at 816.

7.

The right to consult and work with the attorney finds its roots in the Sixth Amendment right to counsel. However the right to be present also derives from the explicit constitutional right to personally confront witnesses. Faretta v. California, 422 U.S. at 816. Furthermore, "although many of the modern cases involving the constitutional right to presence are rooted in the Confrontation Clause of the Sixth Amendment, the right is also 'protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.'" United States v. Gordon, 829 F.2d 119, 123 (D.C. Cir. 1987) (quoting United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985)).

8.

There is some authority that a defendant may waive his presence for certain matters -- after a complete judicial elaboration of the right that is to be knowingly, intelligently and voluntarily waived. See United States v. Benavides, 596 F.2d 137, 139 (5th Cir. 1979) (court has "narrow discretion" in accepting knowing, intelligent and voluntary waiver in noncapital case); United States v. Crutcher, 405 F.2d 239 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); Bustamante v. Eyman, 456 F.2d 269, 274 (1974), appeal after remand, 497 F.2d 556 (9th Cir. 1974); Cross v. United States, 325 F.2d 629, 633 (D.C. Cir. 1963); Evans v. United States, 284 F.2d 393, 395 (6th Cir. 1960). Cf. United States v. Meinster, 481 F.Supp. 1112, 1116 (S.D. Fla. 1979) ("Normally a judge can and should compel a defendant to be present at all stages of a felony trial"); United States v. Gordon, 829 F.2d 119, 125 (D.C. Cir.1987).[2]

---

[2] As discussed in Gordon, "[t]he distinction between custodial and non-custodial defendants is an important one. There is ... some authority ... for the proposition that a defendant in custody does not have the power to waive his right to be present 'because his presence or absence is not within his own control.'" Id. at 125 n.7 (quoting Diaz v. United States, 223 U.S. at 455).

ID# 2004-0114592-CR
Page 6

9.

However, in any criminal case "'courts indulge every reasonable presumption against waiver,'" United States v. Gordon, 829 F.2d at 125 (quoting Cross v. United States, 325 F.2d at 631 (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938))), and any effective waiver cannot be made by counsel, but must be made after "an on-the-record hearing to advise [the accused] of his right to be present [and after having] ... obtained a **personal waiver in open court.**" Id. (emphasis added).

10.

Furthermore, this is a capital case and, in contrast to the noncapital cases cited above, under the authority of "Diaz and Hopt ... a capital defendant's right to presence is nonwaivable." Proffitt v. Wainwright, 685 F.2d 1227, 1258 (11th Cir. 1982), modified on rehearing, 706 F.2d 311 (11th Cir. 1983); accord Hall v. Wainwright, 733 F.2d 766, 775 (11th Cir. 1984).

11.

To deny the defendant the right to be present at every stage of the proceedings and to personally see and know what is being done in the case would violate Article I, § I, ¶ XII of the Constitution of the State of Georgia. The Georgia Supreme Court has held that

> [t]he accused and his counsel have the right to be present at every
> stage of the proceedings and personally see and know what is
> being done in the case. To say that no injury results when it
> appears that what occurred in their absence was regular and legal
> would, in effect, practically do away with this great and important
> right, one element of which is to see to it that what does take place
> is in accord with law and good practice.

Perry v. State, 216 Ga. App. 749, 750, 456 S.E.2d 89 (1995) (quoting Wilson v. State, 212 Ga. 73, 74-75, 90 S.E.2d 557 (1955)).

12.

Of course, the question of whether a defendant <u>may</u> waive his right to be present is not at issue in this case, since Defendant vehemently <u>asserts</u> his right to be present at <u>all</u> stages.

WHEREFORE Defendant respectfully requests that this Court enter an order:

(1)    setting this motion for an evidentiary hearing where Defendant can produce evidence in support of his motion;

(2)    granting him his right to be present at all proceedings in this case; and

(3)    granting such other relief as this Court shall see fit.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(106)

Filed In Office Sep-28-2004 16:37:13
ID# 2004-0114646-CR
Page 1

IN THE SUPERIOR COURT OF COBB COUNTY

*Jay C. Stephenson*

STATE OF GEORGIA

Jay C. Stephenson
Clerk of Superior Court Cobb County

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## MOTION FOR AN ORDER REQUIRING THE DISTRICT ATTORNEY TO RESPOND IN WRITING TO EACH MOTION WHICH IS CONTESTED BY THE STATE

### (Motion No. 3 )

COMES NOW Defendant, by and through his attorneys, and moves this Court for an order directing the District Attorney to respond in writing to each of Defendant's motions which is to be contested by the State. This motion is made pursuant to the provisions of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and to the provisions of Article I, § I, ¶¶ I, II, XI, XII, XIV, and XXVIII of the Constitution of the State of Georgia. In support of this Motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J. concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings

generally, this Court has demanded that factfinding procedures aspire to a heightened standard of

reliability. This especial concern is a natural consequence of the knowledge that execution is the

most irremediable and unfathomable of penalties; that death is different." (citations omitted));

California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)

(recognizing "the qualitative difference of death from all other punishments"); Eddings v.

Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by

public authority is ... profoundly different from all other penalties"). For this reason, our system

of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be

executed is afforded process that will guarantee, as much as is humanly possible, that the

sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma,

455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures"

must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct.

2382, 65 L.Ed.2d 392 (1980).

2.

A motion is a request of the Court for a specific form of relief. Virtually every

jurisdiction recognizes the use of the motion to address issues relevant to either the prosecution

or defense of a criminal case.

3.

The Uniform Rules for Superior Courts were formulated in accordance with the directive

of Article VI, § IX, ¶ I of the Constitution of the State of Georgia of 1983. Rule 31 of the

Uniform Rules for Superior Courts is entitled "Motions, Demurrers, Special Pleas, and Similar

Items in Criminal Matters." U.S.C.R. Rule 31.1 requires that a defendant in a criminal case file

2

I   2004-0114646-CR
Page 3

all motions at or before arraignment, unless the time for filing such motions is extended by the trial judge in writing.

4.

Rule 34 deals with the procedures by which death penalty cases are administered by the trial court. U.S.C.R. Rule 34(I)(A)(1) provides that one of the purposes of the Unified Appeal "Outline of Proceedings" is "before, during and after trial, . . . [i]nsuring that all legal issues which ought to be raised on behalf of the defendant have been considered by the defendant and his attorney and asserted in a timely and correct manner."

5.

Clearly the Uniform Rules for Superior Courts mandate that the responsibility for either raising issues or waiving issues is on the defendant. Primarily, those issues are raised by motions. It is patently unfair to require the defendant to either raise an issue in writing or waive it, and NOT to require a written response from the State whenever the State contests a particular issue.

6.

Rule 6 of the Uniform Superior Court Rules, "Motions in Civil Actions," provides that "every motion made prior to trial, **except those consented to by all parties**, when filed shall include or be accompanied by citations of supporting authorities." Rule 6.1 (emphasis added).

7.

Uniform Superior Court Rule 6.2 provides that,

"[u]nless otherwise ordered by the judge, **each party opposing a motion shall serve and file a response**, reply memorandum, affidavits, or other responsive material not later than 30 days after service of the motion.

(emphasis added).

8.

It would be unjust to rule that, in a civil case, if a party files a motion respecting the proverbial law school "widget," a response is required, but, in a death penalty case, if the defendant files a motion affecting a human being's life, no response is required.

9.

Defendant is filing numerous motions in this case. These motions will, in part, be determinative of whether he will live or die. Yet, the District Attorney may not even respond to Defendant's numerous written motions. Surely Justice requires more.

9.

A person on trial for his or her life is entitled, under the Eighth and Fourteenth Amendments, to fundamental fairness. Houston v. Estelle, 569 F.2d. 372 (5th Cir. 1978).

10.

A prosecutor has a duty to uphold the dignity of the court and respect its authority, as well as maintain public confidence in the judicial system and the legal profession. United States v. Alabama, 571 F.Supp. 958 (N.D. Ala. 1983); accord American Bar Association, Standards on the Prosecution Function §3-1.1(d); Adams v. State, 198 So. 2d 255 (Ala. 1967) (the primary duty of the office of the District Attorney is to see that justice is done).

11.

The role of the public prosecutor has long been recognized as a special one:

> The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during the trial, the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be

2004-0114646-CR
Page 5

fair to all; and (3) in our system of criminal justice the accused is

to be given the benefits of all reasonable doubts.

Georgia Code of Professional Responsibility, EC 7-13; see also American Bar Association,

Standards of Criminal Justice, 3-5.8(c) (prosecutor has responsibility to guard the rights of the

accused as well as those of society at large); O.C.G.A. § 15-18-2 (oath requiring district attorney

to discharge duties faithfully and impartially).

12.

The District Attorney and his assistants have an obligation to respond to each defense

motion if the State intends to oppose the relief requested therein. To simply sit back and wait

until the motions hearings and then orally respond fails to satisfy the obligations placed upon the

prosecutor to actively address Defendant's appeals for relief from violations of his constitutional

rights. If there are reasonable areas where the State has a legitimate interest in objecting to a

particular motion, then the prosecutor should set forth his opposition to those requests in such a

timely manner that Defendant may be prepared to respond to the State's argument and cited

authority. This presentation should be well in advance of the date for the hearing on any

particular motions which the state has a legitimate reason to oppose.

13.

Unless the State is required to respond in writing to the issues raised by Defendant

through his motions, Defendant's attorney will not know what the State's responses will be -- if

any, until the oral argument at the motions hearing. Surely the mandates set forth in the Sixth

and Eighth Amendments to the Constitution of the United States and the mandates enumerated in

Article I, § I, ¶ XIV of the Constitution of the State of Georgia require more.

14.

Requiring the disputed issues in this case to be reduced to writing would focus the

respective positions of the defense and the prosecution, thus enabling this Court to more easily

and accurately rule on those issues.

WHEREFORE, Defendant respectfully requests that this Court:

(1)     grant him an evidentiary hearing on this Motion so that he can present to this Court expert testimony on the issues raised herein;

(2)     issue an order directing the District Attorney to respond in writing, within a reasonable period of time, to all motions filed by Defendant which the State contests; and

(3)     grant to Defendant such other relief which is consistent with the requests set forth herein.

Respectfully submitted this ___7___ day of September, 2004.


236 Washington Avenue                        Jimmy D. Berry
Marietta, GA 30060                           Attorney for Defendant
770-422-5434                                 GA Bar No. 055500


Multi-County Public Defender's Office        Christopher W. Adams
104 Marietta Street, Suite 200               Attorney for Defendant
Atlanta, GA 30303                            GA Bar No. 002725
404-824-0615


(107)

Filed In Office Sep-28-2004 16:37:13
# 2004-0114647-CR
Page 1

Jay C. Stephenson

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| STATE OF GEORGIA, | * |
| | * |
| v. | *    Case No. 04-9-673-05 |
| | * |
| STACEY HUMPHREYS, | * |
| Defendant. | * |

### MOTION FOR THE COURT REPORTER'S TAPES AND NOTES TO BE MADE A PART OF THE RECORD OF THESE PROCEEDINGS

#### (Motion No. 4 )

Comes now Defendant, by and through council, and requests that this Court enter an order directing that all audio tapes or notes used, consulted, maintained or in any way connected with this case be preserved and made a part of the record. This request is made pursuant to the provisions of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to the provisions of Article I, § I, ¶¶ III, VII, XI, XII, XIV, and XXVIII of the Constitution of the State of Georgia, and to the provisions of the Unified Appeal Procedures and the Uniform Rules of Superior Courts. In support of this motion, Defendant would show as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d

000159

944 (1976))).  It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).  As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability.  This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties").  For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added).  These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

1.

The Unified Appeal Procedure provides in the note to that procedure that "[a]ll proceedings in the Superior Court shall be recorded and transcribed." (emphasis in original).

2.

It is common practice in this jurisdiction and in other jurisdictions in this State for the Court Reporter to make an audio tape recording in addition to the manual transcription of the testimony and arguments in criminal cases.

2004-0114647-CR
Page 3

3.

Since death by lethal injection is a potential sentence in this case, every precaution must be taken to insure that the recordation of the events which transpire during the course of all pretrial proceedings and during the course of the trial itself are as complete and as accurate as possible.

4.

The audio tape recordings that may be made during this trial are substantive evidence of the entire proceeding and, therefore, the tapes themselves must be included and made a part of the record of this case.

WHEREFORE, Defendant respectfully requests that this Court enter an order directing the Court Reporter to keep and maintain the original audio tapes and notes made or used in this case and to include those original tapes and notes as part of the record in this case.

Respectfully submitted this ____7____ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(108)

In Office Sep-28-2004 16:37:13
11 2004-0114648-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | **Case No. 04-9-673-05** |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

### MOTION FOR DISCLOSURE OF ANY
### POSSIBLE BASIS FOR RECUSAL OF JUDGE

### (Motion No. 5 )

Comes now Defendant, by and through his attorneys, and moves this Court to reveal on the record any possible basis for the recusal of the trial court in this case. This motion is made pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, to Article I, § I, ¶¶ I, II, IV, V, XI, XIII, XIV, XVI, XVII & XXVIII of the Constitution of the State of Georgia, and to all other applicable law. In support of his motion, Christopher shows as follows:

1.

The State, through the District Attorney, has announced that it intends to seek the death of Defendant and in that regard, the State has no other means of implementing that plan of death than through the office of this Honorable Court.

2.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting

Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J.,

concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d

944 (1976)). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings

generally, this Court has demanded that factfinding procedures aspire to a heightened standard of

reliability. This especial concern is a natural consequence of the knowledge that execution is the

most irremediable and unfathomable of penalties; that death is different." (citations omitted));

California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)

(recognizing "the qualitative difference of death from all other punishments"); Eddings v.

Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by

public authority is . . . profoundly different from all other penalties"). For this reason, our

system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be

executed is afforded process that will guarantee, as much as is humanly possible, that the

sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma,

455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures"

must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct.

2382, 65 L.Ed.2d 392 (1980).

### 3.

Defendant and his counsel hereby place the State and this Honorable Court on notice that

they have not waived, are not waiving, and will not waive, intentionally or unintentionally, any

recusal issue in this case.

### 4.

The Georgia Supreme Court made clear that there is a burden on the trial judge to reveal

any possible basis for recusal:

2

000163

> Ideally, the trial judge should have made a disclosure on the record
> .... The defendant might have decided to waive any right of
> recusal and this waiver could have been placed on the record.

Pope v. State, 256 Ga. 196, 214, 345 S.E.2d 831 (1986), later appeal, 257 Ga. 32, 354 S.E.2d 429
(1987).

5.

Most fundamental to assuring a fair trial is the assurance that those who preside over it —
the judges — are themselves above reproach. "Courts, like Caesar's wife, must be not only
virtuous but above suspicion." U'ren v. Bagley, 245 P.2d 1074, 1075 (Ore. 1926). The issue is
not whether the judge actually is biased, but rather whether there is any hint of putative bias:

> The question is not whether the judge is impartial in fact. It is
> simply whether another, not knowing whether or not the judge is
> actually impartial, might reasonably question his impartiality on
> the basis of all the circumstances.

Rice v. McKenzie, 581 F.2d 1114, 1116-17 (4th Cir. 1978). Accord Hall v. Small Business
Administration, 695 F.2d 175, 179 (5th Cir. 1983) (disqualification required "if a reasonable
person, knowing all the circumstances, would harbor doubts about his impartiality"); Withrow v.
Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ("The probability of actual bias
on the part of the judge . . . is too high to be constitutionally tolerable"); Berger v. United States,
255 U.S. 22, 33-34, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1921); Potashnick v. Port City
Construction Co., 609 F.2d 1101, 1111 (5th Cir. 1980) ("Any question of a judge's impartiality
threatens the purity of the judicial process and its institutions"); Health Services Acquisition
Corp. v. Liljeberg, 796 F.2d 796, 800 (5th Cir. 1986); Chitimacha Tribe v. Harry L. Laws Co.,
690 F.2d 1157, 1165 (5th Cir. 1982); King v. State, 246 Ga. 386, 389-90, 271 S.E.2d 630 (1980).

6.

The United States Constitution requires disqualification where there is any hint of
impropriety. The Supreme Court held in In Re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99

L.Ed. 942 (1955) that:

> [a] fair trial in a fair tribunal is a basic requirement of due process.
> Fairness of course requires an absence of actual bias in the trial of
> cases. But our system of law has always endeavored to prevent
> even the <u>probability of unfairness</u>. . . . Circumstances and
> relationships must be considered. This Court has said, however,
> that "Every procedure which would offer a possible temptation to
> the average man as a judge . . . not to hold the balance nice, clear,
> and true between the State and the accused denies the latter due
> process of law." . . . [T]o perform its high function in the best way
> "<u>justice must satisfy the appearance of justice</u>."

(emphasis added, citations omitted); <u>accord</u> <u>United States v. Columbia Broadcasting, Inc.</u>, 497
F.2d 107, 109 (5th Cir. 1974) ("The protection of the integrity and dignity of the judicial process
from any hint or appearance of bias is the palladium of our judicial system").

7.

It cannot be left up to the defendant to assure that the trial judge is impartial -- the duty
rests upon the trial judge to act on any hint of impropriety *sua sponte*. As the Georgia Supreme
Court has held, there rests with the trial judge a duty to make "a disclosure on the record" of any
basis for recusal. <u>Pope v. State</u>, 256 Ga. 196, 214, 345 S.E.2d 831, 847 (1986). There is
"place[d] on the judge a personal duty to disclose on the record any circumstances that may give
rise to a reasonable question about his impartiality." <u>United States v. Murphy</u>, 768 F.2d 1518,
1537 (7th Cir. 1985); <u>accord</u> <u>SCA Services Inc. v. Morgan</u>, 557 F.2d 110, 117 (7th Cir. 1977);
<u>United States v. Amerine</u>, 411 F.2d 1130, 1134 (6th Cir. 1969); Code of Judicial Conduct, Canon
3(C)(1) ("Judges should <u>disqualify themselves in proceedings</u> in which their impartiality might
reasonably be questioned . . . ." (emphasis added)).

2004-0114648-CR
Page 5

8.

"Although a judge may accept a waiver of disqualification . . . the 'waiver may be accepted [only if] it is preceded by a full disclosure on the record of the basis of the disqualification.'" Murphy, 768 F.2d at 1537 (alteration in original) (discussing waiver pursuant to a federal statute). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequence." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1980); accord Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (a proper waiver requires "a full understanding of what [the waiver] connotes and of its consequence"); McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); United States v. Tucker, 404 U.S. 443 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

WHEREFORE, Defendant requests that the trial court identify and evaluate all possible bases for its own recusal, and disclose such bases on the record so that Defendant may make a knowing and intelligent decision as to whether he wishes to seek recusal in this case.

Respectfully submitted this 7 day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(109)

Filed in office Sep-28-2004 16:55:17
№ 2004-01146696-CR
Page 1

*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

STATE OF GEORGIA,                    *
                                     *
v.                                   *          Case No. 04-9-673-05
                                     *
STACEY HUMPHREYS,                    *
        Defendant.                   *

### MOTION FOR DISCLOSURE OF ANY IMPROPER BIAS OR PREJUDICE, GROUNDS FOR ANY LEGAL CLAIM OR POSSIBLE BASIS FOR DISQUALIFICATION OF DISTRICT ATTORNEY, COURT PERSONNEL, OR OTHER STATE ACTORS INVOLVED IN ANY WAY IN THIS CASE

### (Motion No. _6_ )

COMES NOW Defendant, by and through his attorneys, and moves this Court for the disclosure of any grounds for any legal claim of any activity which may in any way affect this case or give rise to any legal claim of any improper bias or prejudice or possible basis for disqualification of the District Attorney, his office, court personnel, jury commissioners, law enforcement personnel, or other state actors involved in any way in this case, and of such other information as may be required by the facts and circumstances of this case. This motion is made pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, to Article I, § I, ¶¶ I, II, XII, XIV and XVII of the Constitution of the State of Georgia, and to all other applicable law. In support of this Motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting

Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

It is well settled that a judicial officer must recuse himself or herself whenever his impartiality might reasonably be questioned because "'justice must satisfy **the appearance of justice**.'" Parker v. Connors Steel Co., 855 F.2d 1510 (11th Cir. 1988) (emphasis added) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed 11 (1954).

3.

A prosecutor has a duty to uphold the dignity of the court and respect its authority, as well as to maintain public confidence in the judicial system and the legal profession. United States v. Alabama, 571 F.Supp 958 (N.D. Ala. 1983). Accord American Bar Association, Standards on the Prosecution Function §3-1.1(d); Adams v. State, 198 So. 2d 255 (Ala. 1967) (the primary duties of the office of the District Attorney are to see that justice is done).

4.

The role of the public prosecutor has long been recognized as a special one:

> The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during the trial, the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefits of all reasonable doubts.

Georgia Code of Professional Responsibility, EC 7-13. See also American Bar Association, Standards of Criminal Justice, 3-5.8(c) (prosecutor has responsibility to guard the rights of the accused as well as those of society at large); O.C.G.A. § 15-18-2 (oath requiring district attorney to discharge duties faithfully and impartially).

5.

Indeed, as the Supreme Court has held, the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States,

295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); See also Napue v. Illinois, 360 U.S. 264,
269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (prosecutor violates due process by failing to correct
witness' false testimony regarding his credibility); United States v. Agurs, 427 U.S. 97, 110-111,
96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (prosecutor's "overriding interest [is] that 'justice shall be
done'"); United States v. Beckett, 706 F.2d 519, 521-22 (5th Cir. 1983).

6.

The district attorney is a quasi-judicial officer. He represents the
State, and the State demands no victims. It seeks justice only, equal and
impartial justice, and it is as much the duty of the district attorney to see
that no innocent man suffers as it is to see that no guilty man escapes . . . .
Therefore he should not be involved or interested in any . . . matters which
might, consciously or unconsciously, impair or destroy his power to
conduct the accused's trial fairly and impartially.

Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373, 1376-77 (La.1980) (quoting
State v. Tate, 171 So. 108, 112 (La. 1936) (remedy of recusal developed to protect accused from
bias and partiality)). Accord In re J.S., 436 A.2d 772, 773 (1981) ("it is unconscionable for a
prosecutor representing the people . . . to undermine rights specifically guaranteed in the
Constitution he has taken an oath to uphold"); People v. Zimmer, 414 N.E.2d 705, 707 (N.Y.
1980) (prosecution must never lose sight of fact that defendant is integral member of body politic
and entitled to full measure of fairness); State v. Locklear, 241 S.E.2d 65, 69 (N.C. 1978)
(prosecuting attorneys owe honesty and fervor to state and fairness to defendant).

7.

Nor may the prosecutor's personal or political involvement in the case or any loyalty to
any member of the community have any part in determining whether this defendant should live
or die:

[T]he responsibility of the state's attorney, to carry out his function

to represent the sovereignty of the State . . . requires him to act

with impartiality and with the objective of doing justice without

regard to his personal feelings.  If he cannot so act, his

responsibility to his position and profession requires him to

disqualify himself.

In re J.S., 436 A.2d at 773 (public statements about case by prosecuting attorney required

disqualification); accord State v. Hohman, 420 A.2d 852 (Vt. 1980) (error for prosecutor to fail

to disqualify self and for court to deny defendant's motion for disqualification at retrial where

prosecutor promised conviction of defendant during reelection bid; incident referred to

disciplinary board); Woods v. Linahan, 648 F.2d 973, 977 (5th Cir. Unit B 1981).

8.

The decision to seek a death sentence must be based solely on the unique circumstances

of the offender and the crime.  See Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct.

2978, 49 L.Ed.2d 944 (1976).  It must be based solely upon a defendant's "personal

responsibility and moral guilt," Enmund v. Florida, 458 U.S. 782, 801, 102 S.Ct. 3368, 73

L.Ed.2d 1140 (1982), and not upon considerations that are "constitutionally impermissible or

totally irrelevant to the sentencing process." Zant v. Stephens, 462 U.S. 862, 885, 103 S.Ct.

2733, 77 L.Ed.2d 235 (1983).  Accord Sermons v. State, 262 Ga. 286, 289, 417 S.E.2d 144

(1992).  Such factors as race, Stephens, 462 U.S. at 885, and the worth of the victim or the grief

of the victim's family, Sermons, 262 Ga. at 289, are constitutionally impermissible factors for

deciding whether to seek the death penalty.  Yet these factors are inextricably bound up with the

symbolic and political importance of this case.

9.

Disqualification is required if there are facts which will deny this defendant "the

possibility of a fair-minded exercise of the prosecutor's discretion." Ganger v. Peyton, 379 F.2d

709, 712 (4th Cir. 1967).  See also People v. Zimmer, 414 N.E.2d 705 (N.Y. 1980) (standard for

disqualification whether reasonable potential for prejudice exists); State v. Snyder, 237 So.2d 392 (La. 1970) (where animosity toward defendant evinced, district attorney's ability to fairly and impartially conduct trial impaired; disqualification ordered); Pisa v. Commonwealth, 393 N.E.2d 386 (Mass. 1979) (on motion to disqualify attorney there is no weighing of probabilities that actual harm will result from participation; rules must be applied to prevent prejudice to party).

## 10.

Any doubt regarding whether disqualification is appropriate should be resolved in favor of disqualification to protect the integrity of the process, the proper administration of the laws, and public trust in the scrupulous administration of justice. Amemiya v. Sapienza, 629 P.2d 1126 (Haw. 1981). See also Spragins v. Huber Farm Service, Inc., 542 F.Supp. 166, 173 (N.D. Miss. 1982). Consequently "proof of actual wrongdoing is not required." Norton v. Tallahassee Memorial Hospital, 689 F.2d 938, 941 (11th Cir. 1982); accord Woods v. Covington City Bank, 537 F.2d 804, 813 (5th Cir. 1976) ("courts have disqualified attorneys under the appearance of evil doctrine even though the record was free of any evidence of actual wrongdoing"); Gas-A-Tron of Arizona v. Union Oil Co. of California, 534 F.2d 1322, 1324-25 (9th Cir. 1976); Richardson v. Hamilton International Corp., 469 F.2d 1382 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Of course, it is error for a court to fail to disqualify if the facts establish that standards of professional conduct have been violated. International Business Machine Corp. v. Levin, 579 F.2d 271, 279 (3d Cir. 1978).

## EXAMPLES OF CONDUCT WHICH REQUIRE DISQUALIFICATION

## 11.

In addition to the examples previously referred to, the following are but further samples of the various considerations that might enter into the disqualification of a prosecuting attorney, along with representative case law. Of course, this should not be considered all-inclusive, and if there are other reasons why the district attorney should be disqualified from this case, they should also be disclosed.

12.

First, it is clear that **no lawyer** may "engage in professional conduct involving dishonesty, fraud, deceit or willful misrepresentation." Georgia Bar Rules, DR 4-102(d), Standard 2 (setting forth grounds for disciplinary action).

13.

This consideration is particularly true of the District Attorney, since it is he who prosecutes criminals for violations of the law, and he should therefore take special care not to violate the law himself. Arant v. State, 167 So. 540 (Ala. 1936).

14.

Various acts of moral turpitude -- such as abuse of controlled substances or repeated sexual misconduct -- have been condemned by the courts. E.g., In re Board of Bar Commissioners of the Alabama State Bar, 302 So.2d 856 (Ala. 1974) (suspension for passing bad checks); Florida Bar v. Chase, 492 So.2d 1321 (Fla. 1986) (suspension for possession of cocaine); In re Howard, 681 P.2d 775 (Or. 1984) (disciplinary action for involvement in prostitution); In re Crisel, 461 N.E.2d 994 (Ill. 1984) (suspension for dishonesty outside official prosecutorial function); State v. Denton, 598 P.2d 663 (Okla. 1979) (suspension for possession of marijuana); Florida Bar v. Turner, 369 So.2d 581 (Fla. 1979) (suspension ordered even after reversal of conviction for sexual misconduct); In re Kamin, 262 N.W.2d 162 (Minn. 1978) (repeated sexual misconduct enough for disbarment); In re Mahr, 556 P.2d 1350 (Or. 1976) (suspension for shoplifting).

15.

Similarly, courts have recognized that pronounced unethical conduct on the part of a public prosecutor must result in his or her disqualification or removal from office even where the unethical acts are committed outside the public functions of the office. As one court has observed:

Here, also, . . . it seems manifest that wrongs that render a man unfit to hold the office of the district attorney need not be committed in the immediate performance of, but may arise in conduct wholly outside, his official duties. There may thus be revealed defects of character so heinous as to render one **utterly unfit to perform the delicate and important functions of a district attorney**.

Attorney General v. Tufts, 131 N.E. 573, 576 (Mass. 1921) (emphasis added); accord Brumfield v. Mississippi State bar Assoc., 497 So.2d 800, 807 (Miss. 1986) ("DR 102 . . . specifically proscribes **any** conduct involving dishonesty . . . or . . . any other conduct that adversely reflects on his fitness to practice law" (emphasis in original)); Hawaii Supreme Court v. Bergan, 592 P.2d 814, 818 (Haw. 1979); Moore v. Strickling, 33 S.E. 274, 278 (W.Va. 1899) (prosecuting attorney removed from office for persistent and flagrant immorality).

16.

A prosecuting attorney is disqualified from prosecuting a particular case where there are charges of illegal conduct arising in that case or one similar, or where the attorney has engaged in serious misconduct. See United States v. Dinitz, 538 F.2d 1214 (5th Cir. 1976) (court may properly refuse to permit participation at retrial of counsel who engaged in misconduct at first trial); Muscius v. Westinghouse Electric Corp., 621 F.2d 742 (5th Cir. 1980); Pisa v. Commonwealth, 393 N.E.2d 386 (Mass. 1979). See also State v. Homan, 420 A.2d 852 (Vt. 1980) (error for prosecutor to fail to disqualify self where he promised conviction of defendant during reelection bid); United States v. Omni International Corp., 634 F.Supp. 1414 (D.Md. 1986) (United States Attorney disqualified from further participation in prosecution of case based on unethical conduct).

17.

Various kinds of unethical behavior can act as a bar to a District Attorney prosecuting a case. Many examples are to be found in the Georgia Canons of Ethics. One specific example of

a possible basis for disqualification would be the District Attorney's intentional violation of the constitutional rights of an accused. "Affirmative misrepresentation of, and deliberate deception by, the prosecutor cannot be tolerated and must be dealt with severely." Leonard v. State, 551 So. 2d 1143, 1151 (Ala. Crim. App. 1989).

18.

If the District Attorney intentionally committed acts of racial discrimination, that would provide a reason for disqualification. This might arise from the prosecutor's intentional discrimination in other trials in removing black persons from jury service. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

19.

Another possible basis for disqualification of a District Attorney is if he or she exhibits discrimination in the selection of the defendants whose cases are prosecuted as death penalty rather than life imprisonment cases. Where the District Attorney chooses disproportionately to seek the execution of black persons, or of those who kill white persons, he or she exhibits discrimination in violation of the Eighth and Fourteenth Amendments to the Constitution. McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

20.

The prosecutor's racism can infect a multitude of aspects of the case, including the various discretionary decisions inherent in every stage of a capital prosecution. Neither may a District Attorney prosecute a case where he or she is so biased against the accused that the accused is denied ". . . the possibility of a fair-minded exercise of the prosecutor's discretion." Ganger v. Peyton, 379 F.2d 709, 712 (4th Cir. 1967). Where the prosecutor is less concerned with justice and the fair administration of a trial than he is with his professional reputation, his need for a boost in any forthcoming election, e.g., Delaney v. United States, 199 F.2d 107, 115 (1st Cir. 1952) (condemning trial which had been infected by prosecutor's electoral concerns), or the accusations of unethical and illegal conduct surrounding him, the prosecutor must disqualify himself.

21.

A District Attorney is disqualified where he, or past, present, or future members of his office, have unduly close ties to the judge.  See Pope v. State, 256 Ga. 195, 345 S.E.2d 831 (1986) (where trial judge's law clerk had accepted employment with District Attorney's Office, disclosure and opportunity for defendant to request recusal required), later appeal, 257 Ga. 32, 354 S.E.2d 429 (1987).

22.

Where one member of the staff of the District Attorney's office could reasonably be called as a witness in a case, this may require recusal of the entire staff.  See Waldrop v. State, 424 So.2d 1345 (Ala. Crim. App. 1983) (reversible error for prosecutor to be main witness against defendant on statements issue); Tarver v. State, 492 So.2d 328 (Ala. Crim. App. 1986) (reversal required where prosecutor testified and gave opening and closing arguments); Ex parte Gilchrist, 466 So.2d 991(Ala. 1985); Pease v. District Court, 708 P.2d 800, 802-03 (Colo. 1985); People v. Conner, 666 P.2d 5, 7-9 (Cal. 1983); State v. Donahue, 315 So.2d 329 (La. 1975); United States v. Pepe, 247 F.2d 838, 844 (2d Cir. 1957); People v Janes, 486 N.E.2d 317 (Ill. 1985).

23.

Where the District Attorney or a member of his staff has ties to the victim of a crime, his prosecution of the accused creates an "appearance of impropriety" so as to deny the defendant "fundamental fairness."  See Davenport v. State, 157 Ga. App. 704, 705, 278 S.E.2d 440 (1981) (assault conviction reversed where District Attorney had previously represented victim in divorce proceeding involving defendant).  The same principles apply where a District Attorney has represented the accused.  A District Attorney is disqualified where he or a member of his staff, or one of their former law partners, previously represented the defendant.  See Summerlin v. Johnson, 176 Ga. App. 336, 335 S.E.2d 879 (1985); Burkett v. State, 131 Ga. App. 662, 206 S.E.2d 848 (1974); Castro v. State, 597 So.2d 259 (Fla. 1992); Popejoy v. State, 597 So. 2d 335 (Fla. 3d Dist. Ct. App. 1992).

0000176

24.

The prosecutor must disclose such facts as might support a reasonable inference that he

be disqualified. In any instance "[w]here a potential issue regarding disqualification exists, the

prosecution shares equally with the defendant the duty of bringing the matter to the attention of

the trial court." Gray v. State, 469 So. 2d 1252, 1255 (Miss. 1985). See also Ex parte Gilchrist,

466 So. 2d 991 (Ala. 1985) (duty of prosecutor to bring before court potential need to testify, so

that, if necessary, withdrawal may be ordered); United States v. Columbia Broadcasting, 497

F.2d 107, 109 (5th Cir. 1974) ("protection of the integrity and dignity of the judicial process

from any hint or appearance of bias is the palladium of our judicial system"). Cf. Pope v. State,

256 Ga. 195, 214, 345 S.E.2d 831 (1986); United States v. Murphy, 768 F.2d 1518, 1537 (7th

Cir. 1985), cert. denied, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986); SCA Services v.

Morgan, 557 F.2d 110, 117 (7th Cir. 1977); United States v. Amerine, 411 F.2d 1130, 1134 (6th

Cir. 1969).

25.

In order to protect the rights of Defendant, it is necessary that any possible grounds

giving rise to a legal claim be disclosed so as to avoid any later assertion that the issue should

have been raised in a timely manner. For example, in Amadeo v. State, 243 Ga. 627, 255 S.E.2d

718, cert. denied, 444 U.S. 974, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979), the defendant discovered

a year after his trial that the prosecutor had secretly directed the jury commissioners to

underrepresent African Americans and women on the grand and traverse jury lists. The Georgia

Supreme Court declined to consider the claim, holding that it "comes too late" because it was not

raised prior to trial. Amadeo v. State, 243 Ga. at 629-30. The United States Supreme Court later

set aside the conviction and sentence because the covert jury rigging scheme was not known by

Amadeo and his lawyers prior to trial. Amadeo v. Zant, 486 U.S. 214, 108 S.Ct. 1771, 100

L.Ed.2d 249 (1988).

26.

Defendant, like Amadeo, cannot possibly know of such grounds and may of course never discover them. It may well be that there are no such grounds, but Amadeo makes clear that special vigilance is required and that what a defendant does not know can hurt him. Defendant files this motion to make clear that he waives no legal claim for which he does not now know the factual grounds and asks that any facts that arguably give rise to any legal claim be disclosed so that any such issue can be raised and decided prior to trial. In particular, Defendant seeks the disclosure of any relationships of, any interests of, any statements made by, any promises made by, and any expressions of personal opinions about the sentence by those who have a duty to be nonpartisan, and any other facts that would give rise to any claim or grounds for disqualification. Defendant is moving for disclosure of any and all possible bases for the disqualification of the prosecutor, clerk of court, sheriff, court reporter, jury commissioners, and all others involved in the prosecution of this case.

27.

The District Attorney and the other members of the prosecutorial staff must be required to identify all possible bases for their disqualification on the record so that Defendant may make a knowing and intelligent decision about bases for disqualification:

> Although a judge may accept a waiver of disqualification . . . the
> waiver may be accepted [only if] it is preceded by a full disclosure
> on the record of the basis of the disqualification.

United States v. Murphy, 768 F.2d 1518, 1537 (7th Cir. 1985) (regarding recusal of judges), cert. denied, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). Indeed, with any issue:

> Waivers of constitutional rights not only must be voluntary but
> must be knowing, intelligent acts done with sufficient awareness of
> the relevant circumstances and likely consequences.

Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); accord United States v. Tucker, 404 U.S. 443, 445, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Boykin v. Alabama,

395 U.S. 238, 243-44, 89.S.Ct. 1709, 23 L.Ed.2d 274 (1969) ("with a full understanding of what [it] connotes and its consequences"); McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Burgett v. Texas, 389 U.S. 109, 114-15, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

WHEREFORE, Defendant respectfully requests:

(a)    that this Court grant a full, fair and adequate evidentiary hearing on this motion;

(b)    that this Court issue an order requiring the disclosure of any grounds for any legal claim unknown to Defendant, any activity which may in any way affect this case or give rise to any legal claim, any improper bias or prejudice or possible basis for disqualification of the District Attorney, his office, court personnel, jury commissioners, law enforcement personnel, or other state actors involved in any way in this case;

(c)    That with regard to any fact not so disclosed to Defendant, he be allowed to raise his claim regarding it within a reasonable time, including after trial, after such fact may become known to him; and

(d)    that this Court grant such other relief as may be appropriate.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(110)

In Office Sep-28-2004 16:55:17
ID# 2004-0114697-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

### MOTION FOR HUMANE CONDITIONS OF DEFENDANT'S PRE-TRIAL INCARCERATION

(Motion No. 1 )

Comes now the Defendant by and through his attorneys and moves this Court pursuant to the provisions of the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and pursuant to the provisions of Article I, Section I, paragraphs I, II, VII, XI, XII, XVII, XXVIII of the Constitution of the State of Georgia for an Order that the conditions of this defendant's pre-trial incarceration conform to the basic principals of humanness and that he not be deprived of the basic necessities afforded to all other pre-trial detainees in his similar circumstances and in support of this motion this defendant would show as follows:

1.

This is a Capital prosecution and therefore, exacting standards must be met to assure that it is fair. The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special "'need for reliability in the determination that death is the appropriate punishment'" in any capital case." Johnson v. Mississippi, 486 U.S. 578, 108 S. Ct. 1981, 100 L.Ed.2d 575, 584 (1988) (quoting, Gardner v.

1

Florida, 430 U.S. 349, 363-64, 97 S. Ct. 1197, 51 L.Ed.2d 393 (1977) (quoting, Woodson v. North Carolina, 428 U.S. 280, 305, 96 S. Ct. 2978, 49 L.Ed.2d 944 (1976) (White, J., concurring))).[1]

2.

The county jail is a facility designed to accommodate transient and short term (30 days or less) prisoners. The facility is certainly not designed or equipped to deal with the specific needs of an individual who is being subjected to a period of pre-trial incarceration which has already encompassed over several months and will certainly involve an additional period of time prior to the trial of this case.

3.

This defendant does not have access to an exercise area. He only rarely is exposed to the sunlight and has almost no access to a meaningful physical regimen. The defendant is kept in a single cell outside of contact with any other persons. In order for him to even have access to his jailers he must either yell or try to get their attention in some other way.

4.

This defendant has no access to either a radio or television and only limited access to reading materials. This defendant has no opportunity to remain aware of those current events

---

[1]. The United States is the only western democratic county still carrying out executions. Since 1976 (when the U.S. reinstated the death penalty), 41 countries have abolished the death penalty, including: Portugal, Canada, Denmark, Norway, Brazil, France, Netherlands, El Salvador, Ireland, Namibia, Angola, Greece, Romania, Cambodia and others. Even fewer countries allow teenagers to be executed. The only countries which allow the execution of juveniles under the age of 18 are Iran, Iraq, Nigeria, Pakistan, Saudi Arabia ...and the United States of America.

going on in this community and in this State to which even the most hardened criminals in maximum security prisons throughout the State have access.

### 5.

In one sense the defendant is being held practically in isolation without any meaningful access to human contact. These conditions of his pre-trial incarceration are weighing heavily on the defendant's ability to maintain a semblance of humanity about himself. The deprivation from the defendant of access to other human beings, access to television and radio programs is fast reducing and limiting this defendant's ability to maintain those elementary communication skills so needed by him to properly prepare and eventually present his defense in this capital prosecution.

### 6.

The current conditions under which this defendant is being held awaiting the trial of this case are such that his ability to assist in the preparation of defense is being impaired. The defendant is suffering from unwarranted anxiety because of the conditions of his pre-trial incarceration and therefore his ability to receive a fair trial is being irreparably prejudiced. See Arrant v. Wainwright, 468 F.2d. 677, 682 (5th cir. 1972) cert. denied, 410 U.S. 947 (1973).

### 7.

In the case of Hamm v. DeKalb County, 774 F.2d. 1567, cert. denied 106 S. Ct. 1492, the Court held that the State may not impose on pre-trial detainees conditions that would violate a convicted prisoner's Eighth Amendment rights. The federal court also stated in its ruling in the case of Goodson v. City of Atlanta, 763 F.2d. 1381, rehearing denied 770 F.2d. 175 that pre-trial

3

detainees in their status of being presumably innocent are entitled to humane and reasonable

treatment.

Wherefore, this defendant respectfully requests:

(1)    That he be given an evidentiary hearing on this matter;

(2)    That this Court enter an order directing that this defendant be given reasonable

opportunity for daily exercise periods outside of his cell;

(3)    That this Court enter an order directing that this defendant be allowed reasonable

access to newspapers, television and radio programming; and

(4) That this Court take any further action required to insure that this defendant's pre-trial

incarceration be humane and that it conform to the basic tenants of human dignity.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(113)

4

2004-0114700-CR
Page 1

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

In Office Sep-28-2004 16:58:07

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

STATE OF GEORGIA,        *
                         *
v.                       *        Case No. 04-9-673-05
                         *
STACEY HUMPHREYS,        *
    Defendant.           *

### MOTION FOR AN ORDER INSURING
### ADEQUATE ATTORNEY-CLIENT VISITATION OPPORTUNITIES

### (Motion No. 8 )

Comes now the Defendant in the above styled matter and through his attorneys and pursuant to the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, to Article I, § I, ¶¶ I, II, VII, XI, XIV, XVII and XXVIII of the Georgia Constitution, and to all other applicable state and federal law and case precedent moves this Court for an Order insuring that he and his attorneys are given adequate opportunities for attorney-client visitation and in further support of this motion this defendant would show as follows:

1.

Defendant is on trial for his life! The State through the District Attorney is seeking death by lethal injection of Defendant , a human being. The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special "'need for reliability in the determination that death is the appropriate punishment "in any capital case.'" <u>Johnson v. Mississippi</u>, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575, 584

1

2004-0114700-CR
Page 2

(1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)

(quoting Woodham v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976),

(White, J. concurring))).[1]

## 2.

The general legal principle that guides efforts to balance a custodial defendant's rights

with the state's interest in effective jail or prison administration is as follows: any infringement

by jail or prison administrators upon an individual's constitutional rights must be reasonably

related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254,

2261 (1987). The Court in Turner identified four factors to be used in evaluating the

reasonableness of a jail or prison regulation: 1) whether there is a valid, rational connection

between the regulation and the legitimate governmental interest put forward to justify it; 2)

whether there are alternative means for the prisoner to exercise his or her constitutional right; 3)

whether accommodation of asserted rights will have a significant "ripple effect" on fellow

prisoners or prison staff or on the allocation of prison resources generally; and 4) whether there is

a ready alternative to the regulation that fully accommodates the prisoner's rights at *de minimis*

cost to the valid penological interests. Id. 482 U.S. at 90, 107 S.Ct. at 2262.

## 3.

The right to confidential communication between attorney and client is so basic to the

client's constitutional guarantees that it is rarely even contested. "[I]nmates must have a

---

[1] The United States is the only western democratic country still carrying out executions. Since 1976 (when the U.S. reinstated the death penalty), 41 countries have abolished the death penalty, including: Canada, Denmark, Norway, Brazil, France, Netherlands, El Salvador, Ireland, Namibia, Angola, Greece, Romania, Cambodia and others. Even fewer countries allow teenagers to be executed. The only countries which allow the execution of juveniles under the age of 18 are Iran, Iraq, Nigeria, Pakistan, Saudi Arabia ...and the United States.

2

reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation...are invalid." Procunier v. Martinez, 416 U.S. 396, 419, 94 S.CT. 1800, 1814 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 109 S.CT. 1874 (1939). It is generally accepted that inmates are to be given access to counsel and their assistants. See, e.g., id. (interviewing privileges must be extended to law students and paralegals employed by attorneys); Smith v. Coughlin, 748 F.2d 783, 789 (2d Cir. 1984) (refusal to permit visiting by paralegal was unconstitutional).

4.

The right of access to counsel requires that attorney visits be **contact** visits. The question of contact visits with attorneys was squarely presented in Ching v. Lewis, 895 F.2d 608 (9th Cir. 1990). Ching was denied contact visits with his attorney on two separate occasions and required to "yell through a hole in the glass." The state contended that Ching's claim of a constitutional violation was without merit because mail and telephone access were available. The state's contention was summarily rejected by the Ninth Circuit:

> The Fourteenth Amendment guarantees prisoners meaningful access to the courts. See Bounds v. Smith, 430 U.S. 317, 322, 97 S.Ct. 1491, 1495, 52 L.Ed. 2d 72 (1977)...[I]b Dreher v. Sielaff, 636 F.2d 1141 (7th Cir. 1980)...[t]he appellate court recognized that while prison administrators are given deference in developing policies to preserve internal order, these policies will not be upheld if they unnecessarily abridge the defendant's meaningful access to his attorney and the courts. Id. at 1143, 1146. The opportunity to communicate privately with an attorney is an important part of that meaningful access. Id. at 1143.

ID# 2004-0114700-CR
Page 3

We adopt the rules recognized by the Seventh Circuit in <u>Dreher</u> and hold that a prisoner's right of access to the courts includes contact visitation with his counsel.  The defendants failed to give any justification to support their decision to deny contact visits with Ching.  This apparently arbitrary policy of denying a prisoner contact visits with his attorneys prohibits effective attorney-client communications and unnecessarily abridges the prisoner's right to meaningful access to the courts.

<u>Ching v. Lewis</u>, 895 F.2d 608, 609-10 (9th Cir. 1990).

5.

In <u>Inmates of the Suffolk County Jail v. Eisenstadt</u>, 360 F.Supp. 676, 689-90 (D.Mass. 1973), <u>aff'd</u>, 494 F.2d 1196 (1st Cir. 1974), <u>cert. denied</u>, 410 U.S. 977, 95 S.CT. 239 (1974), the court struck down a policy that allowed attorneys to visit clients as frequently as necessary during the hours of 9-11 a.m. and noon- to 4 p.m. Monday through Saturday; after 5 p.m. with special permission; and not on Sundays and holidays.  The court ordered that visitation hours be expanded to provide for attorney-client visits until 8 p.m. on weekdays and from 9 a.m. to 5 p.m. on Sundays and holidays.  Similarly, in <u>Mitchell v. Untreiner</u>, 421 F.Supp. 8886, 891, 895-96 (N.D. Fla. 1976), the court held that the jail's policy of restricting visits with clients after 8 p.m. unless special permission was obtained violated the Sixth and Fourteenth Amendments.  The court ordered that attorneys be given access to clients between 6 a.m. and 10 p.m. daily.  <u>Id</u>. at 902.

6.

Restrictions on a defense attorney's access to his client involves a fundamental denial of the right to counsel guaranteed to a defendant by the Sixth Amendment of the Constitution of the United States and by Article 1, Section 1, ¶ XIV of the Constitution of the State of Georgia.  <u>See</u>

4

ID# 2004-011470D-CR
Page 4

Geders v. United States, 425 U.S. 80, 91 (1976)("To the extent that conflict remains between the

defendant's right to consult with his attorney during a long overnight recess in the trial, and the

prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the

risk of improper coaching, the conflict must, under the Sixth Amendement, be resolved in favor

of the right to the assistance and guidance of counsel.").

Wherefore, this defendant would respectfully demand that this Court enter an Order

directing that his attorneys, their clerks and paralegals being given reasonable contact visits with

him and that this court grant such other and further relief as is appropriate in this matter.

Respectfully submitted this ____7____ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

(114)

ID# 2004-011470D-CR.
Page 5

In Office Sep-28-2004 16:58:07
2004-0114701-CR
Page 1

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| STATE OF GEORGIA, | * |
| | * |
| v. | *  Case No. 04-9-673-05 |
| | * |
| STACEY HUMPHREYS, | * |
| Defendant. | * |

## MOTION FOR AN ORDER SPECIALLY SETTING HEARINGS
## ON ALL PRE-TRIAL MOTIONS

### (Motion No. 9 )

Comes now Defendant, by and through his attorneys, and requests that the pre-trial motions filed, and to be filed, in his behalf be specially set prior to the date of trial. This motion is made pursuant to the rights and guarantees set forth in the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States and to the provisions of Article I, § I, ¶¶ I, II, XI, XII, XIV, XVI, and XVII of the Constitution of the State of Georgia. In support of this motion, Defendant shows the following facts:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

The Uniform Superior Court Rules provide that "[g]enerally, [all motions] will be heard at or after the time of arraignment and **prior to the time at which such case is scheduled for trial.**" Rule 31.2 (emphasis added).

3.

Defendant has filed extensive pre-trial motions. Proper and thorough presentation and consideration of these motions is essential to the defense of these criminal charges.

4.

Defendant's motions will not receive full and fair consideration if the Court hears them on the date set for trial, with the pressure of a waiting jury.

5.

Potential jurors would be prejudiced against Defendant by any delay on the date of trial for the purpose of hearing motions.

6.

The resolution of this case could carry severe consequences for Defendant. Due Process demands that Defendant be allowed a full and fair opportunity to develop his defense.

7.

Defendant's decisions regarding trial preparation will be significantly impacted by this Court's rulings on his motions.

WHEREFORE, Defendant requests that this Court specially set a date for the purpose of receiving separate evidence and legal argument on each of his motions. Defendant further requests that this date be set sufficiently in advance of trial so as to give defense counsel a reasonable opportunity to prepare for trial after said motions have been ruled upon.

Respectfully submitted this _1_ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(119)

In Office Sep-28-2004 16:58:07
ID 2004-0114702-CR
Page 1

*Jay C. Stephenson Jr.*

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

STATE OF GEORGIA,        *

                       *

v.                      *      Case No. 04-9-673-05

                       *

STACEY HUMPHREYS,       *
     Defendant.            *

### MOTION TO CONDUCT CLOSED EVIDENTIARY HEARING ON DEFENDANT'S MOTION FOR CLOSURE OF PRETRIAL PROCEEDINGS

### (Motion No. 10 )

Comes now Defendant, by and through council, and moves this Court to close the evidentiary hearing to be held with regard to his motion to have this Court conduct *in-camera* hearings with regard to several of his pretrial motions. This motion is made pursuant to the provisions of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, XI, XII, XIV, and XVII of the Constitution of the State of Georgia, to Southeastern Newspapers Corp. v. State, 265 Ga. 223, 454 S.E.2d 452 (1995), and to all other applicable law. In support of this Motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case."

1

Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting

Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J.,

concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d

944 (1976))). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings

generally, this Court has demanded that factfinding procedures aspire to a heightened standard of

reliability. This especial concern is a natural consequence of the knowledge that execution is the

most irremediable and unfathomable of penalties; that death is different." (citations omitted));

California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)

(recognizing "the qualitative difference of death from all other punishments"); Eddings v.

Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by

public authority is . . . profoundly different from all other penalties"). For this reason, our system

of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed

is afforded process that will guarantee, as much as is humanly possible, that the sentence was not

imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118

(O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at

both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d

392 (1980).

2

2004-0114702-CR
Page 3

## 2.

Courts have recognized the need to hold closed hearings on motions for closure of pretrial proceedings. In <u>Ex parte The Birmingham News Co., Inc.</u>, 624 So. 2d 1117 (Ala. Crim. App. 1993), members of the press filed a petition for a writ of mandamus with the Alabama Supreme Court seeking to compel a trial court to release transcripts of closed pretrial proceedings. In its disposition of the matter, the Alabama Supreme Court reaffirmed the trial court's recognition that courts may need to close hearings held on motions for closure to protect the underlying value of closure. The court noted that "several courts have recognized that public disclosure during the closure hearings may be a problem." <u>Id.</u> at 1135 (citing <u>In re Search Warrant</u>, 855 F.2d 569, 574 (8th Cir. 1988); <u>In re Washington Post</u>, 807 F.2d 383, 391 (4th Cir. 1986); <u>In re Herald</u>, 734 F.2d 93, 102 (2d Cir. 1984); and Standard 8-3.2(b)(2), <u>ABA Standards for Criminal Justice, Fair Trial and Free Press</u> (3d ed. 1992)).

## 3.

Similarly, the Maryland Court of Appeals has recognized the need to conduct closed hearings on motions for closure. The court in <u>Baltimore Sun Company v. Colbert</u>, 593 A.2d 224, 230 (Md. 1991) explained that

> ordinarily at the hearing the moving party must inform the court of the precise nature of sensitive information, which necessarily will be revealed at the proceeding to be closed, and must convince the court that the public disclosure of that information would interfere with the constitutional guarantee of a fair trial.

Pointing out that "patently, if the sensitive information is publicly disclosed at the hearing of the motion for closure, the very damage sought to be avoided is done," the court concluded that motions for closure must in such circumstances be reviewed in a closed hearing. <u>Id.</u>

3

4.

As the Alabama Supreme Court noted in <u>Birmingham News Co.</u>, the American bar Association has also recognized the need to address closure motions in closed hearings. Standard 8-3.2(b)(2), <u>ABA Standards for Criminal Justice, Fair Trial and Free Press</u> (3rd ed. 1992), states that

> In order to determine whether such a prima facie showing [for the need for closure] exists, the court should not require public disclosure of or access to the matter which is the subject of the closure proceeding itself and the court should accept submissions under seal, *in camera*, or in any other manner designed to permit a party to make a prima facie showing without public disclosure of said matter.

5.

At the hearing on his motion for this Court to conduct *in camera* proceedings, Defendant will argue the need for closure in order to keep sensitive information, including inadmissible statements and illegally obtained and unreliable evidence, from being admitted at trial. The highly prejudicial effects of public disclosure of such sensitive information compels this Court to hear Defendant's motion in a closed session of the court.

WHEREFORE, Defendant requests that this Court enter orders:

(1)    excluding the public, print and electronic media from the evidentiary hearing regarding the closure of pretrial proceedings;

(2)    directing that the records and transcripts of such hearing be sealed until a jury is impaneled and sequestered; and

(3)    granting such other relief as is appropriate.

4

Respectfully submitted _____ day of September, 2004.

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

(120)

5

ID# 2004-0114702-CR
Page 5

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

|                          |     |                        |
|--------------------------|-----|------------------------|
| STATE OF GEORGIA,        | *   |                        |
|                          | *   |                        |
| v.                       | *   | Case No. 04-9-673-05   |
|                          | *   |                        |
| STACEY HUMPHREYS,        | *   |                        |
| Defendant.               | *   |                        |

## MOTION TO PREVENT *EX PARTE* COMMUNICATION
## BETWEEN THE STATE AND THE COURT

### (Motion No. 11 )

Comes now Defendant, by and through his attorneys, and hereby moves this Court to order that there be no *ex parte* communication between the State and the Court outside the presence of Defendant or his attorneys, regarding said case, except and unless Defendant or his attorneys shall waive the right to be present at said communication. In the event Defendant does waive his right to be present, said waiver shall only be valid for the specific period waived. This motion is made pursuant to the provisions of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and to the provisions of Article I, § I, ¶¶ I, II, XI, XII, XVI, XVI, XXV, and XXVIII of the Constitution of the State of Georgia.

Respectfully submitted this 1 day of September, 2004.


236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500


Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(122)

d In Office Sep-28-2004 17:01:59
2004-0114716-CR
Page 1

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

Jay C. Stephenson
Clerk of Superior Court Cobb County

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## MOTION RESERVING THE RIGHT TO FILE ADDITIONAL MOTIONS

### (Motion No. 12 )

Comes now Defendant, by and through his council, and requests an order of this Court reserving his right to file such additional motions as the future progression of this case may merit. This request is made pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to the provisions of Article I, § I, ¶¶ I, II, VII, XI, XII, XIV, XVII, XXVIII of the Constitution of the State of Georgia, and to all other applicable state and federal law. In support of this motion, Defendant states as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

Both formal and informal discovery are ongoing and incomplete. Problems with the availability of requested information, as well as questions regarding the propriety of revealing certain information maintained by the prosecution, may arise that will compel Defendant to file additional requests with this Court for additional evidentiary hearings. Every issue of this case must be carefully investigated and researched by the defense because death by lethal injection is a possible sentence in this case.

3.

The inordinate complexity of the charges brought by the State against Defendant mandate a continuing analysis of the materials provided by the state and in the process of being discovered that may lead to the necessity for additional substantive motions.

000199

WHEREFORE, Defendant respectfully requests the right to file additional motions in this case.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(124)

In Office Sep-28-2004 17:01:59
2004-0114717-CR
Page 1

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

Jay C. Stephenson
Clerk of Superior Court Cobb County

STATE OF GEORGIA,

v.

STACEY HUMPHREYS,
Defendant.

Case No. 04-9-673-05

## MOTION FOR AN ORDER PROHIBITING DEFENDANT
## FROM BEING EXHIBITED IN JAIL CLOTHING

(Motion No. 13 )

Comes now Defendant, by and through his council, and moves this Court for an order prohibiting Defendant's appearance in this courthouse while dressed in jail clothing. This motion is made pursuant to the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States and to Article I, § I, ¶¶ I, II, VII, XI, XII, XIV, XVI, XXIV, XXVIII of the Constitution of the State of Georgia. In support of this motion, Defendant would show as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909; 49 L.Ed.2d 859 (1976).  As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence.  E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability.  This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties").  For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake."  Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added).  These "extraordinary measures" must be taken at both stages of any capital trial.  Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

People who are traveling to and from court, including potential jurors, as well as traffic on the streets around the courthouse in the area where inmates are being brought in, are exposed to inmates dressed in distinctive jail garb.

3.

The Sheriff will no doubt maintain, through his deputies, that the jail uniform (and the chains) are a requirement of security measures.  Yet the courtroom will be sealed with a number of armed guards encircling Defendant as he sits at a table awaiting his opportunity for a fair trial.

ID# 2004-0114717-CR
Page 2

4.

Forcing Defendant to appear in court in jail garb and/or chains is not only beneath the

dignity of this Honorable Court, it is manifestly prejudicial to the rights of Defendant to have and

receive a fair trial.  Compelling an accused to wear identifiable prison clothing during his trial

violates the Due Process Clause, because it furthers no essential state interest, and "the constant

reminder of the accused's condition implicitly in such distinctive, identifiable attire may affect a

juror's judgment," Estelle v. Williams, 425 U.S. 501, 504-05, 96 S.Ct. 1691, 48 L.Ed.2d 126

(1976), and impair the presumption of innocence, which is a "basic component of a fair trial

under our system of criminal justice." Id. at 503.  Accord Gates v. State, 244 Ga. 587, 593, 261

S.E.2d 349 (1979) ("Absent justifying circumstances, the defendant normally should not be seen

by the jury handcuffed in the courtroom or courthouse").

5.

Defendant has filed a motion for funds to purchase suitable attire for these proceedings.

There is no logical or legal reason to deny him both the right to a fair trial and the right to be

treated with the dignity and respect owed to any human being.

WHEREFORE, Defendant respectfully requests that:

(a)     he be granted an evidentiary hearing on this motion;

(b)     This Court issue an order directing that at all public appearances in this courtroom

and at all occasions when Defendant is brought into court, he be allowed to dress

in appropriate civilian clothing and that he not be shackled and/or chained while

in the well of this or any other courtroom; and

(c)     That he have such other relief as is proper in this matter.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

000203

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(125)

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

STATE OF GEORGIA,

        \*
        \*

v.
        \*    **Case No. 04-9-673-05**
        \*

**STACEY HUMPHREYS,**
   **Defendant.**
        \*

## DEMAND FOR TRIAL BY JURY

### (Motion No. 14 )

Comes now the Defendant in the above-styled matter and hereby demands a jury trial pursuant to rights guaranteed to him under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and the provisions of Article 1, Section 1, Paragraphs I, II, IX, XI, XII,and XIV of The Constitution of the State of Georgia.

Respectfully submitted this 7 day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

           Jimmy D. Berry
           Attorney for Defendant
           GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

           Christopher W. Adams
           Attorney for Defendant
           GA Bar No. 002725

(127)



Filed In Office Sep-28-2004 17:03:38
ID# 2004-011471B-CR
Page 1
Jay C. Stephenson
Clerk of Superior Court Cobb County

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| STATE OF GEORGIA, | * |
| | * |
| v. | *    **Case No. 04-9-673-05** |
| | * |
| STACEY HUMPHREYS, | * |
| Defendant. | * |

## MOTION TO ADJOURN AT A REASONABLE TIME

### (Motion No. 15 )

Comes now Defendant, by and through council, and moves this Court to adjourn the trial at a reasonable time each day, or not later than five o'clock. This motion is made pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, IV, V, XI, XIII, XIV, XVI, XVII and XXVIII of the Constitution of the State of Georgia, and to all other applicable law. In support of his motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

000206

death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability.  This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties").  For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added).  These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

Defense counsel anticipates that this trial could last several weeks.  A traditional work day consists of eight hours.  Throughout the pre-trial motion hearings and the actual trial, counsel must continue to work each evening after the court recesses for the day in order to prepare to present the case the next day.  Counsel must consult with Defendant concerning each day's developments, the strategy to be pursued on the next day and the general investigation of the case.  Counsel must research legal questions which arise in the trial, make arrangements for witnesses' travel and confer with them prior to their testimony.  An excessive work schedule would prohibit Defendant from receiving effective representation.

3.

In addition to the need for time to consult with his attorneys and to prepare for the next day's presentation, Defendant needs time to rest, in order to properly concentrate on the

proceedings. Rest or relaxation at the jail is mythical; yet, Defendant must still be given the opportunity to try to revitalize each day in light of the gravity of the charges and the nature of these proceedings.

WHEREFORE, Defendant requests the Court to begin and adjourn the trial of this case at reasonable hours, adjourning no later than five o'clock each day.

Respectfully submitted this _7_ day of September, 2004.

236 Washington Avenue                              Jimmy D. Berry
Marietta, GA 30060                                 Attorney for Defendant
770-422-5434                                        GA Bar No. 055500

Multi-County Public Defender's Office              Christopher W. Adams
104 Marietta Street, Suite 200                     Attorney for Defendant
Atlanta, GA 30303                                  GA Bar No. 002725
404-824-0615

(200)

Filed In Office Sep-28-2004 17:05:37
ID# 2004-0114721-CR
Page 1

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

Jay C. Stephenson
Clerk of Superior Court Cobb County

STATE OF GEORGIA,                                *
                                                 *
v.                                               *          Case No. 04-9-673-05
                                                 *
STACEY HUMPHREYS,                                *
          Defendant.                             *

## MOTION TO STRIKE AND QUASH THOSE PORTIONS OF THE UNIFIED APPEAL THAT REQUIRE WAIVER OF CONSTITUTIONALLY PROTECTED RIGHTS

### (Motion No. 16 )

Comes now Defendant, by and through his attorneys, and moves this Court for an order striking, quashing and declaring unconstitutional those portions and sections of the Unified Appeal set forth in the Uniform Rules for Superior Courts, Rule 34, that require the waiver of the constitutionally protected rights of Defendant. This motion is made pursuant to the provisions of the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and to Article I, § I, ¶¶ I, II, VII, XIV and XXVIII of the Constitution of the State of Georgia. In support of this motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

The Sixth Amendment to the Constitution of the United States guarantees a criminal defendant the right to counsel. This right is critically important "'for it affects his ability to assert any other rights he may have.'" United States v. Cronic, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (quoting Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956)).

3.

The Unified Appeal provisions requiring the court to make inquiries of Defendant and requiring Defendant to divulge his feelings, thoughts and possible concerns about his attorney-client relationship are nothing more than a court instigated discovery process. Unless Defendant

ID# 2004-0114721-CR
Page 2

desires to speak, he may remain silent.  As the California Court of Appeals said some time ago in the case of People v. Talle, 245 P.2d 633, 648 (1952):

> Those accused of a crime are not required to cooperate with the prosecution.  The prosecution has the duty of proving that the accused is guilty beyond a reasonable doubt, and until that is done, the accused may remain silent.

4.

When the Court inquires into Defendant's feelings about his counsel, Defendant is being forced to divulge not only his feelings but also could quite possibly be put in the position of having to disclose attorney-client communications.  This should not be allowed.

WHEREFORE, Defendant respectfully requests that this Court issue an Order:

(a)    declaring those provisions of the Unified Appeals procedures dealing with Defendant's revelations of his attorney-client relationships unconstitutional;

(b)    recognizing that any inquiries which invade the area of attorney-client communications are inappropriate; and

(c)    granting such other and further relief as to this Court seems proper.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

(202)

000211

In Office Sep-28-2004 17:05:37
# 2004-0114722-CR
Page 1

Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## MOTION TO EXCLUDE MEMBERS OF THE POLICE DEPARTMENT AND MEMBERS OF OTHER LAW ENFORCEMENT AGENCIES FROM SITTING IN THE COURTROOM IN UNIFORM

(Motion No. 17 )

Comes now Defendant, by and through his attorneys, and moves this Court for an order preventing members of the police department and members of other law enforcement agencies from sitting in the courtroom in uniform during the trial of this case. This motion is made pursuant to the rights and guarantees set forth in the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, XI, XII, XIV, XVI, and XVII of the Constitution of the State of Georgia, and to all other applicable law. In further support of this motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case.

1

Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting

Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J.,

concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d

944 (1976))). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings

generally, this Court has demanded that factfinding procedures aspire to a heightened standard of

reliability. This especial concern is a natural consequence of the knowledge that execution is the

most irremediable and unfathomable of penalties; that death is different." (citations omitted));

California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)

(recognizing "the qualitative difference of death from all other punishments"); Eddings v.

Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by

public authority is . . . profoundly different from all other penalties"). For this reason, our system

of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed

is afforded process that will guarantee, as much as is humanly possible, that the sentence was not

imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118

(O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at

both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d

392 (1980).

2

2.

Even in non-capital cases, appeals to passion and prejudice and other inflammatory

appeals to the jury are impermissible.  See <u>Varix v. United States,</u> 318 U.S. 236, 247-48, 63 S.Ct.

561, 87 L.Ed.2d 743 (1943); <u>United States v. Gaspard,</u> 744 F.2d 438 (5th Cir. 1984), <u>cert. denied,</u>

469 U.S. 1217 (1985); <u>Parks v. State,</u> 254 Ga. 403, 330 S.E.2d 686 (1985); <u>Conner v. State,</u> 251

Ga. 113, 303 S.E.2d 266 (1983), <u>cert. denied,</u> 464 U.S. 865 (1983); American Bar Association,

<u>Standards Relating to the Prosecution Function,</u> § 3-5.8(c) (1982).

3.

The presence of police officers in uniform will violate Defendant's right to a fair trial and

will be nothing more than an attempt to intimidate the jurors into violating the prohibitions of the

law against interjecting emotionalism and passion into evidence.  The public pronouncements of

the highest law enforcement officers in this community have made it clear that the police see this

trial as an affirmation of the police efforts to respond to the public's cry for less crime in the

community.  The presence of the police in the courtroom will surely have a chilling effect on

Defendant's right to a fair trial and to his right to the presumption of innocence.

WHEREFORE, Defendant respectfully requests that this Court enter an order directing

that members of the police department and other law enforcement agencies remain out of the

courtroom and hallways adjacent to the courtroom during this trial, and, if any do come into the

hallways and courtroom, that they be required to remain in civilian dress which does not identify

them as members of any law enforcement agency.

(Signatures on following page)

3

ID# 2004-0114722-CR
Page 3

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(204)

4

ID# 2004-0114722-CR
Page 4

Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb County

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## MOTION FOR ADEQUATE ATTORNEY-CLIENT VISITATION FACILITIES AND MOTION FOR AN EVIDENTIARY HEARING UPON DEFENDANT'S CLAIMS PURSUANT TO THE PROVISIONS OF 42 U.S.C.A. § 1983

### (Motion No. 18 )

COMES NOW Defendant, by and through council, and pursuant to the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, to Article I, § I, ¶¶ I, II, VI, VII, XI, XII, XIII, XIV, XVI, XVII and XXVIII of the Georgia Constitution, 42 U.S.C.A. Section 1983, Wright v. State, 250 Ga. 570, 300 S.E.2d 147 (1983); Strickland v. Washington, 466 U.S. 668 (1984); and other applicable State and federal law moves this Court for an Order directing the Sheriff of [venue]to provide reasonable, unobstructed and constitutionally adequate visitation facilities to Defendant and his attorneys and for an order directing that an evidentiary hearing be held upon Defendant's claims of violations of his rights pursuant to the protections afforded to him by 42 U.S.C.A. §1983 and in support of these motions Defendant would show as follows:

1.

The State through the District Attorney has been seeking his death by lethal injection of Defendant a human being. The fundamental respect for humanity underlying the Eighth

1

216

Amendment's prohibition against cruel and unusual punishment gives rise to a special "'need for reliability in the determination that death is the appropriate punishment "in any capital case."' Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575, 584 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), (White, J. concurring))).[1]

### 2.

In addition to the deplorable living conditions in which he is being held, virtually incommunicado, he is being denied reasonable and effective access to his attorneys. Defendant is forced to meet with his attorneys in a small, cramped enclosure with no direct contact with his attorneys. Defendant and his attorneys are forced to shout to each other in order to maintain even the most minimal oral communications. There is no way for Defendant and his attorneys to pass documents back and forth, for Defendant to sign documents or meaningfully participate in the review of evidentiary material. There is no way for Defendant's attorneys to read or show Defendant written documents and to solicit his input in interpreting or explaining the most elementary of documentary evidence. Voice communication is impossible because of the need to shout thereby destroying any hope of confidentiality. The window separating Defendant from his attorneys is a very thick plexiglass type of substance which makes even minimal eye contact

---

[1]. The United States is the only western democratic county still carrying out executions. Since 1976 (when the U.S. reinstated the death penalty), 41 countries have abolished the death penalty, including: Portugal, Canada, Denmark, Norway, Brazil, France, Netherlands, El Salvador, Ireland, Namibia, Angola, Greece, Romania, Cambodia and others. Even fewer countries allow teenagers to be executed. The only countries which allow the execution of juveniles under the age of 18 are Iran, Iraq, Nigeria, Pakistan, Saudi Arabia ...and the United States of America.

2

difficult. In essence, Defendant is placed in a fiberglass enclosed cube and must attempt to communicate with his attorneys who are, likewise, placed in a fiberglass enclosed cube.

3.

Counsel for Defendant has requested relief from the onerous and oppressive conditions imposed upon Defendant and his attorneys at those conditions relate to attorney-client visitation facilities, but jail personnel, acting on behalf of the state, have denied any and all requests for relief. Defendant and his attorneys have no meaningful access whatsoever.

4.

Defendant has the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). A deprivation of the right to counsel occurs when the state interferes in the attorney-client relationship, as by erecting artificial and unnecessary barriers between attorney and client. See e.g., Geders v. United States, 425 U.S. 80 (1976). The current arrangement for legal visits constitutes such a barrier, because it effectively prevents any meaningful contacts between Defendant and his attorneys. The oppressive and restrictive measures used by the Gwinnett County Sheriff to interfere with any meaningful contact between Defendant and his attorneys hinders, and practically destroys the development of any effective attorney-client relationship which is essential to the competent presentation of a defense.

5.

In Wright v. State, 250 Ga. 570, 300 S.E. 2d 147 (1983), a non-death penalty case, the Georgia Supreme Court commented on the inadequacy of visiting arrangements in the Laurens County Jail, and denied relief on appeal only because counsel had failed to seek a hearing and a ruling on a motion seeking adequate visitation facilities. In this case, Defendant not only seeks a

ruling on his request, he is seeking an evidentiary hearing which will not only allow him to show a deprivation of meaningful access with his attorneys, but also to show a violation of his federal rights and the damage which he has incurred as a result of the violation of his rights under 42 U.S.C.A. §1983.

6.

The Georgia Supreme Court has held that "special skills are necessary to assure adequate representation of defendants in death penalty cases." Amadeo v. State, 259 Ga. 469, 384 S.E.2d 181, 182 (1989). See also, Uniform Superior Court Rule 29.8(E) which provides:

> [C]ases in which the death penalty is ought shall be assigned only to attorneys of sufficient experience, skill and competence to render effective assistance of counsel to defendants in such cases.

Therefore, the appointment of even qualified counsel, as required, becomes meaningless if Defendant's "qualified" counsel is denied meaningful access to Defendant. The following cases stand for the basic proposition that pretrial detainees are denied meaningful access to their counsel in violation of the sixth Amendment if, in the facilities provided for attorney-client conferences, conversation is difficult and privacy is impossible. Keker v. Procunier, 398 F.Supp. 756 (E.D. Cal. 1975); Adams v. Carlson, 488 F.2d 619 (7th Cir. 1973); Collins v. Schoonfield, 344 F.Supp. 257 (D.C.Md. 1972); Coplon v. United States, 191 F.2d 749 (D.C.Cir. 1951); Ex Parte Snyder, 62 Cal. App. 697, 217 P. 777 (Cal.App. 1923).

7.

The Fourteenth Amendment to the Constitution of the United States makes certain federal constitutional rights applicable to certain state actions. Specifically, the First, Sixth, and Eighth Amendments are applicable to the states. A citizen who is being held in a pretrial facility may

4

not be treated in any way except to the extent reasonably required in order to insure his presence

at trial and to maintain the order and security of the institution. Any limitations on

communications by the pretrial detainee with courts, counsel, family, potential witnesses, public

officials and the press should be kept at bare and necessary minimums. The Sheriff of Douglas

County, his deputies and the jail custodians working within the Gwinnett County Jail acting in

their official capacities are deemed to be acting under "color of state law" within the meaning of

Civil Rights Law providing that every person who, under color of any state law, subjects ;any

citizen of the United States to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, shall be liable to the party injured in action at law, suite in equity, or

other proper proceeding for redress. See, Collins, et al. V. Schoonfield, Warden, 344 F.Supp.

257 (US District Court, D. Maryland, 1972). As the District Court in Collins noted, "there are

certain minimum standards below which today's society cannot sink in its treatment of those of

its members who must, for one reason or another, confined in jails and prisons.: Id. at 264.[2]

## 8.

The abysmal conditions under which Defendant must live day-to-day and the conditions

under which he and his attorneys are forced to meet to discuss those issues which will mean life

or death for him are clearly violative Defendant's constitutional protections and also those

conditions are violative of Defendant's civil rights as protected by Title 42 U.S.C. § 1983. 42

U.S.C.A. §1983 provides, in part, as follows:

---

[2] "Humane considerations and constitutional requirements are not, in this day, to be measured or limited by *dollar considerations* (emphasis supplied). Jackson v. Bishop, 404 F.2d 571, 580 (8th Cir. 1968)(Blackmun, J.). See also, Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (The Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.)

000220

> [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

9.

In Adams v. Carlson, 488 F.2d 619, at 630 (1973) stated that

> Citation of authority is hardly needed for the proposition that an inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold, [cites] All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden. [cites] The judiciary, moreover, has not been content merely to keep free the lines of communication between the inmate, the courts, and agencies of correction. Whether as a vital concomitant of the prisoner's right to petition the bench or as a distinct requirement of his right to effective counsel guaranteed by the Sixth Amendment, a right of access by an inmate to counsel has been perceived by a number of courts. *Compare* Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970), *with* Moore v. Ciccone, 459 F.2d 574, 577 (8th Cir. 1972).

10.

Not only is Defendant being denied his basic Sixth Amendment right to effective counsel, his attorneys are being denied the right to practice as attorneys. In the case of Keker v. Procunier, the district court for the Eastern District of California analogized the attorney's right to practice his or her profession to the same rights found to be afforded physicians. Citing to the Fourteenth Amendment of the United States Constitution, the Court noted that

> [T]his court can discern no reason why attorneys should not be afforded the same scope of constitutional protection as is afforded to physicians. Legal issues and questions pervade virtually all aspects of our increasingly complex society. The modern attorney must at times be lawyer, counselor and advocate. Just as the physician is entrusted by society with the enhancement and

6

preservation of life and health, the attorney is charged with advancement and protection of property, of liberty, and occasionally, of life.

Expanding, upon its decision in <u>Nyberg v. Virginia</u>, *supra*, the Eighth Circuit Court of Appeals has recently held that "with even stronger force [than the right to practice medicine] it may be said that a lawyer has standing to challenge any act which interferes with his professional obligation to his client." See *Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation*, 507 F.2d 1281 (8th Cir. 1974). (footnote omitted)

As an initial matter, it must be said that the acts of Defendant State officials as alleged in the complaint do constitute an interference with plaintiff's right to practice their profession. The right to practice a profession necessarily includes the right to practice according to the highest standards of that profession. *Nyberg v. Virginian, supra; Young Women's Christian Association of Princeton v. Kugler, supra.* At the foundation of the legal practice is the right to maintain the privacy and freedom from intrusion essential to the attorney-client relationship.

If plaintiffs and their clients are forced to meet in an uncomfortably hot room when other, more amenable facilities are reasonably available, if communication between attorney and client is circumscribed by partitions, limited by telephone restrictions, and subject to continual surveillance, then clearly the plaintiffs, as attorneys, have been subjected to interference in their right to practice their chosen profession. Additionally, the privacy implicit in the attorney-client relationship has been seriously infringed.

<u>Id.</u>, at 761.

11.

Practices that threaten "fairness of the fact-finding process" must be subject to "close judicial scrutiny." <u>Estelle v. Williams</u>, 425 U.S. 501, 503-504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). The United States Supreme court has repeatedly emphasized that because of the exceptional and irrevocable nature of the death penalty, "extraordinary measures" are required to

7

ensure the reliability of decisions regarding both guilt and punishment in a death penalty trial.

See, Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (O'Connor,

J., concurring). See also, Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49

L.Ed.2d 944 (1976); Gardner v. Florida, 430 U.S. 349, 357-58, 97 S.Ct. 1197, 51 L.Ed.2d 393

(1977); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Beck v.

Alabama, 447 U.S. 625, 637-38, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Turner v. Murray, 476

U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986).

WHEREFORE, Defendant respectfully requests that this Court:

1.    issue an order directing the Sheriff to provide contact visits with his attorneys

wherein they can communicate freely, without the possibility of being overheard

by jail personnel;

2.    grant his request for an evidentiary hearing on his claims of deprivation of rights

afforded to him by the terms of provisions of 42 U.S.C.A. § 1983; and

3.    grant such other and further relief as would be appropriate in this matter.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(214)

Filed In Office Sep-20-2004 17:09:05
04-9-26101 4573 4-CR

Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant | * | |

## MOTION FOR A CHANGE OF VENUE

(Motion No. 19 )

Comes now Defendant, by and through his attorneys, and moves this Court for a change

of venue away from this county. This motion is made pursuant to the Fourth, Fifth, Sixth, Eighth

and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, IV,

V, XI, XIII, XIV, XVI, XVII, and XXVIII of the Constitution of the State of Georgia, to

O.C.G.A. § 17-7-150, and to all other applicable federal and state law. In further support of this

motion, Defendant shows as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his

death by lethal injection. The State, through the District Attorney, has announced its intention to

kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth

Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for

reliability in the determination that death is the appropriate punishment' in any capital case."

Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting

Gardner v. Florida, 430 U.S. 349, 363-64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J.,

000224

concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d

944 (1976))). It is now well established that when a defendant's life is at stake, a court must be

"particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S.

153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As this Court is acutely aware, the penalty of

death is qualitatively and profoundly different from any other sentence. E.g., Ford v.

Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings

generally, this Court has demanded that factfinding procedures aspire to a heightened standard of

reliability. This especial concern is a natural consequence of the knowledge that execution is the

most irremediable and unfathomable of penalties; that death is different." (citations omitted));

California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)

(recognizing "the qualitative difference of death from all other punishments"); Eddings v.

Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by

public authority is . . . profoundly different from all other penalties"). For this reason, our system

of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed

is afforded process that will guarantee, as much as is humanly possible, that the sentence was not

imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118

(O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at

both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d

392 (1980).

2.

Georgia law provides that "[t]he defendant, in any criminal case in which a trial by jury is

provided, may move in writing for a change of venue, whenever, **in Defendant's or defense**

2

**counsel's judgment**, an impartial jury cannot be obtained in the county where the crime is alleged to have been committed." O.C.G.A. § 17-7-150(a)(1) (emphasis added).

3.

The Fourteenth Amendment's due process clause safeguards a defendant's Sixth Amendment right to be tried by "a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). A motion for change of venue is required under circumstances that make a fair trial improbable in the county where the crime was committed. Irvin v. Dowd, 366 U.S. at 727-28; Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Coleman v. Zant, 708 F.2d 541 (11th Cir. 1983) (Coleman I); Coleman v. Kemp, 778 F.2d 1487, 1540 (11th Cir. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986) (Coleman II); Mayola v. Alabama, 623 F.2d 992, 997 (5th Cir. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981); Ross v. Hopper, 716 F.2d 1528, 1541 (11th Cir. 1983), modified in other respects, 756 F.2d 1483 (1985) (en banc), remanded on other grounds, 785 F.2d 1467 (1986); Kesler v. State, 249 Ga. 462, 291 S.E.2d 497, 505 (1982); Street v. State, 237 Ga. 307, 311, 227 S.E.2d 750 (1976).

4.

"A motion for change of venue...shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had." ABA Standards Relating to Fair Trial and Free Press, § 3.2 (1968) (emphasis added). The United States Supreme Court has insisted that an accused be tried by "a public tribunal free of prejudice, passion, excitement, and tyrannical power." Chambers v. Florida, 309 U.S. 227, 236-237, 60 S.Ct. 472, 84 L.Ed. 716 (1940).

3

5.

The State of Georgia has filed notice of its intention to seek the death penalty against

Defendant. That fact must inform the Court's decision on the issue of the appropriate venue for

this case. The United States Supreme Court has consistently recognized that, in capital cases,

both the guilt and penalty determinations must be structured to assure heightened reliability, not

to permit those findings whose reliability is diminished. Ford v. Wainwright, 477 U.S. at 411;

Caldwell v. Mississippi, 472 U.S. 320, 343, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)(O'Connor, J.,

concurring); Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

6.

Courts around the country have followed the United States Supreme Court's mandate by

recognizing that "a trial court should...be particularly sensitive to the need for a change of venue

in capital cases." Johnson v. State, 476 So.2d 1195, 1214 (Miss. 1985)(conviction and death

sentence reversed because of failure to grant change of venue). While it is hardly uncommon for

a change of venue to be warranted in a non-capital case, [1] it is in death penalty cases that courts,

including the Georgia Supreme Court, have closely scrutinized the need for a change of venue to

effect a capital defendant's constitutionally protected rights to a fair trial and a constitutionally

reliable sentencing hearing. See Jones v. State, 261 Ga. 665, 409 S.E.2d 642 (1991); State v.

Brown, 496 So.2d 261 (La. 1986); State v. Bey, 96 N.J. 625, 477 A.2d 315 (1984) (all reversing

convictions and death sentences due to the failure to grant a change of venue). See also Coleman

---

1. Convictions have been reversed in a wide variety of non-capital cases, of course. See e.g. Coates v. State, 773 P.2d 1281 (Okla. Crim. 1989)(Embezzlement); Nickolai v. State, 708 P.2d 1292 (Alaska App. 1985)(second degree murder); People v. Acomb, 94 A.D.2d 978, 464 N.Y.S.2d 103 (4th Dept. 1983)(manslaughter); Com. V. Casper, 375 A.2d 737 (Pa. Super 1977)(extortion and menacing); State v. Shawan, 77 N.M. 354, 423 P.2d 39 (1967)(assault with intent to kill); Forsythe v. State, 12 Ohio Misc. 99, 41 Ohio Ops. 2d 104, 230 N.E.2d 681 (1967)(manslaughter).

4

v. Kemp, 778 F.2d 1487 (11th Cir. 1985)(writ of habeas corpus granted, conviction and death

sentence vacated due to failure to grant change of venue); Wansley v. Miller, 353 F.Supp. 42

(D.C. Va. 1973)(writ of habeas corpus granted, conviction and death sentence vacated due to

failure to grant change of venue).

7.

In resolving the difficult issue presented by this motion, this Court should be guided by

the words of the Supreme Court of Florida in deciding this same issue in another capital case:

> We take care to make clear, however, that every trial court in
> considering a motion for change of venue must liberally resolve in
> favor of Defendant any doubt as to the ability of the State to
> furnish a defendant a trial by a fair and impartial jury. Every
> reasonable precaution should be taken to preserve to a defendant
> trial by such a jury and to this end if there is reasonable basis
> shown for a change of venue a motion therefor properly made
> should be granted.
>
> A change of venue may sometimes inconvenience the State, yet
> we can see no way in which it can cause any real damage to it. On
> the other hand, granting a change of venue in a questionable case is
> certain to eliminate a possible error and to eliminate a costly retrial
> if it be determined that the venue should have been changed. More
> important is the fact that the real impairment of the right of a
> defendant to trial by a fair and impartial jury can result from the
> failure to grant change of venue.

Singer v. State, 100 So.2d 7, 14 (Fla. 1959)(reversing a defendant's conviction and death

sentence because of the trial court's failure to grant a change of venue).

8.

This recognition of the importance of a change of venue in capital cases is scarcely a new

or novel idea. Rather, courts have long recognized that when a person is charged with the

5

commission of the grave crime of murder, and stands to receive society's ultimate punishment if

convicted, that person has the right to be tried by an impartial jury in a community where the case

has not been prejudiced or prejudged.  See State v. Canada, 48 Iowa 448 (1878)(murder

conviction and death sentence reversed because of failure to change venue); State v. Craften, 89

Iowa 109, 56 N.W. 257 (1893)(same); see also State v. Meyer, 181 Iowa 440, 164 N.W. 794

(1917).

### 9.

Courts throughout the country have not hesitated to consider "that in capital cases the

factor of gravity (of potential punishment) must weigh heavily in a determination regarding the

change of venue." People v. Williams, 48 Cal. 3d 1112, 259 Cal. Rptr. 473, 774 P.2d 146, 157

(1989)(quotation omitted)(conviction and death sentence reversed for failure to grant a change of

venue); see also Com. v. Daugherty, 493 Pa. 273, 426 A.2d 104 (1981)( conviction and death

sentence reversed because of failure to grant change of venue); State v. Dryman, 127 Mont. 579,

269 P.2d 796 (1954)(same).

### 10.

At least six (6) states, including Georgia, which have the death penalty as a potential

punishment have explicitly recognized that a different standard must be used in determining

where a defendant can get a fair trial when his life is at stake.  Jones v. State, 409 S.E.2d at 643;

People v. Williams, 774 P.2d at 157; State v. James, 99 Utah Adv. Rep. 14, 767 P.2d 549, 553;

Fisher v. State, 481 So.2d 203, 216 (Miss. 1985); State v. Bey, 477 A.2d at 317-318; and

Forsythe v. State, 12 Ohio Misc. 99, 230 N.E.2d 681, 686 (Ohio 1967).  Defendant's

constitutionally protected rights to due process, a fair trial before an impartial jury, and the

6

heightened degree of reliability necessary to the penalty determination in a capital case require this Court to give explicitly consideration to the potential punishment Defendant stands to receive if convicted in this case when determining the appropriate venue for this case.

11.

The words of the Fifth Circuit Court of Appeals, in reversing a conviction and death sentence because of the trial court's failure to grant a change of venue, exemplify the standard by which the issue here presented must be measured:

> When the life a man hangs in the balance we should insist that the fullest protection of his right to a trial before a fair and impartial jury should be accorded him. Society is here attempting to take away the life of one of its members. That attempt must be tested by the highest standards of justice and fairness that we know.

Juelich v. United States, 214 F.2d 950, 955 (5th Cir. 1954).

12.

In Irvin v. Dowd, the United States Supreme Court vacated a conviction and sentence of death because of pretrial publicity and community attitudes. The Court found the "then current community pattern of thought as indicated by the popular news media" to establish a clear and convincing "build-up of prejudice." 366 U.S. at 725. Although each juror in Irvin indicated that he could render an impartial verdict during a voir dire procedure which took four weeks to complete, id. at 720, 724, the Supreme Court nevertheless concluded:

> [w]here one's life is at stake -- and accounting for the frailties of human nature -- we can only say that in the light of the circumstances here the finding of impartiality does not meet constitutional standards.

Id. at 727-28.

7

13.

Similarly, in <u>Rideau v. Louisiana</u>, the United States Supreme Court, in setting aside a conviction and death sentence, recognized that:

> [w]here outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial.

<u>Id.</u>, 373 U.S. at 727.

14.

In reversing the conviction in <u>Sheppard v. Maxwell</u>, the United States Supreme Court stated, "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences." <u>Id.</u>, 384 U.S. at 362. These cases establish that a change of venue is constitutionally required where there is a "reasonable likelihood" that the community sentiment or pretrial publicity will prevent a fair trial. <u>Sheppard v. Maxwell</u>, 384 U.S. at 333. A criminal defendant's "most priceless" safeguard is the right to a trial by fair and impartial jury untainted by pretrial publicity, <u>Irvin v. Dowd</u>, 366 U.S. at 721; <u>see also</u> <u>United States v. Williams</u>, 568 F.2d 464 (5th Cir. (1978); <u>Pamplin v. Mason</u>, 364 F.2d (5th Cir. 1966); <u>United States v. Abrahams</u>, 453 F.Supp. 79 (D. Mass. 1978).

15.

As has repeatedly been recognized by the courts, where there is prejudice, voir dire is not adequate to protect the accused's right to a fair trial by an impartial jury. <u>See</u> <u>Coleman v. Kemp</u>, 778 F.2d at 1542; <u>Brinlee v. Crisp</u>, 608 F.2d 839, 845 (10th Cir. 1979), <u>cert. denied</u>, 444 U.S.

8

1047 (1980) ("The jurors' assurances that they are equal to the  task are not dispositive of the rights of the accused"); United States v. Williams, 568 F.2d at 471 ("The effect of exposure to extra-judicial reports on a jurors deliberations may be substantial even though it is not perceived by the juror himself, and a juror's good faith cannot counter this effect"); Silverthorne v. United States, 400 F.2d 627, 639  (9th Cir. 1968), aff'd after retrial, 430 F.2d 675 (9th Cir. 1970), cert. denied, 400 U.S. 1022 (1971); United States v. Polizzi, 500 F.2d 856, 879 (9th Cir. 1974), cert. denied, 419 U.S. 1120 (1975); Bloeth v. Denno, 313 F.2d 364 (2nd Cir. 1963), cert. denied, 372 U.S. 978 (1963) (jury could not honestly be found to be impartial in spite of the fact that jurors gave assurances of impartiality); Delaney v. United States, 199 F.2d 107, 112-13 (1st Cir. 1952).

16.

In the case of Jones v. State, the Supreme Court of Georgia reviewed its previous ruling in Berryhill v. State, 249 Ga. 442, 291 S.E.2d.685, 1982 and concluded:

> The approach followed in Berryhill and our earlier cases concerning change of venue in death penalty cases is, we believe, too restrictive...Accordingly we announce a new standard.  Trial courts will order a change of venue for death penalty trials in those cases in which a defendant can make a substantive showing of the likelihood of prejudice by reason of extensive publicity.

261 Ga. at 666; see also Tyree v. State, 262 Ga. 395, 418 S.E.2d 16 (1992).

17.

Furthermore, the matters involved in this case have been given such extensive publicity through the newspapers, broadcast media, and other forms of communication operating within

J00232

this County and in a manner so prejudicial to Defendant's interests, that a fair trial by an impartial

and unbiased jury cannot be had in this county.

18.

In addition to the media publicity in this community, there has been the dissemination of

extremely prejudicial information about middle eastern races. Obviously, a jury drawn from a

pool tainted by such misstatements and incorrect information would not be able to provide

Defendant with a fair trial.

19.

The circumstances of this case along with the extensive publicity and community

knowledge surrounding it, clearly indicate -- and a hearing on this motion will further show--that

a refusal to grant a change of venue would unequivocally deny Defendant due process of law.

20.

In the context of a death penalty case, Defendant's right to a fair and impartial jury takes

on additional importance because of Eighth Amendment considerations. For example, the

discretion granted penalty trial juries by Georgia's capital sentencing statute means that a failure

to grant a change of venue in the face of the kind of prejudicial pretrial publicity found in

Defendant's case will never constitute harmless error. Coleman II, 778 F.2d 1540 n.24.

21.

Perhaps even more damaging than the disclosure of misleading and false information is

the disclosure of "non-evidence"--"facts" which appear in the media or are "known" to potential

jurors which are simply not true. These are highly prejudicial to Defendant's right to a jury

"capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455

10

U.S. 209, 217, 102 S.Ct.940, 71 L.Ed.2d 78 (1982); Isaacs v. Kemp, 778 F.2d 1482 (11th Cir.

1985) (change of venue necessary where jurors "prematurely heard the government's case against

Defendant").

22.

Defendant has a constitutional right to be tried in the venue where the crime occurred.

This is because there is "a *community standard* or conscience [which is] in the jury's discretion,

to be applied." United States v. Spock, 416 F.2d 165, 183 (1st Cir. 1969) (emphasis added). It is

the injection of local mores into the occasionally harsh implementation of the law which Judge

Learned Hand approved as introducing "slack into the enforcement of law, tempering its rigor by

mollifying influences of current ethical conventions." United States ex rel. McCann v. Adams,

126 F.2d 774, 776 (2nd Cir. 1942). As the United States Supreme Court has held, "the essential

feature of a jury obviously lies in the interposition between the accused and his accuser of the

common-sense judgment of a group of laymen, and in the community participation and shared

responsibility that results from the group's determination of guilty or innocence." Williams v.

Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The right to trial in a particular

venue, then, carries with it the right to be tried by one's peers, those people who share the values

which permeate the locality. While it is impossible to secure an impartial jury in this county, that

does not mean that this defendant must be denied his right to a fair trial, or made to choose

between that right and the right to a jury of his peers. Brooks v. Tennessee, 406 U.S. 605, 92

S.Ct. 1891, 32 L.Ed.2d 358 (1972)(assertion of one constitutional right cannot be conditioned on

the waiver of another). Rather, courts must seek to make the two rights "harmonious neighbors."

Mississippi Publishers Co. v. Coleman, 5155 So.2d 1163, 1165 (Miss. 1987). Defendant

11

therefore has the right to a transfer this case to a county where he can secure an impartial jury (and preserve his right to a fair trial) and a jury comparable to that in the vicinage where the crime occurred (thus preserving his right to community standards analogous to those in this community).

23.

Defendant's motion for change of venue in this case does not impugn, in any way, the general character or impartiality of the residents of this county. As the Court of Criminal Appeals of Texas eloquently phrased it:

> A change of venue by a trial court of his own motion, or by granting a motion to change the venue of a criminal case, is not an indictment against or a challenge to the honesty, integrity, or ability of the citizenship of a county to give one accused of crime a fair and impartial trial. The Constitution guarantees to every person accused of crime a fair and impartial trial. It is in the furtherance of this guarantee that provision is made for changing the venue of trial. If the facts, separately or collectively, render it improbable that, pursuing the methods provided, a fair and impartial trial can be had, a change of venue should be ordered.

Rogers v. State, 236 S.W.2d 141, 143 (Tex. Crim. App. 1951)(reversing Defendant's conviction and death sentence because of the trial court's failure to grant a change of venue).

WHEREFORE, Defendant requests an evidentiary hearing on this motion and requests that this motion for change of venue be granted.

Respectfully submitted this ___7___ day of September, 2004.


236 Washington Avenue                    Jimmy D. Berry
Marietta, GA 30060                       Attorney for Defendant
770-422-5434                             GA Bar No. 055500

12

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

(250)

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

:04044-0114735-CR
Page 1
Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## MOTION FOR SEPARATE EVIDENTIARY
## HEARING ON CHANGE OF VENUE MOTIONS

### (Motion No. 20 )

Comes now Defendant, by and through his attorneys, and respectfully requests that this Court schedule a separate evidentiary hearing on his Motion for a Change of Venue. This motion is made pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, VII, XI, XII, XIV, XXVIII of the Constitution of the State of Georgia, and to O.C.G.A. § 17-7-150. In support this motion, Defendant shows as follows:

1.

A request for a change of Venue is being filed by Defendant. An impartial jury cannot be obtained in this county or in this Judicial Circuit.

2.

O.C.G.A. § 17-7-150 provides, in part, that the trial Court in whose jurisdiction a crime is alleged to have been committed may change the venue of a trial on its own motion. This Court, in all due respect, should on its own motion simply order that the venue in this case be moved

1

However, if this Court will not, on its own motion, change the venue of Defendant's trial, then a

hearing must be held on Defendant's motion.

3.

The evidence, it is submitted, of the necessity of a change in venue will be overwhelming.

Defendant is presently preparing testimonial and documentary evidence which will be presented

to the Court in support of his motion for a change of venue. The nature of the evidence, the

anticipated quantity of the evidence, and the time which will be required to properly present the

evidence absolutely require a specially set, separate evidentiary hearing on this motion.

4.

Defendant is aware of the practice in many courts to delay a hearing on a change of venue

motion until the time that jury selection begins. Some Courts then juxtapose the change of venue

motion onto the voir dire proceedings. That procedure is not adequate. A separate and distinct

hearing is demanded by the circumstances surrounding this case.

WHEREFORE, Defendant respectfully requests that this Court:

(1)     enter an order specifically setting a place, date and time for a hearing on his

        Motion for a Change of Venue; and

(2)     grant such other relief that is consistent with this motion.

Respectfully submitted this ___7___ day of September, 2004.

236 Washington Avenue                    Jimmy D. Berry
Marietta, GA 30060                       Attorney for Defendant
770-422-5434                             GA Bar No. 055500

(signatures continued on following page)

2

000238

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

(251)

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

3

*J. C. Stephenson*
Jay L. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA, | * | |
| | * | |
| v. | * | Case No. 04-9-673-05 |
| | * | |
| STACEY HUMPHREYS, | * | |
| Defendant. | * | |

## DEMAND FOR LIST OF WITNESSES

### (Motion No. 21 )

COMES NOW, Defendant, by and through his attorneys, and makes demand upon the District Attorney for a copy of the indictment, a list of witnesses upon whose testimony the charges against him are founded and the witnesses whom the State expects to call at the trial of this case, including all expert witnesses and any rebuttal witnesses now known to the State who reasonably can be expected to testify as rebuttal witnesses. This demand has been made upon the State pursuant to pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to Article I, § I, ¶¶ I, II, IV, V, XI, XIII, XIV, XVII and XXVIII of the Constitution of the State of Georgia, to all other applicable state and federal law and case precedent and to Rule 30.3 of the Uniform Rules for Superior Courts. In further support of this demand for a list of witnesses, Defendant would further show as follows:

1.

This is the capital prosecution of Defendant and these proceedings could result in his death by lethal injection. The State, through the District Attorney, has announced its intention to kill Defendant, a human being. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 100 L.Ed.2d. 575 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363-

64, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (White, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))).  It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).  As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. E.g., Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability.  This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties").  For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Eddings v. Oklahoma, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added).  These "extraordinary measures" must be taken at both stages of any capital trial. Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

2.

Article I, § I, ¶ XIV of the Constitution of the State of Georgia declares in relevant part:

> [e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel; shall be furnished with a copy of the accusation or indictment and, on demand, with **a list of witnesses on whose testimony such charge is founded...**

2

(Emphasis supplied).  This constitutional provision overrides all legislative enactments upon this subject.  Uniform Superior Court Rule 30.3 must be construed within the context of the constitutional mandated rights afforded to this defendant.  See Dean v. State, 43 Ga. 218, 220 (1871).

3.

Uniform Superior Court Rule 30.3 states that:
> [u]pon request of defense counsel, the district attorney shall furnish to defense counsel as an officer of the court, in confidence, the addresses and telephone numbers of the state's witnesses to the extent such are within the knowledge of the district attorney, unless for good cause the judge allows an exception to this requirement, in which event defense counsel shall be afforded an opportunity to interview such witnesses prior to the witness being called to testify.

4.

As the Court of Appeals of Georgia stated in Fishman v. State, 128 Ga.App. 505, 511(4), 197 S.E.2d 467 (1973), "[I]t is obvious that to hand over the [supplemental] list immediately before the call of the case for trial [is] an empty compliance [by the prosecution]...A specious and empty compliance with the formalities of the law which results in the withholding of that which the spirit of the law seeks to grant cannot be countenanced".

5.

If the State fails to provide the list of witnesses with their addresses and telephone numbers upon the demand of the defendant, then those witnesses cannot be heard in court.  Where the exception for newly discovered evidence does not apply, the accused has an absolute statutory right to exclude the testimony of an unlisted witness from the prosecution's case-in-chief or to demand a continuance.  Rogers v. State, 261 Ga. 649(1), 409 S.E.2d 655 (1991); Smith v. State, 130 Ga.App. 390, 392(4), 203 S.E.2d 375

0010242

(1973)(whole court); Baldwin v. State, 137 Ga.App. 32, 223 S.E.2d 10 (1975); Parham v. State, 135 Ga.App. 315, 317-318(2), 217 S.E.2d 493 (1975).

WHEREFORE, having made the proper demand for a list of the state's witnesses along with their addresses and telephone numbers, Defendant respectfully requests that this Court instruct the District Attorney in this case to deliver to his attorneys a list of all the state's witnesses along with their current addresses and telephone numbers.

Respectfully submitted this _7_ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(300)

In Office Sep-28-2004 17:09:05
CI:2-04-0114737-CR
Page 1

Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

STATE OF GEORGIA,           *
                            *
v.                          *       Case No. 04-9-673-05
                            *
STACEY HUMPHREYS,           *
        Defendant,          *

## MOTION TO CAUSE WITNESSES
## TO CONFER WITH DEFENSE COUNSEL

### (Motion No. 22 )

Comes now, Defendant, Defendant in the above-styled matter, and through his counsel

moves this Court for an order directing certain State's witnesses to confer with his counsel and

counsel's investigators and in support of said motion would show as follows:

1.

This is a death penalty case!

2.

Counsel for the Defendant, through their privately retained investigator will make

diligent efforts to talk with all witnesses in this case, all of who have knowledge of the facts and

circumstances surrounding this case.

3.

Many times witnesses will inform the defense that they can not and/or will not confer

with defense counsel without authorization of the District Attorney's office.

4.

Therefore, this Defendant may be unable to interview the witnesses.

5.

The testimony of the witnesses is material to the defense of the case and counsel for the

Defendant and/or their investigators should be permitted to privately interview each of said

witnesses about their knowledge of the facts and circumstances surrounding this case.

0001244

7.

This defendant would further show that the denial of the right to interview said witnesses will deny him the effective benefit of counsel in contravention of the provisions of the Sixth Amendment of the United States Constitution made applicable to the States through the due process clause of the Fourteenth Amendment of the U. S. Constitution and the provisions of the Georgia Constitution of 1982, Article I, Section I, paragraph I.

WHEREFORE, Defendant respectfully prays:

(a)   That a copy of this motion and the order of the court be served upon each of the Police Officers which are named herein as potential witnesses in this case;

(b)   That he have an evidentiary hearing on the facts substantiating this motion;

(c)   That this Court instruct the witnesses that it is perfectly proper for defense counsel and/or their investigator to interview each of them privately.

Respectfully submitted this _____7_____ day of September, 2004.

236 Washington Avenue
Marietta, GA 30060
770-422-5434

Jimmy D. Berry
Attorney for Defendant
GA Bar No. 055500

Multi-County Public Defender's Office
104 Marietta Street, Suite 200
Atlanta, GA 30303
404-824-0615

Christopher W. Adams
Attorney for Defendant
GA Bar No. 002725

(301)

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

### STATE OF GEORGIA

STATE OF GEORGIA,               *
                                *
v.                              *          Case No. 04-9-673-05
                                *
STACEY HUMPHREYS,               *
    Defendant.                  *

### MOTION FOR AN ORDER GRANTING DEFENDANT
### A LIST OF WITNESSES AND COPY OF THE INDICTMENT
### OR ACCUSATION

#### (Motion No. 23)

Comes now Defendant, by and through his attorney, and files this demand for a list of witnesses and for a copy of the indictment or accusation. Defendant demands a copy of the Accusation included therein and a list of witnesses on whose testimony the charges against him are founded and a complete list of witnesses whom the District Attorney or Solicitor may call to testify at trial. This demand is made pursuant to Article I, § I, ¶ XI of the Constitution of the State of Georgia, and to the due process guarantees of the U. S. Constitution.

Respectfully submitted this 7 day of September, 2004.

236 Washington Avenue              Jimmy D. Berry
Marietta, GA 30060                 Attorney for Defendant
770-422-5434                       GA Bar No. 055500

                                   Christopher W. Adams
Multi-County Public Defender's Office   Attorney for Defendant
104 Marietta Street, Suite 200     GA Bar No. 002725
Atlanta, GA 30303
404-824-0615

(302)

1